ORIGINAL

FILED
AUG 6 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
*Bid Protest*

| | | |
|---|---|---|
| BENCHMADE KNIFE COMPANY, INC. | ) | |
| Plaintiff | ) | |
| v. | ) | No. 07-593 C |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF A PRELIMINARY INJUNCTION**

Pursuant to Rule 65 and Appendix C ¶¶ 9-15 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Benchmade Knife Company, Inc. ("Benchmade"), by and through its undersigned counsel, respectfully requests that this Court enter an Order preliminarily enjoining Defendant United States, acting through the Department of Defense ("DOD"), Defense Logistics Agency ("DLA"), Defense Supply Center-Columbus ("DSCC"), and awardee Gerber Legendary Blades ("Gerber") from proceeding with performance of the disputed Contract. In support of this Motion, Plaintiff relies upon the Complaint and the following Memorandum of Points and Authorities. This Memorandum incorporates the exhibits attached to Plaintiff's Complaint, which has been simultaneously filed with the Court.

TERRENCE O'CONNOR
Albo & Oblon, LLP
2200 Clarendon Blvd., Suite 1201
Arlington, VA 22201
Tel: (703) 312-0410
Fax: (703) 312-0415
*Attorney for Plaintiff*

August 6, 2007

# TABLE OF CONTENTS


ISSUE PRESENTED .......... 1

STATEMENT OF THE CASE .......... 1

JURISDICTION AND STANDING .......... 3

STANDARD OF REVIEW .......... 4

ARGUMENT .......... 5

I. Plaintiff Benchmade is Likely to Succeed on the Merits of Its Complaint .......... 5

A. The Government Took Actions That Violated Federal Laws or Regulations .......... 5

1. The Government Improperly Failed to Set the Solicitation Aside for Small Businesses. .......... 5

2. The Government Violated DLA Regulations When It Improperly Concluded that the Gerber Knife Was Acceptable and Awarded the Contract to Gerber. .......... 7

3. The Contract Award Process Violated the FAR. .......... 10

B. Plaintiff Benchmade is Entitled to Receive the Automatic Knife Contract .......... 11

II. Plaintiff Will Suffer Irreparable Harm if the Disputed Contract is Performed .......... 12

III. Balancing of the Hardships .......... 12

IV. The Public Interest .......... 13

CONCLUSION .......... 14

# Table of Authorities

## Cases

Advanced Systems Technology, Inc. v. United States, 69 Fed.Cl. 474 (2006)............................5

CW Gov't Travel, Inc. v. United States, 61 Fed.Cl. 559 (2004)..............................................12

Ellsworth Assocs., Inc. v. United States, 45 Fed.Cl. 388 (1999). ............................................13

Essex Electro Eng'rs, Inc. v. United States, 3 Cl.Ct. 277 (1983)...........................................12

FMC Corp. v. United States, 3 F.3d 424 (Fed.Cir.1993). ........................................................4

Four Points Sheraton v. United States, 66 Fed. Cl. 776 (2005)................................................4

Hawaiian Dredging Const. Co., Inc. v. United States, 59 Fed.Cl. 305 (2004)...........................12

Heritage of America, LLC v. United States, 2007 WL 1585008 (Fed.Cl., May 16, 2007). ..12, 13

IDEA Int'l, Inc. v. United States, 74 Fed.Cl. 129 (2006) ........................................................4

Magellan Corp. v. United States, 27 Fed.Cl. 446 (1993). ........................................................5

Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147 (Fed.Cir.1994). ...........................13

PGBA, LLC v. The United States, 389 F.3d 1219 (Fed.Cir. 2004) ..........................................4

Reilly's Wholesale Produce v. United States, 73 Fed.Cl. 705 (2006).......................................12

## Statutes

28 U.S.C. § 1491..........................................................................................................3, 4

5 U.S.C. § 706...................................................................................................................4

## Regulations

13 CFR 121.406 .......... 6, 7

48 CFR 14.408-1 .......... 10, 11

48 CFR 19.001 .......... 6

48 CFR 19.502-2 .......... 5, 6

## ISSUE PRESENTED

I. Whether the Court should preliminarily restrain DLA and Gerber from proceeding under the disputed contract.

## STATEMENT OF THE CASE

Defendant issued Solicitation SPM7LX-07-R-0001, seeking "all or none" offers for two types of knives to be used by the military. See Exhibit to Plaintiff's Complaint (hereinafter "Pl. Ex.") 1. Contract Line Item Number ("CLIN") 0001 of the Solicitation was for automatic, or "switchblade" knives, and CLIN 0002 was for fixed blade knives. Offerors could bid for both items, but the Government could make separate awards for each of the types of knives. The award would be an indefinite delivery, indefinite quantity contract for one base year and four one-year options. The solicitation also stated that the contract would be awarded on the basis of best value to the Government. All technical evaluation factors when combined were approximately equal to price. Offers were due on November 17, 2006.

