GAO
Accountability * Integrity * Reliability

Comptroller General
of the United States

United States Government Accountability Office
Washington, DC 20548

**DOCUMENT FOR PUBLIC RELEASE**
The decision issued on the date below was subject to a GAO Protective Order. This redacted version has been approved for public release.

# Decision

**Matter of:** Benchmade Knife Co., Inc.

**File:** B-299366.3, B-299366.4

**Date:** July 16, 2007

Terrence M. O'Connor, Esq., and Seth C. Berenzweig, Esq., Albo & Oblon, LLP, for the protester.
David T. Ralston, Jr., Esq., Philip A. Nacke, Esq., and Frank S. Murray, Esq., Foley & Lardner, LLP, for Gerber Legendary Blades, an intervenor.
Gail L. Booth, Esq., Defense Logistics Agency, for the agency.
Kenneth Kilgour, Esq., and Christine S. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

## DIGEST

Protest that agency, in the course of reevaluating proposals, used an improper time period to recalculate an offeror's Automated Best Value System (ABVS) score is denied where the record supports the agency's contention that it used the same ABVS scores in the initial evaluation and the reevaluation.

## DECISION

Benchmade Knife Co., Inc. protests the award of a contract to Gerber Legendary Blades under request for proposals (RFP) No. SPM7LX-07-R-0001, issued by the Department of Defense (DOD), Defense Logistics Agency (DLA), Defense Supply Center-Columbus (DSCC) for two combat knives. The protester argues that the agency considered ABVS scores[1] for the awardee that included information on past delivery performance that was current as of the date of the reevaluation and not the initial evaluation, contrary to the RFP terms.[2]

---

[1] The ABVS is a computerized system used by DLA that collects a vendor's past performance data for a specific period and translates it into a numeric score. See Midwest Metals, B-296303, June 3, 2005, 2005 CPD ¶ 117 at 1.

[2] Benchmade also initially alleged that: the agency's best value determination was inadequately documented; the agency held improper discussions with the awardee to obtain additional past performance information; the agency used dissimilar rating systems in evaluating the offerors' past performance; and the agency accepted a late (continued...)

We deny the protest.

The RFP, issued by DSCC on November 2, 2006, with an eventual closing date of November 17, identified two required combat knives by national stock numbers (NSN) 1095-01-456-4457 (4457) and 1095-01-466-8569 (8569); the former is the subject of this protest. The RFP stated that the agency would select for award the proposal that represented the best value to the government, based upon--in descending order of importance--a comparative assessment of the offerors' prices, past performance, proposed delivery, socioeconomic support, Mentoring Business Agreement Program, and Javits-Wagner-O'Day Act support. Under past performance evaluation factors, the RFP stated that the agency would consider the offerors' ABVS scores as well as any other available and relevant past performance data. With respect to ABVS scores, section L2 of the RFP provided that for purposes of calculating delivery delinquencies, the rating period would exclude the most recent 60 days; for assessing quality complaints, the rating period would exclude the most recent 30 days. All non-price factors combined were considered approximately equal in importance to price. The RFP stated that "[a]ward will be made on this Form [33], or on Standard Form [(SF)] 26, or by other authorized official written notice," RFP at 1, and that the government could make either a single award or "split" awards, i.e., a separate award for each of the two knives. Id. at 32.

Gerber and Benchmade submitted the only timely offers that were in the competitive range and subsequently evaluated for award. The two proposals differed in price by less than one percent. The agency evaluated both proposals for past performance, and, the agency states, it used the ABVS scores from December 7.

The contracting officer determined that Gerber's offer for NSN 4457 represented the best value to the government and proceeded with award to Gerber on December 21, using SF 26.[3] Benchmade protested that award to our Office. The agency, pointing to errors in the original evaluation of Gerber's past performance, stated that it would take corrective action and reevaluate "the offers received." Letter from Agency to GAO, Feb. 5, 2007 at 1. We then dismissed the protest as academic.

On April 5, 2007, the contracting officer completed the reevaluation and again determined that Gerber's proposal offered the best value to the agency. The

(...continued)
proposal from the awardee. Benchmade abandoned these arguments by failing to comment on these issues in response to the agency reports, which fully addressed them. Knowledge Connections, Inc., B-297986, May 18, 2006, 2006 CPD ¶ 85 at 2 n.2.

[3] At the same time, Benchmade was awarded a contract for the other knife, NSN 8569.

debriefing letter provided to the protester stated that the "[e]valuation was based on the most current information available at the time of award." Agency Report, Tab 7, Letter from Agency to Protester, Apr. 11, 2007, at 4.

Benchmade again protested, alleging that if, in conducting the reevaluation, the agency used ABVS scores for the awardee that were current as of the reevaluation, then that new calculation could have included quality complaints from the most recent 30 days and delivery delinquencies for the most recent 60 days, contrary to the terms of the RFP.[4] The agency maintains that the ABVS scores used in the reevaluation are the same scores that were printed on December 7 and used in the initial evaluation. Agency Report, Report of Contracting Officer, at 4. The record, including the printouts from December 7 and documents from the reevaluation of past performance that use the December 7 scores, supports the agency's claim. Moreover, the protester offers no persuasive support for its allegation that the awardee's ABVS score changed after the initial evaluation. Accordingly, we find no merit to the protester's assertion that the agency used the wrong timeframe to recalculate the ABVS scores used in the reevaluation.

Benchmade also challenged the agency's use of SF 26 to make a split award. The protester argues that because the agency did not obtain the awardee's consent to use SF 26 and its signature on it, there was no legally binding agreement between those two parties. The language of the RFP, noted above, put prospective offerors on notice that the agency considered it proper to make a split award using the SF 26; in fact, Benchmade's own contract for the other knife under the RFP was issued using SF 26 as well. Benchmade raised this challenge to the terms of the RFP in a supplemental protest filed May 29, 2007, well past the solicitation closing date of November 17, 2006; this protest ground is therefore untimely. See 4 C.F.R. § 21(a)(1) (2007). Benchmade's argument that the language of the RFP was too speculative to form the basis of a protest is unpersuasive, given the agency's clearly stated position in the RFP that it reserved the option to make a split award using SF 26.

[4] It is not entirely clear whether the protester's allegation is that the agency violated the terms of the RFP or of the corrective action letter. If the allegation is that the agency violated a provision in the corrective action notice, such an allegation is not a valid basis of protest. Our bid protest jurisdiction is limited to deciding protests "concerning an alleged violation of a procurement statute or regulation." 31 U.S.C. § 3552 (2000). Thus, we will not consider an argument concerning compliance with a corrective action letter except to the extent the protester asserts that an agency's alleged deviation from its intended corrective action resulted in a prejudicial violation of procurement laws or regulations. See American Mktg. Assocs., Inc.--Recon., B-274454.4, May 14, 1997, 97-1 CPD ¶ 183 at 2-3. There has been no such allegation here.

Benchmade contends that, even if its protest was not timely filed, it should be considered under the "significant issue" exception to our timeliness requirements, 4 C.F.R. § 21.2(c). The significant issue exception is limited to protests that raise issues of widespread interest to the procurement community, and which have not been considered on the merits in a prior decision. Schleicher Cmty. Corrs. Ctr., Inc., B-270499.3 et al., Apr. 18, 1996, 96-1 CPD ¶ 192 at 7. The record here simply does not suggest that the issue Benchmade raises--which concerns the propriety of the procedure used to execute the contracts under the RFP, not the propriety of the underlying award to Gerber–is of such widespread interest to the procurement community so as to warrant its resolution in the context of an untimely protest.

The protest is denied.

Gary L. Kepplinger
General Counsel