**REDACTED VERSION**

**EXHIBIT A**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

***Bid Protest***

| | |
|---|---|
| BENCHMADE KNIFE COMPANY, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant, and<br><br>GERBER LEGENDARY BLADES DIVISION, FISKAR BRANDS, INC.,<br><br>Intervenor-Defendant | Case No. 07-593C<br><br>Judge Wheeler |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Benchmade Knife Company, by and through its undersigned counsel, submits the following Amended Complaint, pursuant to Rule 15(a) of the Rules of the United States Court of Federal Claims, for declaratory and injunctive relief:

**PARTIES**

1. Plaintiff Benchmade Knife Company ("Benchmade") is an Oregon corporation with its principal place of business at 300 Beavercreek Road, Oregon City, OR 97045.

2. Defendant is the United States of America ("Government"), acting by and through the United States Department of Defense ("DOD"), Defense Logistics Agency ("DLA"), Defense Supply Center-Columbus ("DSCC").

REDACTED VERSION

**EXHIBIT A**

3. Intervenor-Defendant Gerber Legendary Blades Division, Fiskar Brands, Inc. ("Gerber") is the successful offeror for Contract Line Item Number ("CLIN") 0001 of Solicitation SPM7LX-07-R-0001 (the "Solicitation").

## JURISDICTION AND FACTUAL BACKGROUND

4. Jurisdiction in this action is conferred on this Court by 28 U.S.C. §1491(b). This Court has the authority to issue a declaratory judgment pursuant to Rules of the United States Court of Federal Claims ("RCFC") 57 and preliminary and permanent injunctive relief pursuant to RCFC 65.

### The Solicitation

5. Defendant issued Solicitation SPM7LX-07-R-0001 (the "Solicitation"), for two types of knives to be used by the military: a fixed blade knife and an automatic (commonly known as a "switchblade") knife. Offers on an "all or none" basis were due on November 17, 2006. The Solicitation would result in two awards: contract line item number ("CLIN") 0001 for the automatic knife, and CLIN 0002 for the fixed blade knife. The awards would be indefinite delivery, indefinite quantity contracts for one base year and four one-year options. The Solicitation is attached hereto as Exhibit 1.

6. The Solicitation stated that the contracts would be awarded on a best value to the Government basis. All evaluation factors when combined were approximately equal to price. The following factors, ranked in descending order of importance, would be considered: price, past performance, proposed delivery, social economic support, DLA Mentoring Business Program, and Javits-Wagner-O'Day ("JWOD") Program.

**REDACTED VERSION**

**EXHIBIT A**

7. The Government received four offers, three of which were from small businesses, including Benchmade. The fourth offer was from Gerber Legendary Blades ("Gerber"), which is not a small business.

8. The Solicitation was not designated by the Government as a small business set-aside.

9. Federal law and regulations require the Government to designate procurements for small business set-asides when certain criteria are satisfied. FAR 19.502-2(b) describes the conditions under which the Government must designate a procurement as a total small business set-aside. The process is typically referred to as "the Rule of Two." FAR 19.502-2(b) states in pertinent part:

> (b) The contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns (but see paragraph (c) of this subsection); and (2) award will be made at fair market prices.

10. A contracting officer must therefore do market research prior to issuing the solicitation to determine whether there is a "reasonable expectation" of receiving offers from at least two responsible small business concerns.

11. The Solicitation's description of the automatic knife the Government wanted to purchase referred expressly to a Benchmade automatic knife, Model 9100SBT. Vendors offering the Government that specific item would be providing the Government with an acceptable item.

**REDACTED VERSION**

**EXHIBIT A**

12. The Solicitation, however, also allowed vendors to offer a different knife as long as it was an acceptable substitute. "Acceptability" would be determined in accordance with a clause in the solicitation, Defense Logistics Agency clause 52.217-9002 CONDITIONS FOR EVALUATION AND ACCEPTANCE OF OFFERORS FOR PART NUMBERED ITEMS . That clause reads in pertinent part:

> The product described in the acquisition identification description (AID) of this solicitation is that product which the Government has determined to be acceptable. All Offerors shall indicate below, or through an alternative means in an electronic quoting system, whether they are offering an "exact product," an "alternate product" (which includes a "previously reverse-engineered product"), a "superceding part number," or a "previously-approved product;" and shall furnish the data required for whichever is applicable. (To determine which type of product to indicate, Offerors must refer to the criteria in sub-paragraphs (b)-(e) of this provision, respectively.) Any product offered must be either a product cited in the AID; or be physically, mechanically, electrically, and functionally interchangeable with a product cited in the AID, including additional requirements referred to in the AID, if any.

