Agreed-Upon Redacted Copy –
May Be Made Public

No. 07-593C
(Judge Wheeler)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

BENCHMADE KNIFE COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

GERBER LEGENDARY BLADES DIVISION,
FISKARS BRANDS, INC.,

Defendant-Intervenor.

---

# DEFENDANT-INTERVENOR'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND SUPPLEMENTAL STATEMENT OF FACTS

---

OF COUNSEL:
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated: August 28, 2007

David T. Ralston, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4097
Facsimile 202.672-5399

*Counsel of Record for Defendant-Intervenor Gerber Legendary Blades Division, Fiskars Brands, Inc.*

~~**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**~~

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ....................................................................................................2

SUPPLEMENTAL QUESTION PRESENTED ....................................................................2

STATEMENT OF THE CASE .................................................................................2

SUPPLEMENTAL STATEMENT OF FACTS ......................................................................2

ARGUMENT .......................................................................................................10

I. STANDARD OF REVIEW ................................................................................10

II. BENCHMADE'S SMALL BUSINESS SET ASIDE CLAIM HAS BEEN WAIVED, AND THE AGENCY'S DECISION NOT TO SET ASIDE WAS REASONABLE. ....................................................12

A. Under Blue & Gold Fleet, LP, Benchmade Has Waived Its Objection to Failure to Set Aside the Procurement for Small Business. Accordingly, Count I of Benchmade's Complaint Must Be Dismissed. ..............................................12

B. The Contracting Officer's Decision to Proceed With An Unrestricted Procurement was Reasonable. ..............................................17

III. COUNT II SHOULD BE DISMISSED FOR LACK OF PREJUDICE AND AS UNTIMELY BROUGHT. ON THE MERITS, DSCC's DETERMINATION THAT GERBER'S 06 AUTO TANTO KNIFE IS AN ACCEPTABLE PRODUCT UNDER DLA CLAUSE 52.217-9002 IS REASONABLE. ....................................19

A. Benchmade Does Not Allege Nor Show Competitive Prejudice Resulting From DSCC's Acceptance of Gerber's Knife as An Acceptable Product Pursuant to DLA Clause 52.217-9002. ..............................................19

B. Alternatively, Count II Should Be Dismissed as Waived Because Benchmade Knew the Gerber Knife Was Considered Acceptable When DSCC Conducted the Reevaluation of Proposals, Yet Participated in the Reevaluation Without Protest. ..............................................22

C. Benchmade Fails to Make Even a Prima Facie Showing that DSCC's Decision that the Gerber Knife Is

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Interchangeable with The Benchmade Knife Was Unreasonable. In Any Event the Decision was Patently Reasonable. ....23

IV. BENCHMADE'S ALLEGATION THAT THE AGENCY ERRED IN USING AN SF 26 TO ACCEPT GERBER'S PROPOSAL FOR CLIN 0001 IS UNTIMELY AND UTTERLY INCONSEQUENTIAL TO THE UNDERLYING AWARD DECISION AND, HENCE, PROVIDES NO BASIS FOR ANY RELIEF REQUESTED BY BENCHMADE. ....27

CONCLUSION ....31

DECLARATION OF EDGAR A. DALLAS

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

# TABLE OF AUTHORITIES

**Page No.**

**CASES**


*Advanced Data Concepts, Inc. v. United States*,
216 F.3d 1054 (Fed. Cir. 2000) .......... 11, 19, 29

*Aerolease Long Beach v. United States*,
31 Fed. Cl. 342 (1994), *aff'd*, 39 F.3d 1198 (Fed. Cir. 1994) .......... 14

*Alfa Laval Separation, Inc. v. United States*,
175 F.3d 1365 (Fed. Cir. 1999) .......... 29

*Argencord Mach. & Equip., Inc. v. United States*,
68 Fed. Cl. 167 (2005) .......... 13

*Banknote Corp. of America v. United States*,
56 Fed. Cl. 377 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004) .......... 11

*Bannum, Inc. v. United States*,
404 F.3d 1346 (Fed. Cir. 2005) .......... 11-12, 19, 29

*Blue & Gold Fleet, LP v. United States*,
___ F.3d ___, 2007 WL 1815678 (Fed. Cir. 2007) .......... *Passim*

*Burroughs Corp. v. United States*,
617 F.2d 590 (Ct. Cl. 1980) .......... 10

*E.W. Bliss Co. v. United States*,
77 F.3d 445 (Fed. Cir. 1996) .......... 11

*Electro-Methods, Inc. v. United States*,
7 Cl. Ct. 755 (1985) .......... 11

*Federal Management Systems, Inc. v. United States*,
61 Fed. Cl. 364 (2004) .......... 12

*Galen Medical Associates, Inc. v. United States*,
369 F.3d 1324 (Fed. Cir. 2004) .......... 10-11

*Grumman Data Systems Corp. v. United States*,
88 F.3d 990 (Fed. Cir. 1996) .......... 11

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
44 Fed. Cl. 540 (1999) .......... 29

*Info. Tech. & Applications Corp. v. United States*,
316 F.3d 1312 (Fed. Cir. 2003) ....................................................................................30

*International Outsourcing Services, LLC v. United States*,
69 Fed. Cl. 40 (2005) ...............................................................................................12

*Keeton Corrections, Inc. v. United States*,
59 Fed. Cl. 753 (2004) .............................................................................................12

*Moore's Cafeteria Services v. United States*,
77 Fed. Cl. 180 (2007) .............................................................................................17

*Myers Investigative & Sec. Serv., Inc. v. United States*, 275 F.3d 1366 (Fed. Cir. 2002)............30

*North Carolina Div. of Services for the Blind v. United States*,
53 Fed. Cl. 147 (2002), *aff'd*, 60 Fed. App. 826 (Fed. Cir. 2003) .........................................13

*Omega World Travel, Inc. v. United States*,
54 Fed. Cl. 570 (2002) .............................................................................................11

*Sam Gray Enters., Inc. v. United States*,
43 Fed. Cl. 596 (1999) .............................................................................................28

*Space Mark, Inc. v. United States*,
45 Fed. Cl. 267 (1999) .............................................................................................29

*Statistica, Inc. v. Christopher*,
102 F.3d 1577 (Fed. Cir. 1996)....................................................................................11

*Stratos Mobile Networks USA, LLC v. United States*,
213 F.3d 1375 (Fed. Cir. 2000)...............................................................................19, 29

**ADMINISTRATIVE DECISIONS**

*American Artisan Productions, Inc.*, B-292380, 2003 CPD ¶ 132, 2003 WL 21755984
(Comp. Gen. July 30, 2003)........................................................................................18

*APEC Technology Ltd.*, B-220644, 86-1 CPD ¶ 81, 1986 WL 60737 (Comp. Gen. Jan.
25, 1986) ................................................................................................................20

*C.R. Daniels, Inc.*, B-221313, 86-1 CPD ¶ 390, 1986 WL 63423 (Comp. Gen., Apr. 22,
1986) ......................................................................................................................20

*D.M.&E. of Las Vegas, Inc.*, B-261415, 95-2 CPD ¶ 141, 1995 WL 556305 (Comp. Gen.,
Sept. 20, 1995) .........................................................................................................26

*Delta Ventures*, B-238655, 90-1 CPD ¶ 588, 1990 WL 278112 (Comp. Gen., June 25,
1990) ......................................................................................................................12