The Solicitation's description of the automatic knife the Government wanted to purchase identified only a Benchmade automatic knife, Model 9100SBT. See Pl. Ex. 1, at 7. Vendors offering the Government that specific item would be providing the Government with an acceptable item. The Solicitation, however, also allowed vendors to offer a different knife as long as it was an acceptable substitute. "Acceptability" would be determined in accordance with a clause in the solicitation, Defense Logistics Agency clause 52.217-9002 CONDITIONS FOR EVALUATION AND ACCEPTANCE OF OFFERORS FOR PART NUMBERED ITEMS, which reads in pertinent part:

> The product described in the acquisition identification description (AID) of this solicitation is that product which the Government has determined to be acceptable. . . . Any product offered must be either a product cited in the AID; or be physically, mechanically,

> electrically, and functionally interchangeable with a product cited in the AID, including additional requirements referred to in the AID, if any.

Pl. Ex. 1, at 25.

The Government received four offers: three from small businesses, including Benchmade, and the fourth from Gerber, which is not a small business. Defendant had not designated the Solicitation as a small business set-aside.

On December 21, 2006, DLA notified Benchmade by letter that Gerber had won the contract for the automatic knives, under CLIN 0001. Gerber did not offer the Government the Benchmade knife. Instead, Gerber submitted data to the Government to try to establish that its knife was "physically, mechanically, electrically, and functionally interchangeable" with the Benchmade automatic knife specifically requested by the Government. Benchmade's offer price for the automatic knives, $12,207,813.95, was 6/10ths of 1% higher than Gerber's price, $12,129,183.72. DLA determined that Benchmade was second-in-line for the award of the automatic knives. Benchmade won the contract for the fixed blade knives, under CLIN 0002.

After a debriefing by the Government, Benchmade filed a timely protest to the Government Accountability Office ("GAO") on January 9, 2007 (B-299366). The Government stayed performance of the contracts of both Gerber and Benchmade. That protest was dismissed by GAO after DLA took corrective action, continuing to stop work on both contracts and re-evaluating the offers. Gerber submitted a protest, B-299366.2, to the GAO challenging the Government's proposed corrective action, but later withdrew that protest.

After reevaluating the offers, the DLA notified Benchmade that it had re-awarded the contract to Gerber on April 5, 2007. After a debriefing disclosed that the Government had used performance information on Gerber that had apparently not been used in the Government's first

award decision, Benchmade filed its second protest, B-299366.3, to the GAO. The agency report filed in that protest disclosed that the Government had made what appeared to be an "apples to oranges" comparison of Gerber's and Benchmade's respective on-time delivery percentages in prior contracts. The Government's past performance analysis compared the on-time delivery percentages for Gerber's GSA deliveries with Benchmade's on-time delivery percentages for DLA deliveries. GSA and DLA, however, used different evaluation methodologies to determine on-time delivery, resulting in an unfair comparison. The agency report also disclosed that the form the Government used to award the contract to Gerber was a Standard Form ("SF") 26 that did not have Gerber's signature on it, instead of the SF33 that was customarily used in making awards. Based on these two flaws in the procurement process, Benchmade filed a supplemental protest, B-299366.4.

On July 16, 2007, GAO denied protests B-299366.3 and B-299366.4 in a document that was not for public distribution. The GAO has not yet issued the public version of this decision. Immediately following GAO decision, the Government issued orders for the Gerber knives under the contract protested herein.

## JURISDICTION AND STANDING

This Court has jurisdiction over bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1), as amended by the Administrative Dispute Resolution Act of 1996. The Tucker Act grants the Court jurisdiction over "an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement." 28 U.S.C. § 1491(b)(1).

To establish the requisite standing to challenge a contract award, a disappointed bidder must show that it was an "interested party." To qualify as an "interested party," the plaintiff must show that there was a "substantial chance" that it would have received the award but for the

alleged error in the procurement process. Four Points Sheraton v. United States, 66 Fed. Cl. 776, 783 (2005). Plaintiff Benchmade was second in line behind awardee Gerber for the contract for the automatic knives under CLIN 0001. Accordingly, there was a substantial chance that Benchmade would have been selected for the award under CLIN 0001, but for DLA's error in failing to designate the Solicitation as a small business set-aside and its error in finding that the Gerber knife was "interchangeable" with the Benchmade knife. Therefore, Benchmade is an interested party and has standing to bring this bid protest.