13. Gerber did not offer the Government the Benchmade knife. Instead, Gerber submitted data to the Government to try to establish that its knife was "physically, mechanically, electrically, and functionally interchangeable" with the Benchmade automatic knife specifically requested by the Government.

14. The Government apparently concluded during the solicitation process that the Gerber knife was interchangeable with the Benchmade knife. However, during the course of the GAO protests filed by Benchmade as further described below, Benchmade discovered and alerted the Government to flaws in the Gerber knife which suggested to Benchmade that the winning Gerber knife was not "interchangeable" with the Benchmade knife. See Affidavit of Greg Mooney,

President of Benchmade Knife Company, attached hereto as Exhibit 2.

15. The differences between the Benchmade and Gerber knife are significant:

a. The Benchmade and Gerber knives have different safety lock mechanisms. The Benchmade knife has a push button blade opening mechanism with a safety on the spine to ensure that there is not an accidental opening of the knife. When a soldier wants to make sure the blade of the Benchmade automatic knife stays open, he/she would simply have to push the button opening the blade. The Gerber knife had a push button with an on/off safety on the face of the handle. To guarantee the blade of the Gerber model remains open in all situations, a soldier would have to push the button and then, assuming the soldier had enough time to do so in combat, take the extra step of locking the blade with the safety. This is due to the blade unlocking if it is hit on the spine. As tested in May, the knife fails if the blade is hit on the backside without the safety on. This happened with any upward thrusting motion.

b. The weight of Benchmade’s knife is 3.9 ounces, as compared to Gerber's knife which is 7.0 ounces.

c. Benchmade’s handle is a contoured aluminum handle that allows for ease of use in both the traditional and reverse grip. Gerber's handle is made of aluminum over steel liners and a steel spacer that adds weight and does not allow the user to effectively use the knife in the reverse grip.

d. Benchmade’s blade is made of 154CM grade steel, which is not only hard but also durable. Gerber's blade is made of S30V grade steel, which is also hard but can be brittle. Tests show that S30V grade steel has a tendency to chip after hard use.

REDACTED VERSION

**EXHIBIT A**

16. On information and belief, the only folding combat knifes that Plaintiff is aware of in the DLA system for the past six to eight years have been Benchmade automatic knives. More than 95% of the automatic knives Benchmade has shipped to DLA have had the safety on the spine of the knife. As soldiers who have trained with these knives go to use Gerber switch blade knife, they will find a heavier more cumbersome product that operates in a significantly different manner.

**The First Award**

17. The Government did not have discussions with the offerors prior to award. On December 21, 2006, DLA notified Benchmade by letter that Gerber won the contract award for the CLIN 0001 automatic knife.

18. The prices proposed by Benchmade and Gerber for the automatic knife were essentially equal: Benchmade's price was $12,207,813.95 and Gerber's price was $12,129,183.72. Therefore, Benchmade's price was higher by approximately $78,000 or 6/10ths of 1%.

19. Benchmade won the contract award for the CLIN 0002 fixed blade knife.

**Protests at the GAO**

20. After a debriefing by the Government, Benchmade filed a timely protest to the Government Accountability Office ("GAO") on January 9, 2007. GAO assigned the protest No. B-299366. Pending resolution of the protest, the Government stayed the performance of both the Gerber and the Benchmade contracts.

REDACTED VERSION

**EXHIBIT A**

21. Benchmade's protest was successful. DLA took corrective action, continuing to stop work on both contracts and re-evaluating all offers under the Solicitation. Based on this agency action, GAO dismissed B-299366 as moot.

22. Gerber filed protest B-299366.2 at the GAO, protesting the Government's proposed corrective action, but later withdrew that protest.

23. After re-evaluating the offers, the DLA notified Benchmade that it had re-awarded CLIN 0001 to Gerber on April 5, 2007. The debriefing of Benchmade by the Government revealed, among other things, the unexplained appearance and reliance by the Government on information about Gerber's past performance that had apparently had not been used in the Government's first award decision.

24. Benchmade filed a second protest to GAO (B-299366.3) challenging the Government's reliance on information about Gerber's past performance that the Government had not used in the first award, and the Government's subsequent award of the contract for CLIN 0001 to Gerber.