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

*Fayetteville Group Practice, Inc.*, B-226422, 87-1 CPD ¶ 541, 1987 WL 96961 (Comp. Gen., May 26, 1987) ........ 18-19

*GMI Industries, Inc.*, B-215778, 84-2 CPD ¶ 77, 1984 WL 46270 (Comp. Gen., July 20, 1984) ........ 12

*Henschel, Inc.*, B-275390.5, 97-1 CPD ¶ 184, 1997 WL 279139 (Comp. Gen., May 14, 1997) ........ 21

*Hydro-Dredge Corp.*, B-215873, 85-1 CPD ¶ 132, 1985 WL 52313 (Comp. Gen., Feb. 4, 1985) ........ 20

*Julie Research Labs., Inc.*, B-240885, 90-2 CPD ¶ 526, 1990 WL 293679 (Comp. Gen., Dec. 31, 1990) ........ 21, 23, 24

*Loral Fairchild Corp. – Reconsideration*, B-242957.3, 91-2 CPD ¶ 524, 1991 WL 270350 (Comp. Gen., Dec. 9, 1991) ........ 20

*Perdomo & Sons, Inc.*, B-234614, 89-1 CPD ¶ 346, 1989 WL 240565 (Comp. Gen., Apr. 3, 1989) ........ 12

**STATUTES**

28 U.S.C. § 1491(b)(1) ........ 20

28 U.S.C. § 1491(b)(3) ........ 13, 17

**OTHER AUTHORITIES**

4 C.F.R. § 21.2(a)(1) ........ 14

Rule 52.1 ........ 1, 6-7

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| BENCHMADE KNIFE COMPANY, INC., Plaintiff, v. THE UNITED STATES, Defendant, and GERBER LEGENDARY BLADES DIVISION, FISKARS BRANDS, INC., Defendant-Intervenor. | ) | No. 07-593C (Wheeler, T.) |

**MOTION OF DEFENDANT-INTERVENOR FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND SUPPLEMENTAL STATEMENT OF FACTS**

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, Gerber Legendary Blades Division, Fiskars Brands, Inc. ("Gerber"), Defendant-Intervenor herein, requests that the Court enter judgment on the Administrative Record in favor of Defendant and Defendant-Intervenor, and deny the cross-motion of Benchmade Knife Company, Inc. ("Benchmade"), Plaintiff herein, for judgment on the Administrative Record and for injunctive relief. In support of its motion, Gerber relies on (i) the Administrative Record filed with the Court on August 20, 2007, (ii) the Statement of Facts filed by Defendant as part of Defendant's Motion for Judgment on the Administrative Record ("Defendant's Motion"), (iii) Defendant-Intervenor's Supplemental Statement of Facts set forth herein, and (iv) the following Brief.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## INTRODUCTION

Benchmade seeks to overturn the contract award made by the Defense Supply Center, Columbus ("DSCC"), a field activity of the Defense Logistics Agency ("DLA"), to Gerber for the supply to DSCC of Gerber's 06 automatic tanto combat knife. The United States has filed its Motion for Judgment upon the Administrative Record, demonstrating that DSCC acted properly in issuing the unrestricted solicitation and that Benchmade cannot show that DSCC acted arbitrarily or capriciously in making the award to Gerber. Gerber concurs with and adopts the position of the United States, as supplemented herein. As set forth in detail below, Benchmade's sundry complaints that DSCC acted improperly are untimely brought, result in no legally cognizable prejudice to Benchmade, and are without substantive merit. Accordingly, judgment should be entered for the United States and Gerber against Benchmade.

## SUPPLEMENTAL QUESTION PRESENTED

Gerber concurs with and adopts the Questions Presented of the United States, with the addition of:

Whether Benchmade's post-award protest concerning the agency's acceptance of Gerber's alternate offer for NSN 4457 should be dismissed for lack of prejudice, as waived for being untimely brought, or for failure to demonstrate a prima facie case?

## STATEMENT OF THE CASE

Gerber concurs with and adopts the Statement of the Case of the United States, with the addition of the supplemental statement of facts that follows.

## SUPPLEMENTAL STATEMENT OF FACTS

Gerber concurs with and adopts the United States' Statement of Facts, with the following additions:

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

1. [redacted] These approvals were required by FAR 19.506, concerning withdrawing or modifying a small business set-aside. The SBA approvals occurred one week prior to October 10, 2006, the date the agency posted a synopsis notice on the Federal Business Opportunities ("FedBizOps") website that SPM7LX-07-R-0001 (RFP R-0001) would be issued to procure the required combat knives upon an unrestricted basis. AR 115-16.

2. The instant acquisition was conducted pursuant to Defense Federal Acquisition Regulation Supplement ("DFARS") Subpart 217.75 (Acquisition of Replenishment Parts) and Defense Logistics Acquisition Directive ("DLAD") Subpart 17.75. DLAD 17.7501(b)(3) stipulates use of DLA clause 52.217-9002, entitled "Conditions for Evaluation and Acceptance of Offers for Part Numbered Items," for acquisitions pursuant to DLAD 17.75. DLA clause 52.217-9002 (June 2006) was incorporated in the instant solicitation. AR 144. DLAD 17.75 permits a potential contractor to submit an alternate item for evaluation even when there is no active procurement request. DLAD 17.75(b)(4)(iv).

3. [redacted] were surveyed by DSCC in spring 2006 concerning their interest in responding to the combat knife procurement, and [redacted] was contacted by DSCC concerning the combat knife procurement [redacted] AR 1, 2, 12, 15, 118. As of October 10, 2006, the date the agency posted the synopsis notice on the FedBizOps website that RFP R-0001 would be issued to procure the required knives upon an unrestricted basis, AR 115-16, neither [redacted]

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

[redacted] had submitted knife products to DSCC for approval as alternate items under DLAD 17.75.

4. [redacted] were sent RFP SP0750-06-R-4308 ("RFP R-4308"), issued August 2, 2006, to procure the referenced knives under a 100% small business set-aside. AR 60-96, 118; *see* AR 21-23. Neither [redacted] protested the cancellation of RFP R-4308, the small business set-aside RFP, nor did they protest the re-issuance of the RFP on an unrestricted basis as RFP R-0001.

5. As of August 2, 2006, the date RFP R-4308 was issued, the only parts approved by DSCC for supply under National Stock Number ("NSN") 1095-01-456-4457, Knife, Combat ("NSN 4457") were Benchmade's Stryker model knife, Part No. 9100SBT, and Masters of Defense Part No. CQD Mark II, AR 67.

6. Masters was neither a self-certified small business concern nor a contractor currently registered in the Central Contractor Registration database at any time pertinent to the instant acquisition. AR 103-04.

7. As of August 2, 2006, there were not two responsible small business concerns offering the DSCC-approved NSN 4457 products of different small business concerns.

8. As of October 10, 2006, the date RFP R-0001 was issued, the only parts approved by DSCC for supply under NSN-4457 were Benchmade's Part No. 9100SBT and Masters' Part No. CQD Mark II.