## STANDARD OF REVIEW

The Court reviews the Agency's decision under the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4). That statute provides, in part, that "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

In deciding whether to grant a preliminary injunction, the Court considers: (1) likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. PGBA, LLC v. United States, 389 F.3d 1219, 1228-1229 (Fed.Cir. 2004). Of the four factors, "no single factor is dispositive because 'the weakness of the showing regarding one factor may be overborne by the strength of others.'" IDEA Int'l, Inc. v. United States, 74 Fed.Cl. 129, 141 (2006) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed.Cir.1993)).

## ARGUMENT

### I. Plaintiff Benchmade is Likely to Succeed on the Merits of Its Complaint

"In considering whether to grant interim injunctive relief pending a final decision on the merits, this Court has recognized that likelihood of success is a flexible factor." Advanced Sys. Tech., Inc. v. United States, 69 Fed.Cl. 474, 483 (2006). To get an injunction, a protester does not have to "demonstrate a 'significant' or 'strong' likelihood of success." Magellan Corp. v. United States, 27 Fed.Cl. 446, 447 (1993).

#### A. The Government Took Actions That Violated Federal Laws or Regulations

In awarding the protested contract to Gerber, the Government took three actions that prejudicially violated Federal laws or regulations.

##### 1. The Government Improperly Failed to Set the Solicitation Aside for Small Businesses.

Federal law and regulations require the Government to set aside solicitations for small businesses if the solicitation would satisfy criteria in FAR 19.502-2(b), criteria typically referred to as the "Rule of Two":

> b) The contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns (but see paragraph (c) of this subsection); and (2) award will be made at fair market prices.

A contracting officer must therefore do market research prior to issuing the solicitation to determine whether there is a "reasonable expectation" of receiving offers from two or more responsible small business concerns. Following the Government's decisions to award the contract to Gerber, Benchmade learned that several other small businesses had submitted offers

on the protested contract. In fact, 75% of the offerors were small businesses, which indicates that the Contracting Officer failed to do adequate research in determining whether this Solicitation should have been designated as a small business set-aside.

In addition, during the course of the GAO protests, the Government explained to Benchmade why the procurement had not been set aside for small businesses. The Government advised Benchmade that: "The Rule of Two does not apply when multiple small businesses offer the product of a single small business concern," and since Benchmade was the only small business that made the required knife, the Rule of Two had not been met. Pl. Ex. 4, at 2. However, the Government provided no citation for this conclusion and indeed could not because it is contrary to law and regulation. As quoted above, FAR 19.502-2(b)(1) uses the phrase: "...two responsible small business concerns offering the products of different small business concerns." The fallacy of the Government's argument is that it improperly converts the phrase "two small business concerns" into "two small business manufacturers." The definition of "concern" in FAR 19.001 does not mention manufacturers but rather, simply, "any business entity." The Government's interpretation ignores the small business laws and regulations that clearly mandate that the analysis include not only manufacturers like Benchmade but also nonmanufacturers – resellers – who offer Benchmade products for sale.

FAR 19.001, Definitions, states:

> "Nonmanufacturer rule" means that a contractor under a small business set-aside or 8(a) contract shall be a small business under the applicable size standard and shall provide either its own product or that of another domestic small business manufacturing or processing concern (see 13 CFR 121.406).

Going to this CFR citation, §121.406 (a) states that

> in order to qualify as a small business concern for a small business set-aside or 8(a) contract to provide manufactured products, an

> offeror must either: (1) Be the manufacturer of the end item being procured (and the end item must be manufactured or produced in the United States); or (2) Comply with the requirements of paragraph (b), (c) or (d) of this section as a nonmanufacturer....

The same CFR section continues:

> (b) Nonmanufacturers. (1) A concern may qualify for a requirement to provide manufactured products as a nonmanufacturer if it: (i) Does not exceed 500 employees; (ii) Is primarily engaged in the retail or wholesale trade and normally sells the type of item being supplied; and (iii) Will supply the end item of a small business manufacturer or processor made in the United States, or obtains a waiver of such requirement pursuant to paragraph (b)(3) of this section.

These regulations establish that when the Government undertakes a "Rule of Two" analysis, it must include resellers that are small business concerns.