25. The agency report to GAO on B-299366.3 described how the Government compared the past performance scores of Benchmade and Gerber. Its comparison, however, appeared to be an "apples to oranges" comparison, because the Government's past performance analysis used on-time delivery percentages for Gerber's GSA deliveries and compared them to Benchmade's on-time delivery percentages for DLA deliveries. GSA and DLA, however, used different evaluation methodologies.

**REDACTED VERSION**

**EXHIBIT A**

26. After this information on the Government's "apples to oranges" comparison came to Benchmade's attention for the first time from the agency report in B-299366.3, Benchmade then filed a supplemental protest, B-299366.4, to GAO that challenged the past performance comparison the Government had made.

27. That supplemental protest, B-299366.4, also challenged another aspect of the Government's award to Gerber – the Government's use of Government Standard Form ("SF") 26 to award the contract for CLIN 0001 to Gerber. The SF 26 is attached hereto as Exhibit 3.

28. The Federal Acquisition Regulations provide that:

> Award is generally made by using the Award portion of Standard Form (SF) 33, Solicitation, Offer, and Award, or SF 1447, Solicitation/Contract (see 53.214). If an offer from a SF 33 leads to further changes, the resulting contract shall be prepared as a *bilateral* document on SF 26, Award/Contract.

FAR 14.408-1 (d)(1) (emphasis added).

29. At Block 18 of the SF 26 that the Government used to award the contract for CLIN 0001 to Gerber, the Contracting Officer checked the box which read:

> (contractor is not required to sign this document). Your offer on solicitation number SPM7LX07R0001 including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer; and (b) this award-contract. No further contractual documents necessary.

30. The SF 26, however, contains no "additions or changes made by" Gerber; rather, it is the Government that has made "additions or changes" on the form. Specifically, in Block 12B, the Government has added the portion of Gerber's offer relating to the protested knives.

31. In addition, Gerber's signature is not on the SF 26.

REDACTED VERSION

EXHIBIT A

32. On July 16, 2007, GAO denied protests B-299366.3 and B-299366.4 in a document that was not for public distribution.

33. The GAO has not yet issued the decision for the public distribution. Plaintiff will provide the Court with the public version when it is issued.

34. During the course of the GAO protests, Benchmade discovered flaws in the Gerber knife, which suggested to Benchmade that the winning Gerber knife was not "interchangeable" with the Benchmade knife and provided this information to DSCC.

35. The Government is currently in the process of testing the Gerber knife.

36. Immediately following the GAO's decision on July 16, 2007, the Government issued orders for the Gerber automatic knives under the Contract protested herein.

**Court of Federal Claims Protest**

37. Plaintiff filed a Complaint in this action in the Court of Federal Claims on August 6, 2007, and Defendant filed the Administrative Record on August 20, 2007.

38. The Administrative Record revealed information on "bundling" that had not been contained in the record before GAO. Upon reviewing the Administrative Record, Plaintiff learned for the first time that the Government failed to follow statutory and FAR requirements for issuing solicitations for bundled procurements.

39. FAR 2.101 defines "bundling" as:

> (1) Consolidating two or more requirements for supplies or services, previously provided or performed under separate smaller contracts, into a solicitation for a single contract that is likely to be unsuitable for award to a small business concern due to –
> (i) The diversity, size, or specialized nature of the elements of the performance specified;
> (ii) The aggregate dollar value of the anticipated award;

**REDACTED VERSION**

**EXHIBIT A**

> (iii) The geographical dispersion of the contract performance sites; or
> (iv) Any combination of the factors described in paragraphs (1)(i), (ii), and (iii) of this definition.
> (2) "Separate smaller contract" as used in this definition, means a contract that has been performed by one or more small business concerns or that was suitable for award to one or more small business concerns.
> (3) "Single contract" as used in this definition, includes –
> (i) Multiple awards of indefinite-quantity contracts under a single solicitation for the same or similar supplies or services to two or more sources (see FAR 16.504(c)); and
> (ii) An order placed against an indefinite quantity contract under a –
> (A) Federal Supply Schedule contract; or
> (B) Task-order contract or delivery-order contract awarded by another agency (i.e., Governmentwide acquisition contract or multi-agency contract).