9. As of October 10, 2006, there were not two responsible small business concerns offering the DSCC-approved NSN 4457 products of different small business concerns.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

10. [redacted]

[redacted]

12. [redacted]

13. On December 21, 2006, DSCC awarded Gerber a contract for Gerber to supply DSCC with Gerber's 06 automatic tanto knife, Gerber Part No. 22-01055DS, in fulfillment of NSN 4457. AR 279-311. As a predicate to the contract award, Gerber's 06 automatic tanto knife (Part No. 22-01055DS) was determined by DSCC to be acceptable for NSN 4457 pursuant to DLA clause 52.217-9002. AR 223, 224-28, 232. Gerber's 06 automatic tanto knife, having been determined by DSCC to be an acceptable alternate product under NSN 4457, is deemed to be physically, mechanically and functionally interchangeable with Benchmade's automatic knife, Part No. 9100SBT. DLA clause 52-217.9002.

14. Benchmade filed a protest on January 9, 2007 with the Government Accountability Office ("GAO") concerning DSCC's contract award to Gerber for supply of Gerber's 06 automatic tanto knife (Part No. 22-01055DS), GAO Protest B-299366. AR 312-19. Benchmade's protest did not include either a protest ground or an allegation that Gerber's 06

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE
WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

automatic tanto knife (Part No. 22-01055DS) was not (a) acceptable for NSN 4457, nor (b) physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT.

15. GAO dismissed several protest grounds, including the small business set-aside issue, as untimely, noting that Benchmade did not challenge the agency's assertions as to untimeliness. AR 326.

16. On February 6, 2007, the GAO dismissed the balance of Benchmade's protest as academic, AR 335, because the agency proposed to take corrective action in the nature of cancellation of Gerber's contract and a new solicitation for NSN 4457, AR 327. Benchmade did not protest the proposed corrective action to the agency or GAO.

17. Gerber did protest the corrective action to GAO (B-299366.2) on February 15, 2007, on the basis that only a reevaluation, rather than cancellation of Gerber's contract and a new solicitation, was required to address the claims raised by Benchmade in its protest at GAO. Defendant-Intervenor's AR Supp. 2-67.[1] In response, the agency agreed that Gerber's contract would not be cancelled and that the corrective action would be limited to a reevaluation of proposals already submitted by Benchmade and Gerber. *Id.*, AR Supp. 69-70; Complaint, Ex. 4. Gerber then withdrew its protest on February 22, 2007. *Id.* Benchmade did not protest the agency's decision to limit corrective action, nor to keep Gerber's contract in place, pending the reevaluation.

18. On April 5, 2007, the contracting officer completed the reevaluation of offers, again deciding that Gerber's offer for NSN 4457 represented the best value to the Government, AR 229-47, and confirmed the award to Gerber. Defendant-Intervenor's AR Supp. 71.

---

[1] By separate filing, Gerber this date is moving to supplement the Administrative Record by the addition of six documents that relate to the proceedings before the GAO.

Benchmade again filed a protest with the GAO, B-299366.3, and later added supplemental protest grounds, B-299366.4. *Id.* AR Supp. 72-98; AR 350-59. Again, Benchmade's protests did not include either a protest ground or an allegation that Gerber's 06 automatic tanto knife (Part No. 22-01055DS) was not (a) acceptable for NSN 4457, nor (b) physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT.

19. Benchmade asserts in the protest before this Court for the first time that Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT. Complaint, Count II. Benchmade's complaint states that Benchmade raised allegations that Gerber's 06 automatic tanto knife was not interchangeable with the Benchmade knife "during the course of the GAO protests filed by Benchmade[.]" Complaint, ¶ 13; Complaint, Ex. 2, ¶ 2 ("During the GAO protests, Benchmade conducted tests on the automatic, or 'switchblade,' knife offered by Gerber Legendary Blades in response to Solicitation SPM7LX-07-R-0001.") Benchmade's allegations were not, however, raised as a protest ground or even an allegation presented to GAO during the course of the GAO protests. AR 312-35, 350-59; Defendant-Intervenor's AR Supp. 72-98.

20. Benchmade's Complaint admits that RFP R-0001 permitted products other than the Benchmade knife Part No. 9100SBT to be offered, provided only that the alternate product be determined acceptable pursuant to DLA clause 52.217-5002 as a substitute for the Benchmade knife. Complaint, ¶¶ 10, 11.

21. Benchmade's Complaint admits that "acceptability" of alternate products would be determined in accordance with DLA clause 52.217-9002. Complaint, ¶ 11.

22. Benchmade's complaint admits that a product determined by DSCC to be an "acceptable product" under NSN 4457 would be physically, mechanically and functionally

interchangeable with Benchmade's Part No. 9100SBT under clause 52.217-9002. Complaint, ¶¶ 11, 12, 44.

23. DSCC found Gerber's 06 automatic tanto knife (Part No. 22-01055DS) to be acceptable for NSN 4457. AR 223, 224-28.

24. DLAD 17.75(b)(3)(v) provides in pertinent part that: "It is the Government that determines if evidence furnished by offerors in accordance with 52.217-9002 is acceptable. . . . Contracting officers have broad flexibility to determine if a particular response conforms, as long as it is reasonable."

25. Although Benchmade's Complaint asserts that Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT, Complaint, ¶ 45, that paragraph references no evidentiary support for its allegations.

26. Although Complaint, ¶¶ 46-50, recite alleged differences between the Benchmade and Gerber knives, those paragraphs reference no evidentiary support for the allegations.

27. Although the allegations in Complaint, ¶¶ 46-50, appear to be drawn from the Affidavit of Greg Mooney, Complaint, Ex. 2 ("Mooney Aff."), and Complaint, ¶¶ 14-15, Complaint, ¶ 14, actually states only that Benchmade "discovered . . . flaws" that "suggested" the two knives were not interchangeable.

28. Benchmade's Motion for and Memorandum in Support of Preliminary Injunction ("Benchmade PI Motion") sought preliminary injunctive relief based in part on an assertion that DSCC's acceptance of the Gerber knife as "acceptable" violated DLA regulations. Benchmade PI Motion, at 7-10. The Benchmade PI Motion does not state, however, that the Gerber knife is not "acceptable" or "interchangeable" with the Benchmade knife. Rather, it states only that the

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

knives are "significantly" or "very different" and that Benchmade "believes" the Government's conclusion that the Gerber knife was interchangeable and an acceptable substitute was unreasonable. *Id.* at 8, 9, 10.

29. The only exhibit supporting Benchmade's Complaint or PI Motion addressing the acceptability of the Gerber knife and its interchangeability with the Benchmade knife is the Mooney Affidavit. Complaint, Ex. 2. Therein Mr. Mooney states only that he "believes" that the two knives are not interchangeable. *Id.* at ¶ 5. At no point in his affidavit does Mr. Mooney actually state that, as a matter of fact, the Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT.

30. The only specific ground that Mr. Mooney references in his affidavit for his belief that the two knives are not interchangeable is his assertion that [redacted] Complaint, Ex. 2, ¶ 5.

31. Contrary to Mr. Mooney's [redacted] assertion, the Gerber knife does not [redacted] Declaration of Edgar A. Dallas, Director, Research and Development, Gerber Legendary Blades, ¶¶ 6, 11 (attached hereto). [redacted] *Id.* ¶ 6.

32. During DSCC's engineering review of the Gerber knife to determine its acceptability for NSN 4457, [redacted]. AR 225. Mr. Rippl, DSCC's mechanical engineer, concluded specifically: [redacted]

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

[redacted] AR 224, ¶ 2 (emphasis added). [redacted] *Id.* ¶ 3.