In conclusion, the correct interpretation of the Rule of Two is that, when the Government can reasonably expect to get offers from two small business concerns offering the products of (i.e., manufactured by or resold by) different small business concerns (e.g., Benchmade and its small business resellers), the solicitation must be set-aside for small businesses. The Government's failure to conduct an adequate market survey and its improper application of the Rule of Two resulted in an unreasonable determination not to set aside the solicitation for small businesses which was contrary to law.

2. **The Government Violated DLA Regulations When It Improperly Concluded that the Gerber Knife Was Acceptable and Awarded the Contract to Gerber.**

The solicitation's description of the item the Government wanted to purchase referred expressly to a Benchmade knife, Model 9100SBT. If offerors were not offering that specific item, they would have to submit a knife that the government found to be acceptable. Acceptability would be determined according to a clause in the solicitation, Defense Logistics

Agency clause 52.217-9002 CONDITIONS FOR EVALUATION AND ACCEPTANCE OF OFFERORS FOR PART NUMBERED ITEMS. That clause reads in pertinent part:

> The product described in the acquisition identification description (AID) of this solicitation is that product which the Government has determined to be acceptable. All Offerors shall indicate below, or through an alternative means in an electronic quoting system, whether they are offering an "exact product," an "alternate product" (which includes a "previously reverse-engineered product"), a "superceding part number," or a "previously-approved product;" and shall furnish the data required for whichever is applicable. (To determine which type of product to indicate, Offerors must refer to the criteria in sub-paragraphs (b)-(e) of this provision, respectively.) Any product offered must be either a product cited in the AID; or be physically, mechanically, electrically, and functionally interchangeable with a product cited in the AID, including additional requirements referred to in the AID, if any.

Pl. Ex. 1, at 25.

Since Gerber did not offer the Government the Benchmade knife, Gerber submitted data to the Government to try to establish that its knife was "physically, mechanically, electrically, and functionally interchangeable" with the Benchmade knife. The Government apparently concluded during the solicitation process that the Gerber knife was interchangeable with the Benchmade knife. The knives, however, are significantly different:

1. The safety locking mechanisms of the two knives are very different. The Benchmade knife has a push button blade opening mechanism with a safety on the spine to ensure that there is not an accidental opening of the knife. When a soldier wants to make sure the blade of the Benchmade automatic knife stays open, he/she would simply have to push the button opening the blade. The Gerber knife had a push button with an on/off safety on the face of the handle. To guarantee the blade of the Gerber model remains open in all situations, a

soldier would have to push the button and then, assuming the soldier had enough time to do so in combat, take the extra step of locking the blade with the safety. This is due to the blade opening/unlocking if the blade is hit on the spine. As tested in May, the knife fails if the blade is hit on the backside without the safety on. This happened with any upward thrusting motion.

2. The weight of Benchmade's knife is 3.9 ounces, as compared to Gerber's knife which is 7.0 ounces.

3. Benchmade's handle is a contoured aluminum handle that allows for ease of use in both the traditional and reverse grip. Gerber's handle is made of aluminum over steel liners and a steel spacer that adds weight and does not allow the user to effectively use the knife in the reverse grip.

4. Benchmade's blade is made of 154CM grade steel, which is not only hard but also durable. Gerber's blade is made of S30V grade steel, which is also hard but can be brittle. Tests show that S30V grade steel has a tendency to chip after hard use.

5. On information and belief, the only folding combat knifes that Plaintiff is aware of in the DLA system for the past six to eight years have been Benchmade automatic knives. More than 95% of the automatic knives Benchmade has shipped to DLA have had the safety on the spine of the knife. As soldiers who have trained with these knives go to use Gerber switch blade knife, they will find a heavier more cumbersome product that operates in a significantly different manner.

See Pl. Ex. 2, ¶ 3. After Benchmade provided this information to DSCC, the Government began testing the Gerber knife. The results of these tests are pending.

Because the Gerber knife requires this extra essential step to keep its "switch blade" open and locked, Benchmade believes that the Government's conclusion that the Gerber knife was interchangeable and an acceptable substitute for the Benchmade knife was an unreasonable determination and was made by the Government in violation of DLA regulations, thereby rendering the Government's decision to award the disputed contract to Gerber arbitrary and capricious and in violation of the regulations.