40. A federal statute, 15 U.S.C. § 644(3), instructs the Government on the proper procedure for issuing a bundled solicitation and establishes the first of the two "30 day" pre-solicitation notice provisions the government must comply with. That statute provides in pertinent part:

> (a) …If a proposed procurement includes in its statement of work goods or services currently being performed by a small business, and if the proposed procurement is in a quantity or estimated dollar value the magnitude of which renders small business prime contract participation unlikely, or if a proposed procurement for construction seeks to package or consolidate discrete construction projects, or the solicitation involves an unnecessary or unjustified bundling of contract requirements, as determined by the Administration, the Procurement Activity shall provide a copy of the proposed procurement to the Procurement Activity's Small Business Procurement Center Representative at least 30 days prior to the solicitation's issuance along with a statement explaining (1) why the proposed acquisition cannot be divided into reasonably small lots (not less than economic production runs) to permit offers on quantities less than the total requirement, (2) why delivery schedules cannot be established on a realistic basis that will encourage small business participation to the extent consistent with the actual requirements of the Government, (3) why the proposed acquisition cannot be offered so as to make small business participation likely, (4) why construction cannot be procured as separate discrete projects, or (5) why the agency has determined

REDACTED VERSION

**EXHIBIT A**

> that the bundled contract (as defined in section 632(o) of this title) is necessary and justified. insert sentence about 30 day notice to SBA

41. FAR 19.202-1(e)(1) carries out this statutory requirement, stating that an agency must:

> Provide a copy of the proposed acquisition package to the SBA procurement center representative (or, if a procurement center representative is not assigned, see 19.402(a)) at least 30 days prior to the issuance of the solicitation if –
>
> > (iii) The proposed acquisition is for a bundled requirement. (See 10.001(c)(2)(i) for mandatory 30-day notice requirement to incumbent small business concerns.) The contracting officer shall provide all information relative to the justification of contract bundling, including the acquisition plan or strategy, and if the acquisition involves substantial bundling, the information identified in 7.107(e). When the acquisition involves substantial bundling, the contracting officer shall also provide the same information to the agency Office of Small and Disadvantaged Business Utilization.

In addition to the proposed acquisition package to be sent to the SBA procurement center representative, FAR 19.202-1(e)(2) also requires the contracting officer to:

> provide a statement explaining why the –
> (i) Proposed acquisition cannot be divided into reasonably small lots (not less than economic production runs) to permit offers on quantities less than the total requirement;
> (ii) Delivery schedules cannot be established on a realistic basis that will encourage small business participation to the extent consistent with the actual requirements of the Government;
> (iii) Proposed acquisition cannot be structured so as to make it likely that small businesses can compete for the prime contract
> (iv) Consolidated construction project cannot be acquired as separate discrete projects; or
> (v) Bundling is necessary and justified.

**REDACTED VERSION**

**EXHIBIT A**

42. FAR requires another 30 day pre-solicitation notice, this one to vendors. The Government must give suppliers 30 days notice that the Government intends to issue a solicitation for a bundled procurement. FAR 10.001(c)(2) states:

> (c) If an agency contemplates awarding a bundled contract, the agency –
> (2) At least 30 days before release of the solicitation or 30 days prior to placing an order without a solicitation –
> (i) Must notify any affected incumbent small business concerns of the Government's intention to bundle the requirement; and
> (ii) Should notify any affected incumbent small business concerns of how the concerns may contact the appropriate Small Business Administration representative.

43. [redacted]

> [redacted]

Administrative Record at 57. Benchmade has been unable to locate the cited authority that the Agency contends [redacted]

44. The Administrative Record contains no evidence that the Government complied with any of the statutory or FAR requirements set forth above.

**REDACTED VERSION**

**EXHIBIT A**

## COUNT I

**(The Government Failed to Set the Procurement Aside For Small Businesses in Violation of Statute and Regulation)**

45. Paragraphs 1-44 are re-alleged and hereby incorporated into this Count I by reference.

46. The Government's decision not to set aside the solicitation for small businesses was arbitrary, capricious, and not in accordance with the law and regulations.

47. FAR 19.502-2(b) describes the conditions under which the Government must designate a procurement as a total small business set-aside. The process is typically referred to as "the Rule of Two." FAR 19.502-2(b) states in pertinent part:

> (b) The contracting officer shall set aside any acquisition over $100,000 for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns (but see paragraph (c) of this subsection); and (2) award will be made at fair market prices.

48. A contracting officer must therefore do market research prior to issuing the solicitation to determine whether there is a "reasonable expectation" of receiving offers from at least two responsible small business concerns.

49. Following the Government's decisions to award a contract to Gerber, Benchmade learned that several other small businesses had submitted offers on the protested contract.