33. Benchmade asserts that DSCC's conclusion that Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT is "not in accord with law and regulation" and "was made in violation of DLA regulations." Complaint, ¶¶ 44, 51; Benchmade PI Motion at 10. Neither the Complaint nor the Benchmade PI Motion, however, cite to any law or regulation that was violated.

## ARGUMENT

### I. STANDARD OF REVIEW

Gerber agrees with the United States' recitation of the appropriate standard of review and hereby adopts same. *See* Defendant's Motion, at 11-14. In addition thereto, Gerber wishes to emphasize the following points that are of pertinence to this proceeding.

The higher the degree of discretion allocated to the contracting officer, the more difficult it is to prove that a procurement decision was arbitrary and capricious. *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980). Negotiated procurements give a "breadth of discretion" to the contracting officer and impose a heavier burden of proof on the protestor. *Id.* at 598. Best value contract awards give a contracting officer more discretion than awards based on price alone. *Galen Medical Associates, Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir.

2004). The protestor's burden is especially heavy in negotiated, best value procurements. *Banknote Corp. of America v. United States*, 56 Fed. Cl. 377, 380 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

The deference accorded an agency's decision must be even greater when the court is asked to review a technical evaluation. "[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). *See also Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 578 (2002). "[W]here an agency's decisions are highly technical in nature, . . . judicial restraint is appropriate and proper." *Electro-Methods, Inc. v. United States*, 7 Cl. Ct. 755, 762 (1985). DLAD Subpart 17.75, the operative regulation concerning selection of alternate products under DLA clause 52.217-5002, specifically notes that contracting officers have broad flexibility to determine whether a submission is adequate. DLAD 17.7501(b)(3)(v).

Beyond a showing that the agency acted without a rational basis or contrary to law, the disappointed bidder, to prevail in a bid protest, must show that the government's actions actually prejudiced the protestor in the procurement process. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005); *Advanced Data Concepts, Inc. v. United States* 216 F.3d 1054, 1057 (Fed. Cir. 2000). In other words, the protestor "must show that there was a 'substantial chance it would have received the contract award but for that error.'" *Galen Med. Assocs.*, 369 F.3d at 1331, *quoting Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996). *De minimis* errors in the procurement process do not justify relief. *Grumman Data Systems Corp. v. United States*, 88 F.3d 990, 1000 (Fed. Cir. 1996).

Finally, with respect to proceedings under RCFC 52.1, *Bannum* makes clear that the existence of a fact question neither precludes the granting of a motion for judgment on the

administrative record nor requires this Court to conduct a full-blown evidentiary hearing. *Bannum, Inc.*, 404 F.3d at 1356-57. The Court is to proceed as if it were conducting a trial on the administrative record. *Id.* at 1357; *see also International Outsourcing Services, LLC v. United States*, 69 Fed. Cl. 40, 45-46 (2005).

## II. BENCHMADE'S SMALL BUSINESS SET ASIDE CLAIM HAS BEEN WAIVED, AND THE AGENCY'S DECISION NOT TO SET ASIDE WAS REASONABLE.

### A. Under Blue & Gold Fleet, LP, Benchmade Has Waived Its Objection to Failure to Set Aside the Procurement for Small Business. Accordingly, Count I of Benchmade's Complaint Must Be Dismissed.

On June 26, 2007, the United States Court of Appeals for the Federal Circuit, in an appeal from this Court, held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet, LP v. United States*, ___ F.3d ___, 2007 WL 1815678, at *3 (Fed. Cir. 2007). Agency failure to designate a procurement as a small business set aside is an alleged impropriety that is apparent on the face of the solicitation.[2]

---

[2] While this Court has not had occasion to classify such an alleged solicitation defect as a self-evident one, both common sense and a review of the RFP at issue here (AR 119) demonstrate that it is. Moreover, the Government Accountability Office ("GAO") has long declared that failure to set aside a procurement for small business, if such failure is a defect, is one that is apparent from the solicitation. *E.g., Delta Ventures*, B-238655, 90-1 CPD ¶ 588, 1990 WL 278112, at *2 (Comp. Gen., June 25, 1990); *Perdomo & Sons, Inc.*, B-234614, 89-1 CPD ¶ 346, 1989 WL 240565 (Comp. Gen., Apr. 3, 1989); *GMI Industries, Inc.*, B-215778, 84-2 CPD ¶ 77, 1984 WL 46270 (Comp. Gen., July 20, 1984). GAO decisions, although not binding on this Court, are nonetheless accorded deference in view of that body's special expertise. *See Keeton Corrections, Inc. v. United States*, 59 Fed. Cl. 753, 758 n.5 (2004) and decisions cited therein. *See also Federal Management Systems, Inc. v. United States*, 61 Fed. Cl. 364, 367 (2004) (GAO decisions persuasive albeit non-binding authority).

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Hence, under *Blue & Gold Fleet, LP*, the protest of an agency's failure to set aside a procurement for small business must be filed with this Court prior to the close of the bidding process.

The Federal Circuit grounded its waiver holding on several bases. First, it looked to this Court's jurisdictional statute, specifically 28 U.S.C. § 1491(b)(3) which requires that the Court in bid protest cases "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." Emphasizing the third prong of that mandate ("the need for expeditious resolution of the action"), the appeals court reasoned that "[r]ecognition of a waiver rule, which requires that a party object to solicitation terms during the bidding process, furthers this statutory mandate." *Blue & Gold Fleet, LP*, 2007 WL 1815678, at *3.

In support of the waiver rule being announced, the Federal Circuit next emphasized the importance of equity in the bid protest arena:

> In the absence of a waiver rule, a contractor with knowledge of a solicitation defect could choose to stay silent when submitting its first proposal. If its first proposal loses to another bidder, the contractor could then come forward with the defect to restart the bidding process, perhaps with increased knowledge of its competitors. A waiver rule thus prevents contractors taking advantage of the government and other bidders, and avoids costly after-the-fact litigation.

*Id.* at *4. In doing so, the appeals court echoed certain prior decisions of this Court that had employed similar reasoning. *See Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 175 n.14 (2005) ("Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm."); *North Carolina Div. of Services for the Blind v. United States*, 53 Fed. Cl. 147, 165 (2002) ("[W]here an offeror recognizes a significant deficiency or problem in a solicitation (*e.g.*, the erroneous application of a particular statute/regulation to the solicitation),

the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion . . . ."), *aff'd*, 60 Fed. App. 826 (Fed. Cir. 2003) (unpub.); *Aerolease Long Beach v. United States*, 31 Fed. Cl. 342, 358 (1994) ("If an offeror recognizes an ambiguity or other problem in the solicitation, proper procedure dictates that the offeror challenge the problem before submission of an offer. If the offeror declines to challenge the problem, the reviewing tribunal may find that the offeror waived its right to protest."), *aff'd*, 39 F.3d 1198 (Fed. Cir. 1994) (table).

As additional support for the waiver rule, the Federal Circuit referenced the GAO's timeliness rule, 4 C.F.R. § 21.2(a)(1), which, *inter alia*, requires challenges to solicitation defects to be raised before the time for submitting proposals, and endorsed its utility. *Blue & Gold Fleet, LP*, 2007 WL 1815678, at *4. The appeals court also analogized to its patent jurisdiction insofar as the doctrines of laches and estoppel can be found to bar relief if no statute of limitations applies. *Id.* at *5.

The facts of the present case conclusively establish that the solicitation defect waiver rule enunciated in *Blue & Gold Fleet, LP* should be applied to Benchmade, and that its protest of failure to set aside the procurement for small business should be dismissed. The relevant chronology follows.