3. <u>**The Contract Award Process Violated the FAR.**</u>

The Government's award of the Gerber contract using SF 26 and without obtaining Gerber's signature on the document is arbitrary, capricious, in violation of regulations, and did not result in a binding contract. It is basic contract law that there must be an offer and acceptance before there can be a binding contract. The applicable regulation regarding contract awards provides:

> Award is generally made by using the Award portion of Standard Form (SF) 33, Solicitation, Offer, and Award, or SF 1447, Solicitation/Contract (see 53.214). If an offer from a SF 33 leads to further changes, the resulting contract shall be prepared as a *bilateral* document on SF 26, Award/Contract.

FAR 14.408-1(d)(1) (emphasis added).

The Government used SF 26 to award Gerber the disputed contract. Pl. Ex. 3. On the award document, at Block 18, the Contracting Officer checked the box which reads:

> (contractor is not required to sign this document). Your offer on solicitation number SPM7LX07R0001 including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer; and (b) this award-contract. No further contractual documents necessary.

The SF 26 used by the Government contains no "additions or changes made by" Gerber; rather, it is the Government that has made "additions or changes" on the form. Specifically, the Government in Block 12B has added the portion of Gerber's offer relating to the protested knives. If the Government wanted to accept only half of Gerber's offer and wanted to use the SF 26, its options were to either use the SF 33 Gerber submitted and inserted CLIN 0001 in Block 19, "Accepted as to Items Numbered," or prepare SF 26 as a bilateral document. The Government opted to use the SF 26; however, Gerber's signature is not on the SF 26. Thus, the contract was not prepared as a *bilateral* document on SF26 as required by FAR 14.408-1(d)(1).

By using the wrong form and not getting Gerber's signature, the Government violated procurement regulations and basic contract principles, resulting in the Government entering into a contract that was null and void.

**B. Plaintiff Benchmade is Entitled to Receive the Automatic Knife Contract**

Plaintiff Benchmade was second in line behind Gerber for the award of the automatic knife contract. Benchmade's offer price for the automatic knives, $12,207,813.95, was only 6/10ths of 1% higher than Gerber's price, $12,129,183.72. Unlike the knives offered by Gerber, the knives that Benchmade offered in its bid were the same knives that DLA had been using for the past six to eight years and were specifically requested in the Solicitation. Additionally, this Solicitation should have been designated as a small business set-aside, and therefore Gerber, as a large business, should not have qualified for award of this contract. Because Benchmade was next in line behind Gerber and offered the exact item the Government sought for just .6% higher in price than Gerber, Benchmade would have received the award under the Solicitation but for the Government's errors in the procurement process. Accordingly, Benchmade is likely to prevail on the merits and is likely to ultimately receive the award of the automatic knife contract.

## II. Plaintiff Will Suffer Irreparable Harm if the Disputed Contract is Performed

"A party suffers irreparable harm when there is no adequate remedy at law." CW Gov't Travel, Inc. v. United States, 61 Fed.Cl. 559, 575 (2004). Since an offeror cannot sue the Government for lost profits, "the harm to plaintiff is irreparable and that harm satisfies the second criterion for injunctive relief." Heritage of Am., LLC v. United States, 2007 U.S. Claims LEXIS 166, *40 (Fed. Cl., May 16, 2007). An action at law only allows recovery of "bid preparation costs in a suit for damages, but not loss of anticipated profits," leaving a bid protestor irreparably harmed. Essex Electro Eng'rs, Inc. v. United States, 3 Cl.Ct. 277, 287 (1983). "If lost profits do not constitute irreparable harm, then a protester that seeks to displace a putative awardee automatically fails to meet one of the requirements for injunctive relief." Hawaiian Dredging Constr. Co., Inc. v. United States, 59 Fed.Cl. 305, 317 (2004).

In this case, since Benchmade stands to lose profit if Gerber continues to provide the Government knives under an improperly awarded contract, Benchmade has established irreparable harm.

## III. Balancing of the Hardships

Under this factor, "the court must consider whether the balance of hardships leans in the plaintiff's favor. This requires a consideration of the harm to the government and to the intervening defendant[s]." Reilly's Wholesale Produce v. United States, 73 Fed.Cl. 705, 715 (2006).

Presumably the Government will argue that delay in getting equipment to a military theatre throws the balance of hardship calculation clearly in its favor. But as one court noted, "only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." Ellsworth Assocs., Inc. v. United

States, 45 Fed.Cl. 388, 399 (1999).

Clearly, some of the delay can be attributed to the Government's failure to follow procurement rules and regulations. In addition, as one court noted "in comparing the hardships of an injunction, the Government, [and intervenors] are not harmed by aborting a flawed award process." Hawaiian Dredging, 59 Fed.Cl. at 317. The same court also pointed out that any harm to the awardee "can be remedied by compensation for a termination for convenience." Id. at 317-18.