50. In addition, during the course of the GAO protests, the Government explained to Benchmade why the procurement had not been set aside for small businesses. The Government argued that, because only one small business, Benchmade, was the manufacturer, the Government could not set the procurement aside for small businesses. See Letter from Gail L. Booth to Terry O'Connor, dated March 5, 2007, attached hereto as Exhibit 4.

**REDACTED VERSION**

**EXHIBIT A**

51. The Government's failure to conduct an adequate market survey and its improper interpretation of the Rule of Two resulted in an unreasonable determination not to set aside the solicitation for small businesses and violated FAR 19.502-2(b).

**COUNT II**

**(DCSS's Conclusion that the Gerber Knife**
**Was Acceptable Was in Violation of Law and Regulations.)**

52. Paragraphs 1-51 are re-alleged and hereby incorporated into this Count II by reference.

53. The Government's conclusion that the Gerber knife was an acceptable substitute for the Benchmade knife, i.e., that it is interchangeable with the Benchmade knife, is arbitrary, capricious, and not in accord with law and regulation.

54. The Gerber knife is not "physically, mechanically, electrically, and functionally interchangeable" with the Benchmade automatic knife.

55. When a soldier would want to make sure the blade of the Benchmade "switch-blade" knife stayed open, he/she would simply have to push the button opening the blade. But to keep the blade of the Gerber model open, a soldier would have to push the button and then, assuming the soldier had enough time to do so in combat, take the extra step of locking the blade with the safety. This is due to it opening/unlocking if the blade is hit on the spine. This can happen with any upward stabbing motion.

56. The weight of Benchmade's knife is 3.9 ounces, as compared to Gerber's knife which is 7.0 ounces.

REDACTED VERSION

**EXHIBIT A**

57. Benchmade's handle is a contoured aluminum handle that allows for ease of use in both the traditional and reverse grip. Gerber’s handle is made of aluminum over steel liners and a steel spacer that adds weight and does not allow the user to effectively use the knife in the reverse grip.

58. Benchmade's blade is made of 154CM grade steel, which is not only hard but also durable. Gerber's blade is made of S30V grade steel, which is also hard but can be brittle. Tests show that S30V grade steel has a tendency to chip after hard use.

59. On information and belief, the only folding combat knifes that Plaintiff is aware of in the DLA system for the past six to eight years have been Benchmade automatic knives. More than 95% of the automatic knives Benchmade has shipped to DLA have had the safety on the spine of the knife. As soldiers who have trained with these knives go to use Gerber switch blade knife, they will find a heavier more cumbersome product that operates in a significantly different manner.

60. The Government’s conclusion that the Gerber knife is interchangeable and therefore an acceptable substitute for the Benchmade knife is an unreasonable determination and was made in violation of DLA regulations.

## COUNT III
**(The Government’s Award of the Contract to Gerber Using Government Form SF 26 Was Contrary to Regulations and Resulted in the Failure to Form a Valid Contract.)**

61. Paragraphs 1-60 are re-alleged and hereby incorporated into this Count III by reference.

62. The Government’s award of the Gerber Contract using Government Form SF 26 and without obtaining Gerber’s signature on the document is arbitrary, capricious, in violation of

REDACTED VERSION

**EXHIBIT A**

regulations, and did not result in a binding contract.

63. It is basic contract law that there must be an offer and acceptance before there can be a binding contract.

64. FAR 14.408-1 (d)(1) says that:

> Award is generally made by using the Award portion of Standard Form (SF) 33, Solicitation, Offer, and Award, or SF 1447, Solicitation/Contract (see 53.214). If an offer from a SF 33 leads to further changes, the resulting contract shall be prepared as a bilateral document on SF 26, Award/Contract.

65. When the Government awarded Gerber the contract, the Government used an SF 26.

66. Gerber's signature is not on the SF 26.

67. If the Government wanted to accept only half of Gerber's offer and wanted to use the SF 26, it should have obtained Gerber's signature or used the SF 33 Gerber submitted and in Block 19 "Accepted as to Items Numbered" inserted CLIN 0001. No additional Gerber signature would have been needed on that SF 33.

68. By using the wrong form and not getting Gerber's signature, the Government violated procurement regulations and basic contract principles.