The procuring agency, DSCC, first issued RFP R-4308 for acquisition of the tanto automatic knife, NSN 4457, on August 2, 2006.[3] AR 60. The procurement was designated as a small business set aside. *Id.* Following objection to the set-aside nature of the procurement and

---

[3] The Solicitation also sought to procure a fixed blade knife, NSN 1095-01-466-8569.

investigation of the bases of that objection, DSCC cancelled RFP R-4308 on August 29, 2006. AR 106-07. On October 10, 2006, DSCC posted a synopsis on FedBizOps of a forthcoming procurement for NSN 4457. AR 115-16. This synopsis noted that the new procurement replaced the earlier solicitation of August 2, 2006 that had been cancelled. It also gave notice that the forthcoming procurement would be "unrestricted." AR 116. RFP R-0001 followed on November 2, 2006.[4] AR 119, 121. It clearly indicated that the procurement was unrestricted. AR 119, block 6.a. The due date for receipt of proposals, originally December 4, 2006, was later set at November 17, 2006. AR 155-56. The Administrative Record reveals that at no time following August 29, 2006, through and including November 17, 2006, did Benchmade protest failure on the part of DSCC to set aside the procurement for small business – not to the agency, not to GAO, nor to this Court. Rather, Benchmade submitted a proposal on November 17, 2006 in response to the unrestricted RFP.

Following receipt of proposals, DSCC, on December 21, 2006, announced notice of award of Contract SPM7LX-07-D-7026 for NSN 4457 (the automatic tanto knife) to Gerber.[5] AR 279 *et seq.* Subsequent to a debriefing, Benchmade protested award of the contract to Gerber for NSN 4457 to the GAO on January 9, 2007 (GAO # B-299366.1). AR 312. One of the grounds of protest was that the procurement had not been set aside for small business. *Id.* at 316-17. Agency counsel on January 23, 2007 moved to dismiss the protest in its entirety. AR 320-25. On January 31, 2007, via e-mail, GAO declined to dismiss the protest in its entirety but

---

[4] RFP R-0001, like its predecessor, encompassed both NSN 4457 (the tanto automatic knife) and NSN 1095-01-466-8569, the fixed blade knife.

[5] Contemporaneous therewith, DSCC announced notice of award of a contract for NSN 1095-01-466-8569 to Benchmade.

did dispose of three protest grounds as untimely because they should have been raised prior to the deadline for submitting proposals. AR 326. One of those three grounds dismissed as untimely was that DSCC failed to set aside the procurement for small business. *Id.* The GAO decision notes that Benchmade did not challenge DSCC's position that this ground was untimely brought. *Id.*

Upon dismissal of its protest ground relating to failure to set aside the procurement for small business, Benchmade did not forthwith bring that complaint to this Court. Rather, the GAO proceeding continued. The agency determined to undertake corrective action, resulting in dismissal of the Benchmade protest on February 6, 2007. AR 335. Gerber then protested the scope of the proposed corrective action (GAO # B-299366.2) on February 15, 2007, Defendant-Intervenor's AR Supp. 2-67, following which DSCC concluded to reevaluate final proposals rather than resolicit, *id.* AR Supp. 69-70; *see* Complaint, Ex. 4. Gerber thereupon withdrew its protest on February 22, 2007. *Id.* AR Supp. 69-70; Complaint, Ex. 4. Benchmade did not protest this revised corrective action, either at GAO or at this Court, nor at that time did Benchmade come to this Court with its claim that the procurement should have been set aside for small business.

Following reevaluation of proposals, DSCC, on April 5, 2007, reconfirmed the award to Gerber of Contract SPM7LX-07-D-7026 for NSN 4457 (the automatic tanto knife), which had remained in place pending completion of the corrective action. *Id.* AR Supp. 71. Benchmade protested to GAO on April 13, 2007 (GAO # B-299366.3), *id.* AR Supp. 72-98, and, after submission of the agency report, filed a supplemental protest (GAO # B-299366.4) on May 29, 2007, AR 350-59. GAO's decision denying and dismissing these protests was issued July 16, 2007. Following passage of another three weeks, Benchmade filed its action in this Court on

August 6, 2007, raising as one of its claims the contention that the procurement should have been set aside for small business.

The waiver rule of *Blue & Gold Fleet, LP* is now the established law of the Federal Circuit and, thus, of this Court.[6] Therefore, a bid protest challenging the terms of a solicitation must be filed with this Court before the deadline for receipt of proposals or else be dismissed as waived. With respect to the instant procurement, the deadline for receipt of proposals was November 17, 2006. Benchmade's complaint, alleging as Count I the solicitation defect of failure to set aside the procurement for small business, was not filed until August 6, 2007. Accordingly, Benchmade has waived the solicitation defect of which it complains, and Count I of its complaint must be dismissed. Dismissal serves the purposes underlying the waiver rule that are articulated in *Blue & Gold Fleet, LP*. It fosters the objective of expeditious resolution of the action, as mandated by 28 U.S.C. § 1491(b)(3). It provides a disincentive for strategic behavior that seeks to game the system by "rolling the dice" first and then only protesting about a solicitation term if contract award is not received. And, finally, it is consistent with the GAO's timeliness rule with respect to solicitation defects.

### B. The Contracting Officer's Decision to Proceed With An Unrestricted Procurement was Reasonable.

As to the merits of Count I, Gerber concurs with and adopts the position of the United States. Gerber would emphasize the following additional points.

The reasonableness of the Contracting Officer's decision to designate the procurement as unrestricted is underscored by the fact that [redacted]

[6] *See Moore's Cafeteria Services v. United States*, 77 Fed. Cl. 180, 184-85 (2007), following *Blue & Gold Fleet, LP*.

[redacted][7]

Benchmade's attempt to rely on the record of offers received as evidence of inadequate market research is legally unavailing.[8] *See* Benchmade PI Motion, at 6. The Contracting Officer's decision is judged from the perspective of information available at the time of issuance of the solicitation. "Information that first becomes available after issuance of a solicitation does not demonstrate the unreasonableness of a contracting officer's prior determination not to set

---

[7] [redacted] This agreement is consistent with the fact that, when the unrestricted RFP was issued on October 20, 2006, there were not two small business firms qualified to offer NSN 4457 products. Thus, the "rule of two" was not met. FAR 19, 502-2(b). *See* Supplemental Statement of Facts, *supra,* ¶¶ 5-9, at 3-4.

[8] Moreover, the factual predicate for the argument is infirm. Besides Gerber and Benchmade, timely proposals were received from [redacted] AR 232-33. [redacted] was a small business dealer (not a manufacturer) who offered to supply the Benchmade part number at a price [redacted] in excess of that offered by Benchmade. *Id.* at 233, 235. [redacted] was found to be outside the competitive range. *Id.* at 235. [redacted] described as a small manufacturer, attempted to offer an alternate product but provided only a sample without any technical data package. *Id.* at 232, 234. With no technical data, [redacted] product could not be fully evaluated, and its proposal was found not acceptable. *Id.* at 234. Thus, only one qualifying small business product was offered – by Benchmade. Rather than undercut the Contracting Officer, this only goes to confirm the reasonableness of her decision.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

aside." *Fayetteville Group Practice, Inc.*, B-226422, 87-1 CPD ¶ 541, 1987 WL 96961, at *3 (Comp. Gen., May 26, 1987).