## IV. The Public Interest

The public interest is served by ensuring a procurement process conforms to applicable procurement regulations. Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147, 1152 (Fed.Cir.1994). If the solicitation process "did not conform to the requirements of the FAR, it is in the public interest to take action to redo the flawed procurement and, in doing so, correct the errors that occurred in the initial procurement process." Heritage of Am., 2007 WL 1585008, *15 (Fed.Cl., May 16, 2007). In this case, the Government has made as many as three fundamental errors in the procurement process. Surely, that is a "flawed procurement" making a preliminary injunction in the public interest.

Furthermore, the public interest is also served by ensuring that that our military is equipped with the most appropriate and reliable weaponry when being called into armed conflict. Where there is evidence, as here, that the Government made an erroneous determination that the Gerber knife was an acceptable substitute for the Benchmade knife, it is in the public interest to require the Government to re-evaluate whether Gerber's proposed alternative knife actually satisfies the military's requirements.

## CONCLUSION

Plaintiff respectfully requests that the Court maintain the status quo, grant its motion for a preliminary injunction, and issue an Order preliminarily enjoining the Government and Gerber from proceeding under the disputed contract.

Respectfully submitted,

Terrence M. O'Connor

Terrence M. O'Connor
Stephanie D. Wilson
ALBO & OBLON, L.L.P.
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201
Telephone (703) 562-3382
Facsimile: (703) 312-0415
*Counsel for Benchmade Knife Company*

Dated: 8/6/07

**CERTIFICATE OF SERVICE**

I hereby certify that copies of Plaintiff Benchmade Knife Co, Inc.'s foregoing MOTION FOR AND MEMORANDUM IN SUPPORT OF A PRELMIINARY INJUNCTION were served on the 6th day of August 2007, via e-mail, at the parties' requests, on:

Kenneth Kessler, Esq.
United States Department of Justice
Commercial Litigation, Civil Division
8th Floor, 1100 L Street, NW
Washington, DC 20530

David T. Ralston, Jr.
Foley & Lardner, LLP
3000 K Street, N.W.
Suite 500
Washington, DC 20007
*Counsel for Awardee Gerber Legendary Blades*

and via facsimile on:

Brenda Williams
Contracting Officer
Department of Defense, Defense Logistics Agency,
Defense Supply Center-Columbus
Fax: (614) 693-1574

Terrence O'Connor

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

***Bid protest***

| | | |
|---|---|---|
| BENCHMADE KNIFE CO. | ) | |
| Plaintiff | ) | |
| v. | ) | No. |
| THE UNITED STATES | ) | |
| Defendant | ) | |

**ORDER GRANTING PRELIMINARY INJUNCTION**

Upon consideration of Plaintiff Benchmade Knife Co., Inc.'s Motion for a Preliminary Injunction, its Memorandum of Points and Authorities in Support of a Preliminary Injunction, and it appearing to the court that:

(1) Benchmade is likely to succeed on the merits of its Complaint for Declaratory and Injunctive Relief because the Government's solicitation process displays as many as three prejudicial violations of Federal law and regulations;

(2) Benchmade will suffer irreparable harm if the Court withholds injunctive relief because it could suffer monetary harm for which there is no adequate remedy;

(3) The balance of hardships to the respective parties favors the grant of injunctive relief; and

(4) It is in the public interest to grant injunctive relief because it will ensure a procurement process that conforms to applicable procurement regulations.

THEREFORE, IT IS HEREBY ORDERED:

1. That the Defendant United States Department of Defense, Defense Logistic Agency, Defense Supply Center Columbus, its agents, employees, officers and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are hereby enjoined from further performing the contract SPM7LX07D7026 awarded to Gerber Legendary Blades, Fiskars Brands Inc. under Solicitation SPM7LX-07-R-0001;

2. That Plaintiff shall give security in the amount of $______________ for the payment of such costs and damages as may be incurred by Defendant if it is found to have been wrongfully enjoined, such security to be in the form of cash, a certified check, or a bond approved by the clerk of the court, no later than __________________ 2007; and it is further ordered

3. That copies of this order be immediately served upon Defendant and by service upon the following officers by overnight delivery:

Attorney General of the United States
US Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530

Brenda Williams
Contracting officer
DSCC-FLG
PO Box 3990
Columbus, OH 43218-3990.

Dated: _______________

______________________________
JUDGE
United States Court of Federal Claims