**COUNT IV**
**(The Government Failed to Comply with the FAR Requirements**
**For Issuing a Solicitation for a Bundled Procurement )**

69. Paragraphs 1-68 of the Complaint are re-alleged and hereby incorporated into this Count IV by reference.

70. The Government must follow the procedure set forth in 15 U.S.C. § 644 in determining whether to issue a bundled procurement. When the proposed acquisition is for a bundled

REDACTED VERSION

**EXHIBIT A**

procurement, FAR 10.001(c)(2) requires the Agency to provide suppliers with 30 days notice that it intends to issue a solicitation for a bundled procurement, and FAR 19.202-1(e)(1) requires the Agency to provide a copy of the proposed acquisition package to the SBA procurement center representative at least 30 days prior to issuing the solicitation. The Administrative Record contains no information establishing Government compliance with any of these requirements.

71. The Government's decision to bundle the multiple requirements that were previously procured under separate small contracts into a single solicitation effectively precluded small businesses who would have otherwise been able to submit offers for the individual requirements from doing so.

72. The Government's failure to comply with the FAR requirements for issuing a solicitation for a bundled procurement was arbitrary, capricious, and not in accordance with the applicable law and regulations.

## BASIS FOR DECLARATORY AND INJUNCTIVE RELIEF

73. Benchmade has standing because there is a substantial chance that it would have received the contract award for CLIN 0001, but for the errors in the procurement process, including the following:

a. Benchmade was second in line only to Gerber, the successful offeror, for the award of CLIN 0001 in the final agency ranking;

b. Benchmade is a small business and incumbent small business concern and therefore was prejudiced by the Government's decision not to follow the statutory and regulatory bundling requirements which would have substantially diminished the likelihood of Gerber being eligible to submit an offer in the protested solicitation;

**REDACTED VERSION**

**EXHIBIT A**

c. Benchmade is a small business and was therefore prejudiced by the government's failure to designate the Solicitation as a small business set-aside and its unreasonable interpretation of the "Rule of Two," and resulted in an award of the CLIN 0001 to Gerber, a large business;

d. Benchmade was prejudiced by the Government's unfounded conclusion that the Gerber knife is "interchangeable" with the Benchmade knife and acceptable under the Solicitation, because Benchmade's offer was for the automatic knives specifically requested by the Government, whereas the automatic knives submitted in Gerber's offer were not.

74. As a result of the Government's unlawful actions, Benchmade will suffer irreparable injury for which it has no adequate remedy. Benchmade cannot sue the Government for lost profits. This injury consists of lost opportunity to fairly compete for and perform work under the Solicitation as well as the substantial profit it would have earned if allowed to perform under the contract.

75. The relief requested by Benchmade will not injure the Government and will serve the public interest by ensuring that the procurement was conducted pursuant to statute and regulations.

**REDACTED VERSION**

**EXHIBIT A**

## PRAYER FOR RELIEF

WHEREFORE, Benchmade Knife Company respectfully requests that this Court grant the following relief:

a. Declare that the solicitation should have been issued as a small business set-aside pursuant to FAR 19.502-2(b);

b. Declare that the solicitation should be canceled and be re-issued as a small business set-aside in accordance with FAR 19.502-2(b);

c. Declare that the Government lacked a rational basis for concluding that the Gerber knife was interchangeable with the Benchmade knife as required by Defense Logistics Agency clause 52.217-9002 CONDITIONS FOR EVALUATION AND ACCEPTANCE OF OFFERORS FOR PART NUMBERED ITEMS;

d. Declare that the Government's use of SF 26 to award Gerber the Contract was improper and that the Government did not validly accept Gerber's offer, thereby resulting in the Government's failure to enter into a valid contract with Gerber;

e. Declare that the Government's failure to comply with the FAR requirements for issuing a solicitation for a bundled procurement was arbitrary, capricious, and not in accordance with the applicable law and regulations;

f. Preliminarily and permanently enjoin the Government from proceeding with performance of the Gerber contract;

g. Grant such other and further relief, including the award of attorneys fees, court costs and bid preparation costs as the court may deem just and proper.

REDACTED VERSION

**EXHIBIT A**

Dated August 28, 2007
(Filed Electronically)

Respectfully submitted,

s/ Terrence O'Connor

Terrence O'Connor
Stephanie Wilson
Albo & Oblon, LLP
Courthouse Plaza
2200 Clarendon Blvd., Suite 1201
Arlington, VA 22201
Tel: 703-312-0410
Fax: 703-312-0415

*Counsel for Plaintiff Benchmade Knife Co.*

**CERTIFCATE OF SERVICE**

I hereby certify that on the 28th day of August, 2007, a copy of the foregoing "PLAINTIFF'S FIRST AMENDED COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Terrence O'Connor