## III. COUNT II SHOULD BE DISMISSED FOR LACK OF PREJUDICE AND AS UNTIMELY BROUGHT. ON THE MERITS, DSCC's DETERMINATION THAT GERBER'S 06 AUTO TANTO KNIFE IS AN ACCEPTABLE PRODUCT UNDER DLA CLAUSE 52.217-9002 IS REASONABLE.

### A. Benchmade Does Not Allege Nor Show Competitive Prejudice Resulting From DSCC's Acceptance of Gerber's Knife as An Acceptable Product Pursuant to DLA Clause 52.217-9002.

To prevail on the merits of a bid protest in this Court, the protester must show that the government action alleged to be unreasonable or in violation of law resulted in actual competitive prejudice to the protester in the procurement process. *Bannum; Advanced Data Concepts; Stratos Mobile Networks USA, LLC v. United States*, 213 F.3d 1375, 1380 (Fed. Cir. 2000). Benchmade alleges in Count II of the Complaint that DSCC's acceptance of the Gerber 06 automatic tanto knife, pursuant to DLA clause 52.217-9002, as a interchangeable product with the Benchmade knife was error. Complaint, ¶ 51; Benchmade PI Motion, at 10. Benchmade's Complaint, however, does not allege, nor does its Motion or other papers demonstrate, how DSCC's supposed error resulted in actionable prejudice to Benchmade.

To the extent Benchmade may now belatedly cry prejudice because DSCC's action *enhanced* competition, resulting in an end to Benchmade's admitted monopoly on supplying DLA with automatic combat knives,[9] the Court should readily dismiss the count for lack of prejudice. Gerber does not contest that Benchmade's pricing has been, from Benchmade's perspective, adversely impacted by its loss of its monopoly supplier position for NSN 4457

[9] Complaint, Ex. 2 (Mooney Affidavit) ¶ 4 (asserting Benchmade has been DLA's only supplier of folding combat knives for the past six to eight years).

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

products. As shown in the agency's Previous Acquisition History chart, [redacted] Faced with competition from Gerber (and potentially others) in the instant procurement, Benchmade's price for the same knife dropped to a range of [redacted]. AR 248. But, this healthy result of competitive pressures is hardly the type of "prejudice" actionable under 28 U.S.C. § 1491(b)(1). The Court's bid protest process is intended to promote, not limit, competition in government procurement. To permit a bid protest to serve as a vehicle to protect an offeror's monopoly undermines the very purpose and integrity of the procurement process. For this reason, GAO has steadfastly refused to entertain such anti-competitive demands in bid protests, noting, for instance, in the context of a protester's complaint that specifications were *not restrictive* enough, that: "A protester's interest as a beneficiary of restrictive specifications is not protectable under our bid protest function, which is intended to ensure the statutes and regulations requiring full and open competition in federal procurement are met." *C.R. Daniels, Inc.*, B-221313, 86-1 CPD ¶ 390, 1986 WL 63423, at *3 (Comp. Gen., Apr. 22, 1986); *accord, Loral Fairchild Corp. – Reconsideration*, B-242957.3, 91-2 CPD ¶ 524, 1991 WL 270350, at *2 (Comp. Gen., Dec. 9, 1991)("Our Office will not review a protest that an agency should have drafted additional, more restrictive specifications in order to meet the protester's perception of the agency's minimum needs."). Rather, as GAO has observed, "it is a general rule of federal procurement that specifications should be drafted in such a manner that competition is maximized, unless a restrictive requirement is necessary to meet the government's legitimate minimum needs." *APEC Technology Ltd.*, B-220644, 86-1 CPD ¶ 81, 1986 WL 60737, at *6 (Comp. Gen., Jan. 23, 1986); *see Hydro-Dredge Corp.*, B-215873, 85-1 CPD ¶ 132, 1985 WL 52313 (Comp. Gen.,

Feb. 4, 1985). On a similar basis, the Court should rebuff Benchmade's transparent effort to preserve its monopoly and maintain its status as the virtual sole approved supplier of automatic combat knives. *See* Mooney Aff. ¶ 4.

GAO has recognized that an agency's improper acceptance of an "alternate product" under clauses such as DLA clause 52.217-9002 can cause competitive prejudice; however, such prejudice arises when the offeror claims that (a) the agency's acceptance of the alternate product represents an unannounced relaxation of the agency's minimum requirements, and (b) the protester, had it known of the relaxed requirements, would have proposed a less expensive product meeting the reduced requirements. *E.g., Henschel, Inc.*, B-275390.5, 97-1 CPD ¶ 184, 1997 WL 279139 (Comp. Gen., May 14, 1997)(acceptance of non-conforming product as alternate results in prejudice where protester claims it would have submitted lower priced product). But in the absence of such allegations or other demonstration that accepting the alternate product caused the protester actual prejudice, GAO will dismiss the protest for failure to meet the prejudice requirement. *Julie Research Labs., Inc.*, B-240885, 90-2 CPD ¶ 526, 1990 WL 293679 (Comp. Gen., Dec. 31, 1990).

Here, while Benchmade claims that Gerber's knife was not acceptable because [redacted], Benchmade PI Motion, at 10 & Complaint, Ex. 2, ¶ 5, Benchmade makes no claim nor provides any proof that this represents a relaxed (versus different) requirement, or that Benchmade would have offered a less expensive knife had it known that Gerber's knife would be deemed acceptable. Hence, Benchmade has suffered no legally cognizable prejudice here (nor has it even alleged any), and its Count II therefore should be dismissed. *See Julie Research Labs, supra.*

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

### B. Alternatively, Count II Should Be Dismissed as Waived Because Benchmade Knew the Gerber Knife Was Considered Acceptable When DSCC Conducted the Reevaluation of Proposals, Yet Participated in the Reevaluation Without Protest.

DSCC's award to Gerber was announced on December 21, 2006, and since that date Benchmade has known that DSCC determined Gerber's 06 auto tanto knife to be interchangeable with the Benchmade 9100SBT knife pursuant to DLA clause 52.217-9002. While Benchmade has protested the award to GAO repeatedly, it has never asserted that DSCC's acceptance of the Gerber knife was error. Statement of Supplemental Facts, *supra,* ¶¶ 14-18, at 5-6.

The initial protest ended when DSCC proposed corrective action in the nature of an entirely new solicitation and procurement process. *Id.,* ¶ 17, at 5. Gerber protested the new solicitation, and in response DSCC agreed to limit the corrective action to a reevaluation of the Benchmade and Gerber proposals only. *Id.* In the DSCC reevaluation, Benchmade obviously knew that the Gerber knife would be considered interchangeable with the Benchmade knife; indeed, Benchmade had known that DSCC considered the Gerber knife acceptable since December 21, 2006, months before the reevaluation. The sole purpose of the reevaluation was to compare the Gerber and Benchmade proposals to each other, and only to each other. Benchmade did not protest – to the agency, to GAO, or to this Court – that DSCC was proceeding to evaluate the Gerber knife against the Benchmade knife. Then, when the reevaluation resulted in confirmation of the award to Gerber, Benchmade again protested to GAO. Still, Benchmade said nothing about DSCC's determination that the Gerber knife was acceptable and interchangeable with the Benchmade knife. It was not until arriving in this Court that the interchangeability issue was raised – six months, three protests, and one procurement round after Benchmade first learned that Gerber's knife was deemed acceptable.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

As discussed above, the Federal Circuit held in *Blue & Gold Fleet, LP* that protests of patent solicitation improprieties must be brought prior to the time for proposal submission or they are waived. The foregoing sequence of events presents circumstances directly analogous to *Blue & Gold Fleet, LP*. Benchmade knew when DSCC commenced the reevaluation that Gerber's 06 auto tanto knife was considered acceptable, and had known that fact for several months prior to the commencement of the reevaluation. Yet, Benchmade did nothing to contest DSCC's acceptance of Gerber's knife during the reevaluation. Instead, Benchmade elected to let the procurement proceed, knowing that the very purpose of the automatic knife procurement was solely to make an award decision based on a price and technical comparison of the two knives. Similar to circumstances in *Blue & Gold Fleet, LP*, Benchmade now first contends, after the procurement is done, that facts it knew prior to the commencement of the reevaluation render the reevaluation an unlawful, meaningless process from the outset. Having participated in the reevaluation without complaint, Benchmade should not now be heard to complain that the very terms on which the entire reevaluation was conducted were unlawful from the beginning. The *Blue & Gold Fleet, LP* decision was grounded on (a) the need for expeditious resolution, (b) the inequity of permitting bidders to "roll the dice" and if they lose, claim the process was infirm, (c) the GAO timeliness rule, and (d) laches and estoppel. *See supra*, at 12-13. Benchmade's conduct here runs afoul of each of those points, and its Count II should be held as waived for being untimely brought.

**C. Benchmade Fails to Make Even a Prima Facie Showing that DSCC's Decision that the Gerber Knife Is Interchangeable with The Benchmade Knife Was Unreasonable. In Any Event the Decision was Patently Reasonable.**

As discussed above, the instant procurement relied upon DLA clause 52.217-9002, commonly referred to as a "products offered" clause, *see Julie Research Labs.*, to set forth the

agency's minimum requirements and the standard for selection of alternate products.[10] The core of the evaluation of the alternate product is whether it is interchangeable with the product used by the agency to describe its needs:

> Evaluating offers of alternate products pursuant to the Products Offered clause essentially involves a determination of the technical acceptability of the proposal (that is, compliance with the technical requirement to describe clearly the characteristics of the product and to establish its interchangeability with the brand-name product), and not an evaluation of the alternate item itself.

*Julie Research Labs*, 1990 WL 293679, at *3. In *Julie Research Labs*, GAO also captured the essence of the interchangeability test:

> We believe that the concept of interchangeability as properly interpreted requires only that no material differences exist between the alternate product and the referenced product with respect to those characteristics essential to the proper performance of the item.

*Id.* at *4. Hence, the prima facie showing required for Benchmade's Count II is probative evidence that there are material differences between the Gerber and Benchmade knives with respect to characteristics essential to the proper performance of those knives. Benchmade's Complaint and related papers fail that basic requirement.

While Benchmade's Complaint asserts that Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT, Complaint, ¶ 45, that paragraph references *no* evidentiary support for its allegations. In like manner, while Complaint, ¶¶ 46-50, recite alleged differences between the Benchmade and Gerber knives, those paragraphs reference *no* evidentiary support

---

[10] Clause 52.217-9002 is promulgated under DLAD, Subpart 17.75. DLAD 17.75(b)(3)(v) provides in pertinent part that: "It is the Government that determines if evidence furnished by offerors in accordance with 52.217-9002 is acceptable. . . . . Contracting officers have broad flexibility to determine if a particular response conforms, as long as it is reasonable."

for the allegations. Although these allegations appear to be drawn from the affidavit of Mr. Mooney, and Complaint, ¶¶ 14-15, paragraph 14 of the Complaint actually states only that Benchmade "discovered . . . flaws" that "suggested" the two knives were not interchangeable.

Nor does Benchmade's PI Motion state that the Gerber knife is not "acceptable" or "interchangeable" with the Benchmade knife. Rather, that motion states only that the knives are "significantly" or "very different" and that Benchmade "believes" the Government's conclusion that the Gerber knife was interchangeable and an acceptable substitute was unreasonable, Benchmade PI Motion, at 8, 9, 10. At no point does Benchmade claim that these differences are material or pertain to the characteristics essential to the proper performance of the knives.

The only evidentiary item in Benchmade's papers addressing the acceptability of the Gerber knife and its interchangeability with the Benchmade knife is the Mooney Affidavit. Complaint, Ex. 2. Therein Mr. Mooney states only that he "believes" that the two knives are not interchangeable. *Id.* ¶ 5. At no point in his affidavit does Mr. Mooney actually state that, as a matter of fact, the Gerber's 06 automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT. Nor does Mr. Mooney state that the differences he notes are material or pertain to the characteristics essential to the proper performance of the knives. The only specific ground that Mr. Mooney references in his affidavit for his belief that the two knives are not interchangeable is his assertion that [redacted] *Id.* While Gerber demonstrates *infra* that Mr. Mooney's contention is factually wrong, [redacted] nothing in the record advanced by Benchmade or found in the Administrative Record indicates that [redacted] is a material difference or one connected to the characteristics essential to the proper performance of the knives.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Even were Benchmade able to make a prima facie showing, the Administrative Record demonstrates that DSCC's decision finding the Gerber knife acceptable was supported by ample record evidence, and its conclusions are consistent with that evidence. In an acceptability/interchangeability determination under DLA clause 52.217-9002, the agency enjoys considerable discretion, and its determination will not be overturned unless unreasonable:

> The procuring agency is responsible for evaluating the data supplied by an offeror and ascertaining if it provides sufficient information to determine the acceptability of a product. Marine Elec. Sys., B-253630, Sept. 15, 1993, 93-2 CPD ¶ 175. We will not disturb an agency's technical determination in this regard unless it is unreasonable. Id.

*D.M.&E. of Las Vegas, Inc.*, B-261415, 95-2 CPD ¶ 141, 1995 WL 556305, at *2 (Comp. Gen., Sept. 20, 1995). Gerber presented DSCC with an extensive TDP addressing the interchangeability of the Gerber and Benchmade knives. AR 158-222. After review of Gerber's TDP, Mr. Rippl, DSCC's mechanical engineer, concluded specifically: [redacted] AR 224, ¶ 2 (emphasis added). Mr. Rippl further observed that [redacted] *Id.* at ¶ 3. Notably, factors related to the [redacted] issue now raised by Mr. Mooney were addressed during DSCC's engineering review of the Gerber knife when determining its acceptability for NSN 4457, as [redacted] were specifically examined, among other factors. AR 225. DSCC's decision is supported by and consistent with the record.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Gerber's own research supports DSCC's conclusions. Contrary to Mr. Mooney's assertion, the Gerber knife [redacted] Declaration of Edgar A. Dallas, Director, Research and Development, Gerber Legendary Blades, ¶¶ 6, 12 (attached hereto). Both the Gerber and the Benchmade knives [redacted] *Id.* at ¶ 6.[11]

**IV. BENCHMADE'S ALLEGATION THAT THE AGENCY ERRED IN USING AN SF 26 TO ACCEPT GERBER'S PROPOSAL FOR CLIN 0001 IS UNTIMELY AND UTTERLY INCONSEQUENTIAL TO THE UNDERLYING AWARD DECISION AND, HENCE, PROVIDES NO BASIS FOR ANY RELIEF REQUESTED BY BENCHMADE.**

Benchmade alleges that the agency's use of the SF 26 form to accept Gerber's proposal for CLIN 0001 violated FAR 14.408-1(d)(1) and "did not result in a binding contract." Benchmade PI Motion, at 10-11; Complaint, ¶¶ 52-59. In fact, Benchmade goes so far as to contend – without citation to any legal authority to support its assertion – that the agency's failure to obtain Gerber's signature on the SF 26 rendered the resulting contract "null and void."[12] Benchmade PI Motion, at 11. This Court need not – and indeed *cannot* – reach the

[11] Mr. Dallas also refutes other of Mr. Mooney's claims in his affidavit, *id.* at ¶¶ 5-11; however, as Mr. Mooney does not link these other claims to his conclusion on interchangeability, they are not addressed in this brief. Benchmade also asserts that DSCC's conclusion that Gerber's automatic tanto knife (Part No. 22-01055DS) is not physically, mechanically and functionally interchangeable with Benchmade's Part No. 9100SBT is "not in accord with law and regulation" and "was made in violation of DLA regulations." Complaint, ¶¶ 44, 51; Benchmade PI Motion, at 10. Neither the Complaint nor the Motion, however, cite to any law, regulation or DLA regulation that was violated, thereby preventing Gerber from responding to these claims.

[12] Though this Court need not reach the merits of Benchmade's claim that Gerber's failure to countersign the SF 26 renders the entire contract "null and void," Benchmade's argument cannot withstand scrutiny under the same "basic contract principles" on which it purports to rely. *See* Benchmade PI Motion, at 11; Complaint, ¶ 59. This Court has recognized

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

merits of these make-weight and unsupported claims, for two distinct and independently dispositive reasons: first, Benchmade has waived these solicitation-based claims by failing to assert them prior to the closing date of the RFP; secondly, Benchmade cannot demonstrate that the alleged error had any impact whatsoever on the underlying award decision and therefore cannot establish the prejudice necessary to a challenge to the alleged error.

In its Motion for Judgment Upon the Administrative Record, the United States demonstrated that Benchmade's allegation regarding the sufficiency of the SF 26 to execute a contract for split awards under the RFP (i.e., award of individual CLINs to separate contractors) is untimely and therefore has been waived. Defendant's Motion at 22-23. As the United States explained, the allegation is untimely because the RFP expressly advised that award could be made via the SF 26[13] and that split awards of the two CLINs were possible,[14] yet Benchmade

---

that a valid contract with the United States is established through proof of the following elements: "a mutual intent to contract, including offer, acceptance and consideration; and authority on the part of the government representative who entered into the agreement to bind the United States." *Sam Gray Enters., Inc. v. United States*, 43 Fed. Cl. 596, 600 (1999). Each of these elements is indisputably present with respect to Contract 7026. Benchmade suggests that the agency's failure to require Gerber's countersignature on the SF 26 used to award the contract somehow means the United States "did not validly accept Gerber's offer." Complaint, at 14. However, the multiple orders already placed and delivered under Contract 7026 prove that the agency has accepted Gerber's offer and that Gerber has entered into a binding contract with the agency.

[13] The first page of the RFP contained the following express notice to prospective offerors: "IMPORTANT – Award will be made on this Form, or on Standard Form 26, or by other authorized official written notice." AR 121.

[14] The RFP advised prospective offerors of the Government's intention to make its award decision on a CLIN-by-CLIN basis in multiple places: "Awards will be made on an 'all or none' basis by National Stock Number (NSN). Therefore, there may be split awards to various awardees," AR 122; "Award will be made on an all or none basis per individual CLIN (NSN) for the supplies covered under this contract," AR 124; "The award of each individual item of supply specified in this solicitation will be made to the responsible offeror whose offeror [*sic*] conforms with the solicitation and is most advantageous to the Government," AR 152.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

failed to object on that basis (or on any basis, for that matter) prior to the RFP's closing date. Accordingly, Benchmade's after-the-fact assertion that the use of the SF 26 to make a split award to Gerber somehow violates "procurement regulations" has been waived and cannot be entertained now in this forum. *Blue & Gold Fleet, LP*, 2007 WL 1815678.

Even had Benchmade properly preserved its ability to challenge the form on which the agency made award of the contract to Gerber, its challenge to a purely technical matter of contract administration between Gerber and the agency fails to articulate any conceivable prejudice to Benchmade – let alone the level of competitive prejudice required to invoke this Court's review. It is well-established that a protestor must do more than simply allege the existence of an error in the procurement process; for such an error to be actionable, the protestor must also demonstrate that it was *prejudiced* by the error. *Bannum; Advanced Data Concepts; Stratos Mobile Networks; see Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367, 1368 (Fed. Cir. 1999). Consistent with the Federal Circuit's definition of prejudice, this Court has recognized that, "[i]f correcting an error would not materially affect the outcome of the decision, it does not provide a basis for relief." *Space Mark, Inc. v. United States*, 45 Fed. Cl. 267, 273 (1999) (citing *Alfa Laval*, 175 F.3d at 1367, and *Impresa Construzioni Geom. Domenico Garufi v. United States*, 44 Fed. Cl. 540, 547 (1999)).

Benchmade has failed to articulate any prejudice it suffered as a result of the alleged error in the use of the SF 26 to render the award to Gerber. Neither its Complaint nor its PI Motion offers even the slightest hint as to how the purported "violation of procurement regulations" represented by the use of the SF 26 could have possibly affected the underlying award decision. This silence betrays Benchmade's recognition that any claim that the agency's use of the SF 26

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

somehow influenced the underlying award decision or the agency's comparative assessment of Gerber's and Benchmade's proposals would be laughable.

Benchmade's challenge to the SF 26, at its core, is that Gerber did not countersign the form. *See* Complaint, ¶¶ 57-59; Benchmade PI Motion, at 10-11. This allegation does not go to the validity of the underlying award decision or the merits of the source selection decision itself. Benchmade cannot meet the threshold for demonstrating prejudice, because it cannot plausibly argue that "there was a substantial chance it would have received the contract award but for" Gerber's failure to countersign the SF 26. The Federal Circuit has characterized the ability to demonstrate prejudice as a "necessary element" of standing. *Myers Investigative & Sec. Serv., Inc. v. United States,* 275 F.3d 1366, 1370 (Fed. Cir. 2002). *See also Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (holding that "the question of prejudice goes directly to the question of standing"). Thus, as the United States has pointed out in Defendant's Motion, Benchmade lacks standing to challenge the use of the SF 26 to award Gerber's contract, and Count III of the Complaint should be dismissed on that basis.[15] Defendant's Motion, at 23-25.

---

[15] Benchmade's challenge is meritless in any event, as the United States has demonstrated that the agency's use of the SF 26 fully complied with applicable FAR and DLA regulations. *See* Defendant's Motion, at 25-28.

## CONCLUSION

For the foregoing reasons, Gerber Legendary Blades Division, Fiskars Brands, Inc. respectfully requests that the Court grant its motion for judgment on the administrative record, and deny Benchmade's motion for same.

Respectfully submitted,

s/ David T. Ralston, Jr.
David T. Ralston, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4097
Facsimile 202.672.5399

*Counsel of Record for Defendant-Intervenor Gerber Legendary Blades Division, Fiskars Brands, Inc.*

OF COUNSEL:
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated: August 28, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~