Agreed-Upon Public Version of Brief 10/16

~~Protected Information To Be Disclosed Only In Accordance~~
~~With U.S. Court Of Federal Claims Protective Order~~

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-593C (Bid Protest)
(Judge Wheeler)

BENCHMADE KNIFE COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

GERBER LEGENDARY BLADES DIVISION, FISKARS BRANDS, INC.,

Defendant-Intervenor.

**DEFENDANT'S MOTION FOR**
**JUDGMENT UPON THE ADMINISTRATIVE RECORD AND STATEMENT OF FACTS**

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

KENNETH S. KESSLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 307-0313
Facsimile: (202) 305-7643

August 24, 2007

Attorneys for Defendant

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

TABLE OF CONTENTS

PAGE(S)

STATEMENT OF THE ISSUES....................2

STATEMENT OF THE CASE....................2

I. Nature Of The Case....................2

II. Statement Of Facts....................3

SUMMARY OF THE ARGUMENT....................10

ARGUMENT....................11

I. The United States Is Entitled To Judgment Upon The Administrative Record.....11

A. Standard Of Review....................11

B. The Agency Has Not Acted Arbitrarily Or Capriciously And Has Not Violated Any Applicable Procurement Statute Or Regulation....................14

1. Benchmade's Allegation That The Solicitation Was Required To Be Set-Aside For Small Business Is Untimely....................14

2. The Government Acted Reasonably In Concluding That The Solicitation Not Be Set-Aside For Small Business....................15

3. The Agency Properly Approved Gerber's Alternate Offer As A Technically Acceptable Alternative....................18

4. The Agency's Determination To Use SF 26 To Execute The Contract With Gerber Should Be Upheld....................21

a. Benchmade's Challenge To The Agency's Use Of SF 26 To Award The Contract Is Untimely....................22

b. As A Disappointed Bidder, Benchmade Lacks Standing To Protest The Use Of SF 26 To Award Contract 7026....................23

c. The Agency Properly Executed The Contract Using SF 26....................25



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

CONCLUSION ....... 27

## TABLE OF AUTHORITIES

### CASES

**PAGE(S)**

Airport Industrial Park, Inc. v. United States,
59 Fed. Cl. 332 (2004) ....... 24

Banknote Corp. of Am., Inc. v. United States,
56 Fed. Cl. 377 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004) ....... 13

Banknote Corp. of Am., Inc. v. United States ,
365 F.3d 1345 (Fed. Cir. 2004) ....... 23

Bannum, Inc. v. U.S.,
404 F.3d 1346 (Fed. Cir. 2005) ....... 13, 23

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) ....... 13

Blue & Gold Fleet, L.P.,
__ F. 3d __, 2007, WL 1815678, June 26, 2007 ....... 14, 15, 22

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
419 U.S. 281 (1974) ....... 12

Citizens to Preserve Overton Park, Inc., v. Volpe,
401 U.S. 416-20 (1971) ....... 19

Crux Computer Corp. v. United States,
24 Cl. Ct. 223 (1991) ....... 16

Cube Corp. v. United States,
46 Fed. Cl. 368 (2000) ....... 13

Data Gen. Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996) ....... 12, 13

Electro-Methods, Inc. v. United States,
7 Cl. Ct. 755 (1985) ....... 12, 19, 21



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

E.W. Bliss Co. v. United States,
77 F.3d 445 (Fed. Cir.1996)........................................................................... 19

FPC v. Florida Pwer & Light Co.,
404 U.S. 453 (1972)..................................................................................... 19

Four Points By Sheraton v. United States,
63 Fed. Cl. 341 (2005) ................................................................................. 13

Galen Medical Associates, Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004)..................................................................... 23

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001)............................................................... 11, 12

Info. Tech. & Applications Corp. v. United States,
316 F.3d. 1312 (Fed. Cir. 2003)..................................................................... 23

Isometrics v. United States,
5 Cl. Ct. 420 (1984) ..................................................................................... 19

JWK Int'l Corp. v. United States,
52 Fed. Cl. 650 (2002), aff'd, 56 Fed. Appx. 474 (Fed. Cir. 2003) ................................ 12

Kentron Haw., Ltd. V. Warner,
480 F.2d 1166 (D.C. Cir. 1973) ..................................................................... 12

Lion Raisins, Inc. v. United States,
51 Fed. Cl. 238 (2001) ................................................................................. 13

MCS Management, Inc. v. United States,
48 Fed. Cl. 506 (2000) ........................................................................... 16, 18

M. Steinthal & Co. v. Seamans,
455 F.2d (D.C. Cir. 1971) ............................................................................. 16

Management Solutions & Systems, Inc. v. United States,
75 Fed. Cl. 820 (2007) ................................................................................. 24

Moore's Cafeteria Services, d/b/a MCS Management,
77 Fed.Cl. 180 (2007) ....................................................................... 14, 15, 22

Northern Telecom Inc. v. United States,
8 Cl. Ct. 376 (1985) .....................................................................................24



~~Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Northrop Grumman Corp. v. United States,
50 Fed Cl. 443 (2001) .......... 24

Rex Serv. Corp. v. United States,
448 F3.d 1305 (Fed. Cir. 2006) .......... 23

Rig Masters, Inc. v. United States,
70 Fed. Cl. 413 (2006) .......... 13

Saratoga Dev. Corp. v. United States,
21 F.3d 445 (D.C. Cir. 1994) .......... 12

Tech Systems, Inc. v. United States,
50 Fed. Cl. 216 (2001) .......... 13

Wit Assocs., Inc. v. United States,
62 Fed. Cl. 657 (2004) .......... 20

**STATUTES**

5 U.S.C. § 702 .......... 12

5 U.S.C. § 706 .......... 11, 12, 17

5 U.S.C. § 706(2) .......... 12

5 U.S.C. § 706(2)(A) .......... 12, 16

10 U.S.C. § 2304 .......... 15

10 U.S.C. § 2305(b) (1) .......... 14

28 U.S.C. § 1491(a)(3) .......... 21

28 U.S.C. § 1491(b)(1) .......... 11, 23

28 U.S.C. § 1491(b)(4) .......... 11

31 U.S.C. § 3551 .......... 24

41 U.S.C. § 416(b) (4) .......... 15

4 C.F.R. § 21.2 (a)(1) .......... 14

FAR 12.204(a) .......... 26

FAR 14.408.......... 27

FAR 15.504(a) .......... 27

FAR 19.102(f)(7) .......... 16

FAR 19.502-2(b).......... 15, 16, 17

FAR 19.502-2(b)(2) .......... 18

FAR 33.103(e) .......... 14



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BENCHMADE KNIFE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-593C (Bid Protest) |
| | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GERBER LEGENDARY BLADES | ) | |
| DIVISION, FISKARS BRANDS, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT UPON THE**
**ADMINISTRATIVE RECORD AND STATEMENT OF FACTS**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC") defendant, the United States, respectfully requests that the Court enter judgment upon the administrative record in favor of the United States and dismiss plaintiff's complaint. Plaintiff, Benchmade Knife Co., Inc., ("Benchmade"), seeks to overturn the contract award made by the Defense Supply Center, Columbus ("DSCC"), a primary level field activity of the Defense Logistics Agency ("DLA" or "Agency") located in Columbus, Ohio. As set forth more fully below, the administrative record in this action demonstrates that DSCC acted properly in issuing the non set-aside solicitation, and that Benchmade cannot demonstrate that DSCC acted arbitrarily or capriciously in making the award to Gerber. In support of our motion for judgment

~~**Protected Information To Be Disclosed Only In Accordance**~~
~~**With U.S. Court Of Federal Claims Protective Order**~~

Agreed-Upon Public Version of Brief 10/16

upon the administrative record, we rely upon the complaint, the administrative record filed with the Court on August 20, 2007, and the following brief and statement of facts.

## DEFENDANT'S BRIEF

## STATEMENT OF THE ISSUES

1. Whether Benchmade's post-award protest that RFP 0001 was required to be set-aside for small businesses is untimely.

2. In the alternative, whether the agency's determination that RFP 0001 not be set-aside for small business was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

3. Whether the agency's technical finding that Gerber's alternate offer for NSN 4457 was technically acceptable to meet the agency's needs was arbitrary, capricious, an abuse of discretion or otherwise contrary to law.

4. Whether Benchmade's post-award protest of the agency's use of SF 26 to award Contract 7026 is untimely and/or should be dismissed for lack of standing.

5. Whether, in the alternative, the agency's use of SF 26 to execute Contract 7026 was in accordance with law.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case is a post-award bid protest of the award of Contract SPM7LX-07-D-7026 ("7026") to Gerber Legendary Blades Division Fiskars Brands, Inc. ("Gerber"), under Request for Proposals (RFP) SPM7LX-07-R-0001, for a certain DLA-approved type of combat knife. The agency awarded Contract 7026 to Gerber on December 21, 2006. Benchmade filed a series



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

of protests against this award with the Government Accountability Office ("GAO") between January 9, 2007 and May 29, 2007. AR Tabs L and M.[1] Ultimately, on July 16, 2007, the GAO dismissed the protest issues that were outstanding. AR385-88.

On August 6, 2007, Benchmade filed this action in the United States Court of Federal Claims. In its complaint, Benchmade alleges the government (1) improperly solicited the required combat knife upon an unrestricted basis rather than as a small business set-aside; (2) improperly approved Gerber as a technically acceptable alternate source; and (3) improperly implemented the contract award to Gerber by executing the contract using Standard Form (SF) 26.

II. Statement Of Facts

The Defense Supply Center, Columbus ("DSCC") is a primary level field activity of the Defense Logistics Agency ("DLA" or "agency") located in Columbus, Ohio. DLA is an agency of the Department of Defense that purchases, stores, and manages a wide assortment of supplies for the armed forces.

This case is a bid protest of the award of contract SPM7LX-07-D-7026 ("7026") to Gerber Legendary Blades Division Fiskars Brands, Inc. ("Gerber"), pursuant to Request for Proposals ("RFP") SPM7LX-07-R-0001.

The agency awarded contract 7026 to Gerber on December 21, 2006. AR279. In preparation for the acquisition, beginning in April 2006, the contracting officer ("CO") conducted market research to determine if small businesses existed in the market place that

[1] "AR__" refers to the administrative record that was filed with the Court on August 20, 2007.



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

would be interested in providing the required knives, identified by National Stock Numbers ("NSNs") 1095-01-456-4457 ("4457") and 1095-01-466-8569 ("8569").[2] AR1-20. Three businesses returned the agency's market surveys. They were all small businesses: Benchmade, Ontario Knife Co., and Camillus Cutlery Co. AR2-14. Benchmade was the only one of the three approved to manufacture NSN 4457. AR113, 114, 118, and 157.

In connection with the market research, the CO also reviewed the past history and technical data in possession of the agency. There she identifed a second approved manufacturing source for the knife, Masters of Defense, also believed to be a small business. AR55, 59, 67, and 69.

Further research by the CO revealed that Masters of Defense had been bought out by Blackhawk Products Group ("Blackhawk"). The contracting officer sought to determine whether the Contractor and Government Entity Code ("CAGE Code")[3] maintained in the Defense Logistics Integrated System[4] for the item could be changed to indicate Blackhawk as an approved source. AR15 and 16. The agency's quality/technical specialist informed the CO that such a change was not possible without the manufacturer obtaining approval through the

---

[2] Benchmade received the award for NSN 8569, so this NSN is not at issue in this case.
[3] The CAGE Codes in the item description identify the two approved sources: CAGE 041N2 is Benchmade and CAGE 1WXM6 identifies Masters of Defense.
[4] Defense Logistics Integrated System is a cataloging system maintained by the agency to, among other things, identify by CAGE Code (1) contractors; and (2) the approved sources for items.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

processing of a DLA 339[5] (a document requesting the technical evaluation of a technical data package for the Blackhawk part). Id. at 16.

The contracting officer attempted to determine Blackhawk's size. The CO was unable to confirm its size because the Central Contractor Registration ("CCR") (a system in which contractors must register to be eligible for Government contract awards) and the Government's Haystack System of records (the electronic record of all of the items managed by the DLA with a complete history of each item and the contractors approved to manufacture the items) showed a conflict as to whether Blackhawk was a small or large business. AR17.

Thereafter, the contracting officer contacted the Small Business Administration ("SBA") for assistance in determining Blackhawk's size and was advised to rely upon Blackhawk's self-certification. AR18. Lacking conclusive evidence that Blackhawk was a large business, the contracting officer continued with the procurement plans under the assumption that Masters of Defense still qualified as a small business manufacturer for the knife. AR54-57, 59-60.

With the expectation of two approved small business manufacturers (Benchmade and Masters of Defense), and other small businesses indicating interest through the market research survey, the contracting officer prepared to issue the solicitation as a small business set-aside. Id.

On August 2, 2006, the agency issued Request for Proposals ("RFP") SP0750-06-R-4308 to procure the referenced knives under a 100% small business set-aside. AR60-96.

---

[5] A 339 is a form that the Agency completes and forwards with a technical data package to the military engineering support activity ("ESA") when a contractor is seeking approval as a source for a critical application item. In this case, the quality/technical representative mistakenly believed the knife to be a critical application item requiring evaluation by the ESA, but as the item is not coded as a critical application item, it was evaluated by the agency.



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

On August 7, 2006, the CO received a letter objecting to the 100% small business set-aside upon the basis that one of the two approved small business manufacturers, Masters of Defense, had discontinued the manufacture of the knives and was not a small business. AR97, 98, and 111.

Thereafter, the CO discovered that Masters of Defense had registered itself as a large business in the CCR and that its registration had been inactive since 2005. Id. at 103-105. Based upon this information, as well as the agency's technical records, and the previous market research, the contracting officer determined that there was only one approved small business manufacturer for the item at issue. As a result, the contracting officer no longer had a reasonable expectation of receiving offers from at least 2 small business concerns offering the products of different small businesses and, on August 29, 2006, the agency canceled RFP 4308. AR106-107.

On account of the need to re-issue the solicitation in order to fill the agency's demands for the knives, the contracting officer conducted another CCR search for suppliers of similar items in an effort to find more competition for the knife. In October 2006, she identified several other contractors for the acquisition mailing list, AR21-22, including small businesses, but none of those sources were approved by DLA to manufacture the required knife. AR24-53. As a result, the CO commenced with a plan to re-solicit the knives under a new, unrestricted solicitation.

On October 10, 2006, the agency posted a synopsis notice on the Federal Business Opportunities ("FedBizOps") website that SPM7LX-07-R-0001 (RFP 0001) would be issued to procure the required knives, this time upon an unrestricted basis. AR115 -116.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

On November 2, 2006, DSCC issued[6] RFP 0001 (AR Tab G), pursuant to Federal Acquisition Regulation ("FAR"), Part 12, Acquisition of Commercial Items, and the amended closing date for the RFP was November 17, 2006. RFP 0001 solicited offers for an indefinite quantity type contract(s) for NSNs 4457 and 8569. AR126-127.[7] The NSN that is the subject of this protest, NSN 4457, was identified as being produced solely by Benchmade (041N2), Part Number 9100SBT, which was then the only approved manufacturing source. AR126.

RFP 0001 provided for the award of a contract for either or both of the knives on an all or none basis, AR122,152, with a one year base period, and no more than four one-year option periods. AR142. RFP 0001 also specified the use of Standard Form ("SF") 26 as a means of executing the resulting contract. AR121.

RFP 0001 also provided for enhanced competition by allowing offerors to offer alternate items that were deemed technically interchangeable with the approved Benchmade knife. AR1 (Provision L17C01, Defense Logistics Acquisition Directive ("DLAD") 52.217-9002, Conditions for Evaluation and Acceptance of Offers for Part Numbered Items).

In response to RFP 0001, the agency received proposals from four companies: Benchmade, Gerber, Kajust Corporation, and Blackhawk. AR230-231. Benchmade and Kajust submitted offers to supply the approved Benchmade part, and Blackhawk and Gerber offered

[6] This means a copy of the solicitation was mailed to everyone on the mailing list and posted on FedBizOps.
[7] The Contracting Officer determined that Benchmade's proposal represented the best value for NSN 8569, and awarded Contract SPM7LX-07-D-7027 to Benchmade for that knife, on December 21, 2006, using SF 26. This award is not under protest.



~~**Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order**~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

alternate items. The agency rejected the proposals submitted by Kajust and Blackhawk as outside the competitive range, and technically unacceptable, respectively. AR232-233.

A Government Engineer, Brett Rippl, was assigned to evaluate Gerber's technical data package, which included descriptive information for both the Gerber and the Benchmade knife. AR Tab H. Mr. Rippl also physically examined and compared the two knives. AR224-228. The conclusion of this evaluation was that Gerber's alternate offer for NSN 4457 was technically acceptable. Id.

After a comparative assessment of the offers, the contracting officer determined that Gerber's offer represented the best value to the Government for item NSN 4457 and awarded Contract SPM7LX-07-D-7026 ("7026") to Gerber on December 21, 2006. AR Tab K. To execute this award, the procurement system prompted the contracting officer to select SF 26 to award this long term contract. The agency posted a copy of the contract on the FedBizOps website on January 9, 2007. AR371.

On January 9, 2007, Benchmade filed a protest of this award decision with the GAO, Protest B-299366. AR312-319. Among other issues (which are not the subject of the instant case) Benchmade protested that the requirement under RFP 0001 should have been set-aside for small business. On January 23, 2007, the agency moved to dismiss Benchmade's protest as untimely or for failure to state legally sufficient and factual grounds. AR320-323.

On January 31, 2007, the GAO advised the parties that Benchmade was untimely in protesting that RFP 0001 was not set-aside for small business. AR326. The GAO decided that Benchmade's challenge to the reasonableness of the award decision could go forward. Id.



Agreed-Upon Public Version of Brief 10/16

The agency took corrective action and the GAO subsequently dismissed the Benchmade protest (B-299366) as academic, on February 6, 2007. AR335.

On April 5, 2007, the contracting officer completed the re-evaluation of offers and again decided that Gerber's offer for NSN 4457 represented the best value to the Government. AR229-247.

Eventually, on May 29, 2007, Benchmade filed another protest with the GAO, B-299366.4 (AR350-359) alleging (1) the agency improperly executed Contract 7026 by using SF 26; (2) the agency improperly evaluated past performance information related to on-time delivery rates; and (3) Gerber's proposal was late.

The agency filed reports in response to this and another pending protest (unrelated to these proceedings) and showed, among other things, (1) that the contract with Gerber was proper because the RFP provided for executing the contract using SF 26; and (2) that Benchmade had prior notice of the agency's use of this method of executing the award by virtue of the contract it received for the second knife solicited under RFP 0001, on December 21, 2006[8], and as a result of the posting of Contract 7026 on FedBizOps on January 9, 2007. AR371.

On July 16, 2007, the GAO issued its consolidated decision on Protests B-299366.3 and B-299366.4. AR384-388. The GAO (1) dismissed Benchmade's protest against the agency's use of SF 26 as untimely; and (2) denied or dismissed the remaining issues. AR384-388.

On July 17, 2007, the agency rescinded the stop work order against Contract 7026 and Gerber resumed performance. AR389.





Agreed-Upon Public Version of Brief 10/16

On August 6, 2007, Benchmade filed this action in the United States Court of Federal Claims. In its complaint, Benchmade alleges the Government improperly (1) solicited the required combat knife upon an unrestricted basis rather than as a small business set-aside; (2) approved Gerber as an alternate source; and (3) executed the award using Standard Form SF 26. Compl. at ¶¶ 36-59.

**SUMMARY OF THE ARGUMENT**

Benchmade's post-award protest asserting that RFP 0001 was required to be set-aside for small businesses should be dismissed as untimely. Benchmade was aware of this basis for challenging the solicitation prior to the closing date for offers, but failed to do so. Should the court reach the merits of the argument, the court should find that, based upon the agency's prior market research, and a previously-canceled solicitation for the same products, the contracting officer was reasonable in concluding that the agency would not expect to receive at least two offers from small businesses offering the products of at least 2 small business concerns.

The Court should find that the agency's technical finding that Gerber's alternate offer for NSN 4457 was technically acceptable to meet the agency's needs was neither arbitrary, capricious, an abuse of discretion, nor otherwise contrary to law. The agency conducted a technical evaluation of the alternate product and concluded that the alternate product was technically equivalent to the identified item. The agency's technical determination in such an instance should be afforded the highest level of deference.

---

[8] Benchmade has also received other awards over the years executed by the use of SF26. AR341.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

The Court should also conclude that Benchmade's post-award protest of the agency's use of SF 26 to award Contract 7026 is untimely and/or should be dismissed for lack of standing. Benchmade had timely notice of the requirement, but failed to protest the issue prior to the closing of the solicitation. Therefore, Benchmade has waived its right to challenge that provision. In the alternative, even if the argument is not untimely, Benchmade lacks standing to raise the argument because the matter concerns strictly a contract administration matter between Gerber and the Government. Even if the contract form was improper, Benchmade can show no prejudice on account of the error. Finally, in the alternative, if the Court rules upon the merits of the agency's use of an SF 26 to execute Contract 7026, the Court should find that the form and procedure utilized by the agency complied with law.

## ARGUMENT

I. The United States Is Entitled To Judgment Upon The Administrative Record

A. Standard Of Review

The Court possesses jurisdiction to entertain this action pursuant to the bid protest jurisdiction of the Tucker Act, 28 U.S.C. § 1491(b)(1). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). This Court reviews bid protest actions pursuant to the standards set forth in the Administrative Procedure Act ("APA"). Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). In particular, the Court must determine whether the agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Therefore, a bid award



- ~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332 (citations omitted). It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action; rather, it limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S.C. §§ 702, 706(2)(A).[10]

In evaluating whether an agency official's actions were rational, the "'disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.''" Impresa, 238 F.3d at 1333 (quoting Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994)). Courts have recognized that contracting officials may properly exercise wide discretion in applying procurement regulations. See id. at 1332; Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985). The arbitrary and capricious standard, by definition, acknowledges a "zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which consider[s] the relevant factors and is within the bounds of reasoned decisionmaking." JWK Int'l Corp. v. United States, 52 Fed. Cl. 650, 654 n. 8 (2002), aff'd, 56 Fed. Appx. 474 (Fed. Cir. 2003) (quotation omitted). In this regard, the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86 (1974). Therefore, as long as a rational basis is articulated and relevant factors are considered, the agency's action must be sustained. Id.

---

[10] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

When a protestor asserts a violation of regulation or procedure, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" Impresa, 238 F.3d at 1333 (quoting Kentron Haw., Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973)); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it."). "[T]o establish prejudice, a protestor must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protestor would have been awarded the contract." Data Gen. Corp., 78 F.3d at 1563; see also Four Points By Sheraton v. United States, 63 Fed. Cl. 341 (2005). This Court defers to agencies "in matters of technical adequacy of proposals upon a showing that the agency's decision has a reasonable basis." Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 329 (2000) (citing Cube Corp. v. United States, 46 Fed. Cl. 368, 386 (2000)).

Pursuant to RCFC 52.1,[11] this Court reviews the agency's procurement decision to determine whether it is supported by the already-existing administrative record. The standards applicable to a motion for judgment upon the administrative record differ from those applied in the context of a Rule 56 motion for summary judgment. Bannum, Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005); Lion Raisins, Inc. v. United States, 51 Fed. Cl. 238, 246-47 (2001); Tech Systems, Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (explaining basis for

---

shall review the whole record or those parts of it cited by a party." 5 U.S.C § 706(2).

[11] On June 20, 2006, based upon the Federal Circuit's decision in Bannum, Inc. v. U.S., 404 F.3d 1346 (Fed. Cir. 2005), RCFC 52.1 replaced RCFC 56.1 to avoid any confusion with the standards applicable to summary judgment.



~~Protected Information To Be Disclosed Only In Accordance -~~
~~With U.S. Court Of Federal Claims Protective Order -~~

Agreed-Upon Public Version of Brief 10/16

summary judgment upon the administrative record). Unlike a Rule 56 motion, "proceeding under RCFC [52.1] merely restricts the evidence to the agency record . . . ." Bannum, 404 F.3d at 1356. "Thus, the central inquiry on a motion for summary judgment -- whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes summary judgment -- has no bearing on a review of the administrative record . . . ." Tech Systems, 50 Fed. Cl. at 22; accord Bannum, 404 F.3d at 1356 (holding that RCFC [52.1] requires a different standard of review without the burden-shifting and presumptions required pursuant to RCFC 56).

### B. The Agency Has Not Acted Arbitrarily Or Capriciously And Has Not Violated Any Applicable Procurement Statute Or Regulation

#### 1. Benchmade's Allegation That The Solicitation Was Required To Be Set-Aside for Small Business Is Untimely

Benchmade alleges that the award to Gerber was improper because the solicitation for NSN 4457, under RFP 0001, should have been set-aside for small business. Compl. at ¶¶ 36-42. The allegation is untimely and should be dismissed.

By statute, an agency is required to evaluate offers and make an award based solely upon the evaluation criteria set forth in the solicitation. 10 U.S.C. § 2305(b) (1). The GAO has long recognized that protests based upon alleged improprieties apparent in the RFP must be filed prior to the RFP closing date. See 4 C.F.R. 21.2 (a)(1)); FAR 33.103(e). Moreover, the United States Court of Appeals for the Federal Circuit has explicitly held that, if a party fails to object to a patent error in a solicitation prior to the solicitation closing time, it waives its ability to raise the objection subsequent to the solicitation closing date. Blue & Gold Fleet, L.P., __ F. 3d __, 2007,

Agreed-Upon Public Version of Brief 10/16

WL 1815678, June 26, 2007 (2006-5064); see also Moore's Cafeteria Services, d/b/a MCS Management, 77 Fed.Cl. 180 (2007). In this case, Benchmade was well aware that the solicitation was unrestricted, but did not protest that determination until well after the solicitation was closed and the contract was awarded.

On October 10, 2006, the agency synopsized RFP 0001 on FedBizOps to provide notice to industry of the need for NSN 4457, and that the solicitation would be unrestricted. AR at 115-16. On November 2, 2006, the agency issued RFP 0001 for NSN 4457, with a closing date of November 17, 2006. AR119-156. The RFP was mailed to Benchmade. AR21. The solicitation made clear that it was unrestricted and not set-aside for small business. AR119. As a result, Benchmade had more than 30 days notice in advance of the solicitation that it would not be set-aside for small business and explicit notice of the RFP closing date.

Despite its advance notice, Benchmade did not file a protest of this RFP until January 9, 2007, well after the solicitation closed on November 17, 2006. AR115-116; AR55-56. Because no party protested prior to the solicitation closing date that the solicitation shuld not have been set-aside for small business, the contracting officer was bound by statute to consider all of the offers received in accordance with the RFP, regardless of business size. AR116 and AR123 (item 2); 41 U.S.C. 416(b) (4); also see 10 U.S.C. 2304; Blue & Gold Fleet, L.P., supra. As a result, Benchmade has clearly waived its right to protest the contracting officer's determination and its protest should be dismissed as untimely. Blue & Gold Fleet, L.P., supra; Moore's Cafeteria Services, d/b/a MCS Management, 77 Fed.Cl. 180 (2007).



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

2. The Government Acted Reasonably In Concluding That The Solicitation Not Be Set-Aside For Small Business

If the Court determines that Benchmade's set-aside arguments are not untimely, the Court should nevertheless sustain upon the merits the contracting officer's decision to issue an unrestricted solicitation.

The Federal acquisition regulations require the contracting officer to set-aside any acquisition over $100,000.00 for small business when there is a reasonable expectation of (1) receiving offers from at least two small business concerns offering the products of different small business concerns; and (2) award at a fair market price. FAR 19.502-2(b). If a small business concern is planning to provide a product that it did not manufacture, it must furnish the product of a small business manufacturer, unless (1) the SBA has granted a waiver of the nonmanufacturer rule[9]; or (2) the procurement fits the exception to the non-manufacturing rule under FAR 19.102(f) (7) (purchases not anticipated to exceed $25,000.00).

In reviewing the contracting officer's decision not to set the requirement aside for small business, this Court will uphold the contracting officer's decision unless it is found to be arbitrary, capricious, an abuse of discretion, or if it is otherwise not in accordance with law. 5 U.S.C. §706(2) (A); MCS Management, Inc. v. United States, 48 Fed. Cl. 506 (2000). If the Court determines that there was a reasonable basis for the contracting officer's decision, the Court should stay its hand. See M. Steinthal & Co. v. Seamans, 455 F.2 1289, 1303 (D.C. Cir.

[9] Plaintiff does not allege that the SBA granted a waiver of the non-manufacturing rule for this item, or that the purchase was for less than $25,000.

~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~


Agreed-Upon Public Version of Brief 10/16

1971). The Court has held that a reasonable basis for a decision exists when there is "a rational connection between the facts of the situation and the decision made." Crux Computer Corp. v. United States, 24 Cl. Ct. 223, 226 (1991). In this case, the record clearly shows that the contracting officer acted reasonably and within her discretion in finding that the required expectation for a small business set-aside did not exist for RFP 0001. AR113-118; see FAR 19.502-2(b)).

In an abundance of caution, the contracting officer had previously issued a solicitation for this same requirement as a small business set-aside. See AR tabs C and D (RFP 4308). The CO's determination in that case was based upon recent market research and her initial expectation that at least two approved small business manufacturing sources would compete. AR1-20. Subsequently, however, the agency received an objection to its set-aside decision, alleging that one of the expected sources, Masters of Defense, was a large business and had sold its drawings to Blackhawk. AR97-98, 111. Therefore, the contracting officer reassessed the facts supporting her decision to set the RFP 4308 requirement aside for small business in accordance with FAR 19.502-2(b). AR113-118 and 157.

The contracting officer conducted further research of Masters of Defense and discovered that it had registered itself as a large business in the CCR and had been inactive in the CCR since 2005. AR99-105. The contracting officer's earlier market research produced only a few other potential small business offerors for the knife and none of them were approved to manufacture the knife at issue. AR1-20. Once it was determined that Masters of Defense was no longer manufacturing the knife, Benchmade was the only approved manufacturing source for the knife.





Agreed-Upon Public Version of Brief 10/16

AR113, 117, 118, 157. Inasmuch as the contracting officer no longer had the required expectation of receiving two offers from small businesses for the products of different small businesses, she canceled RFP 4308 on account that the underlying requirement no longer qualified as a small business set-aside. AR106-107.

Before issuing another RFP for the knife, the contracting officer again searched the CCR to develop a mailing list of suppliers of similar items in an effort to identify more sources for the required knife AR21-53. This search produced the names of other businesses, some of which were small, but none that were approved to manufacture the required knife. Id. Based upon all of the foregoing efforts, and with only one approved small business manufacturing source for the knife,[10] the contracting officer determined to re-issue the procurement for the knife upon an unrestricted basis. AR117-18, 157. The SBA concurred in the contracting officer's decision to proceed with the procurement of NSN 4457 upon an unrestricted basis rather than by small business set-aside. AR113.

The contracting officer did not abuse her discretion in using the non-restricted solicitation. The decision of the contracting officer was a business judgment within her discretion. See MCS Management, Inc. v. United States, 48 Fed. Cl. 506, 511 (2000). In making her decision, she took all the steps that this Court has found are reasonable in making a decision not to set a requirement aside for small business: consideration of the prior history of the item, market surveys and research, and the advice of the SBA small business specialist. See id. These efforts clearly demonstrate that the CO properly researched the possibility of a small



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

business set-aside before making the decision that the requirement could not be set-aside, pursuant to FAR 19.502-2(b)(2). Because her decision had a reasonable basis, and was not arbitrary or capricious or contrary to law, the contracting officer's decision should be sustained.

3. The Agency Properly Approved Gerber's Alternate Offer As A Technically Acceptable Alternative

Benchmade challenges the agency's determination that Gerber's alternate knife for NSN 4457 was technically acceptable. Compl. at ¶¶ 43-51. In order to increase competition, the solicitation specifically provided for offerors to submit technically acceptable alternative items. According to Benchmade, Gerber's alternate knife should have been rejected by the agency because it was materially different from the Benchmade brand name knife listed in RFP 0001. Id. For the reasons set forth below, the determination by the agency that Gerber's alternate offer was technically acceptable should be upheld.

It is well-established that, in reviewing protests of an agency's action, a court does not substitute its judgment for that of the agency, Citizens to Preserve Overton Park, Inc., v. Volpe, 401 U.S. 416-20 (1971), and that trial courts must allot greater deference to agency conclusions involving technical evaluations. See E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996). As stated by the Supreme Court, when a court is presented with "a purely factual question within the area of competence of an administrative agency," and resolution of that question depends upon "engineering and scientific" consideration, the court should "recognize the relevant agency's technical expertise and experience, and defer to its analysis unless it is

[10] Section B of RFP 0001 (AR126) incorporates the technical Procurement Item Description, which sets forth all of the approved sources for the item.



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

without substantial basis in fact." FPC v. Florida Pwer & Light Co., 404 U.S. 453, 463 (1972). This Court has similarly recognized that judicial restraint is proper when reviewing issues where the agency's decision is highly technical in nature. See Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985) (citing Isometrics v. United States, 5 Cl. Ct. 420, 423 (1984)). Review of the agency's conclusion in this case, that the Gerber knife was a technically acceptable alternative to the Benchmade knife, demands such restraint.

The agency in this case solicited NSN 4457 as a commercial "off the shelf item" by referencing Benchmade's code and part number. AR126**.** Further, in order to obtain the maximum competition practicable, the solicitation also incorporated a provision that expressly permitted offerors to propose an alternate product that would be technically interchangeable with the Benchmade knife. AR126, 144 (Provision L17C01, Conditions for the Evaluation and Acceptance of Offers for Part Numbered Items, RFP 0001). Gerber submitted an alternate offer technical package, which the agency evaluated and accepted as an alternate to the Benchmade knife. AR223-228.

In evaluating Gerber's alternate offer technical data package, an agency mechanical engineer considered (1) the technical history for the knife; (2) the Government's use of the knife; (3) the physical comparison of the Gerber knife to the Benchmade knife; (4) the specifications for each knife published by the manufacturers; and (5) the differences between the two knives. Id.

Regarding the use of the knife, the engineer noted, among other things, that "local military personnel commented that the Gerber product would be preferred because of the more



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

robust construction, ease of operating, and ease of cleaning with the open back design." AR224. In the physical comparison of the knives, the agency's engineer determined that, although the Gerber knife had some minor dimensional differences, the differences had no affect upon the form, fit, or function of the knife. Id. The same mechanical engineer concluded that the Blackhawk alternate offer was not acceptable. AR223.

The agency's technical evaluation was forwarded to the contracting officer, who accepted the conclusion that the Gerber knife was technically acceptable to meet the Government's minimum needs for NSN 4457. AR223-228. The agency's determination that the Gerber knife met the Government's technical needs is a matter within the broad discretion of agency officials that should not be second-guessed by the Court. See Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004). Moreover, the agency's determination in this case enhanced competition by permitting additional, qualified firms to compete for the contract. This Court has previously held that, the court should use the authority given it by 28 U.S.C. §1491(a)(3) "only in circumstances where the contract if awarded, would be the result of arbitrary or capricious action by the contracting officials to deny qualified firms the opportunity to compete fairly for the procurement award." Id. Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985) (citing Isometrics v. United States, 5 Cl. Ct. 420, 423 (1984)).

Here, all parties had a fair opportunity to compete, and after careful evaluation, the agency revealed that the Gerber knife was a suitable alternate source for the Government's needs. The Government's determination in this case enhanced competition. Benchmade's contention that Gerber's knife is not a suitable alternative would serve to limit competition and


~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

establish Benchmade as the sole source to fill the Government's needs for a knife that the Government has concluded is commercially available by at least one other source. Inasmuch as the agency acted reasonably in approving Gerber as an additional competitive source for the product at issue, and its decision will foster increased competition with regard to a technical matter for which the agency should be afforded the most deference, the Court should defer to the agency's decision and deny Benchmade's protest upon this issue.

4. The Agency's Determination To Use SF 26 To Execute The Contract With Gerber Should Be Upheld

Benchmade alleges that the agency violated "procurement regulations and basic contract principles" by using SF 26 to execute contract 7026 with Gerber. Compl. at ¶¶ 52-59. For the reasons set forth below, the Court should find that this issue is not properly before the Court in the context of this post-award bid protest action, or, in the alternative, if the Court does rule upon the merits of the claim, the Court should find that the agency's use of SF 26 was proper.

a. Benchmade's Challenge To The Agency's Use of SF 26 To Award The Contract Is Untimely

Benchmade's post-award challenge to the use of the SF 26 to award Gerber its contract is untimely because Benchmade did not raise the issue prior to the closing date for RFP 0001.

As set forth previously, the United States Court of Appeals for the Federal Circuit has unambiguously held that, if a party fails to object to a patent error in a RFP prior to the RFP closing time, it waives its ability to raise the objection subsequent to the RFP closing date. Blue & Gold Fleet, L.P., --F. 3d--, 2007, supra; see also Moore's Cafeteria Services, d/b/a MCS Management, 77 Fed.Cl. 180 (2007).



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

RFP 0001 expressly provided on its face that the resulting award may be made on SF 26 AR121. If Benchmade found the provision objectionable, it was required to protest the issue prior to the RFP closing date, November 17, 2006 AR155. It did not. Not only did Benchmade fail to raise this issue prior to the RFP 0001 closing date, it did not raise this issue when the agency awarded Contract SPM7LX-07-D-7027 to Benchmade under the same RFP, using SF 26. See AR 387. Benchmade did not raise this issue until May 29, 2007, well after the solicitation closed and the contract had already been issued to Gerber. By waiting more than six months after the RFP closing date, Benchmade accepted the use of this form for the resulting contract and has waived its ability to protest this issue. For these reasons, Benchmade's protest of this issue should be dismissed as untimely. See Blue & Gold Fleet, L.P., supra.

b. As A Disappointed Bidder, Benchmade Lacks Standing To Protest the Use Of SF 26 To Award Contract 7026

Benchmade does not have standing to object to the agency's use of SF 26 to award contract 7026 to Gerber because Benchmade is not a party to that contract.

As an initial matter, a protester before this Court must first establish that it is an interested party to protest the agency's actions in awarding a contract. 28 U.S.C. § 1491(b)(1). "Interested party" has been construed by the United States Court of Federal Appeals for the Federal Circuit to be synonymous with the definition of "interested party" set forth in the Competition in Contracts Act (CICA), 31 U.S.C. § 3551. See Rex Serv. Corp. v. United States, 448 F3.d 1305, 1307 (Fed. Cir. 2006); see also Banknote Corp. of Am., Inc. v. United States , 365 F.3d 1345, 1352 (Fed. Cir. 2004). Accordingly, for an interested party to bring a bid protest within the jurisdiction of this Court, the party must be an actual or prospective offeror whose



~~Protected Information To Be Disclosed Only In Accordance~~
~~With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

direct economic interest would be affected by the award of the contract. Banknote Corp., 365 F.3d 1345 at 1352.

Moreover, the protester must also establish that any alleged errors in the process caused prejudice to the protester. See Galen Med. Assocs. V. United States, 369 F.3d 1324, 1330 (Fed Cir. 2004); Northrop Grumman Corp. v. United States, 50 Fed Cl. 443, 457 (2001). The issue of prejudice must be addressed before reviewing a case upon the merits because prejudice goes directly to the issue of standing. Info. Tech. & Applications Corp. v. United States, 316 F3d. 1312, 1319 (Fed. Cir. 2003). Prejudice can be established by a showing that there is a substantial chance that the protester would have received the award but for the error. See Bannum, Inc. v. United States, 404 F3d. 1346, 1353 (Fed. Cir. 2005); also see Management Solutions & Systems, Inc. v. United States, 75 Fed. Cl. 820, 825 (2007). "The question of prejudice turns, in part, upon the relationship between the protester and the specific procurement process that is being challenged." Management Solutions & Systems, Inc, 75 Fed. Cl. at 825.

In this case, even if Benchmade can somehow establish that it is an interested party for the purposes of protesting how the agency executed its award document to Gerber, it cannot establish that it was prejudiced by the agency's use of the SF 26 to execute the contract. Benchmade's challenge goes solely to a procedural matter of how the contract was executed after the competition was completed. Even if the use of SF 26 was in error, there is no chance that Benchmade would receive the award as a cure. Any need to re-execute the contract would involve a matter entirely between Gerber and the Government and would not result in a re-evaluation of the offers.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

It is well settled that this Court's jurisdiction to entertain bid protests does not permit it to entertain assertions going to contract administration. See Northern Telecom Inc. v. United States, 8 Cl. Ct. 376, 381 (1985). If it were in fact the case that the Government breached or violated its obligations under the contract, the appropriate remedy in such a circumstance would not be a resolicitation of the procurement for the benefit of Benchmade, but rather for the Government or Gerber to enforce its contractual claims in this Court. Cf., Airport Industrial Park, Inc. v. United States, 59 Fed. Cl. 332, 337 (2004) (upholding termination for default of contractor that failed to secure payment bond required by contract).

Benchmade does not, and cannot, allege that if the agency had used another form, or if Gerber had signed the SF 26, that there would have been a substantial chance that Benchmade would have won the award. Clearly, Benchmade has established no prejudice to itself as a result of the process by which the agency accepted Gerber's offer through Contract 7026 on SF 26. For these reasons, Benchmade's protest of this issue should be dismissed for lack of standing.

c. The Agency Properly Executed the Contract Using SF 26

If Benchmade's challenge to the agency's use of the SF 26 to issue the contract to Gerber is not dismissed as untimely or for lack of standing, the Court should uphold the agency's actions upon the merits.

Benchmade alleges that the agency acted contrary to law by using the SF 26 to award Contract 7026 to Gerber by (1) failing to obtain Gerber's signature on the SF 26 or (2) failing to use the SF 33 for the acceptance of Gerber's offer. Compl. at ¶¶ 52-59. The record shows, and the pertinent regulations support, however, that the agency fully complied with the terms of



~~Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Gerber's offer, RFP 0001, and the regulations. See AR279. SF 33, which is the first page of RFP 0001, and the first page of Gerber's signed offer, provides the following: **"Important - Award will be made on this Form, or on SF 26, or by other authorized official written notice."** AR279 (emphasis added). Moreover, pursuant to RFP 0001, if the agency accepts an offer, it will contractually bind the successful offeror to the terms of the solicitation. AR148 (Instructions to Offerors). Therefore, not only did the RFP specify the use of SF 26, but Gerber did not take any exception to this language in its offer. Id.

Benchmade alleges that the agency should have either executed the award by signing Gerber's offer on the SF 33, or by having Gerber sign the SF 26 on account of the agency accepting only one of the two NSNs offered by Gerber, AR279-281. However, signing the SF 33 was not an option for this award, as it would mean that the Government accepted everything in Gerber's offer, including its offer for the NSN awarded to Benchmade, for which Gerber's offer did not represent the best value, AR241-242. As a result, the agency was able to affect a binding contract with Gerber for NSN 4457 using the SF 26, without requiring Gerber's signature on the document, as Gerber submitted its offer for each NSN individually, with the understanding that it might only receive an award for one of the NSNs. See AR122, 152. This is the same process used by the Government and Benchmade to execute Benchmade's contract for NSN 8569 stemming from the same solicitation, to which Benchmade has made no objection.

Benchmade also cites FAR 14.408, in support of its assertion that the agency has violated that regulation by using the SF 26 to award the contracts under RFP 0001. Compl. at ¶ 27. This provision states that if an offer on SF 33 leads to further changes, the resulting contract shall be

Agreed-Upon Public Version of Brief 10/16

prepared as a bilateral document on the SF 26. However, this procurement was a negotiated procurement under FAR Part 12, Acquisition of Commercial Items. FAR 14.408 was inapplicable to this procurement, as it applies only to solicitations and awards based upon sealed bids. Even if the provision did apply, or a similar provision, such as FAR 15.504(a) (negotiated procurement), the signature of both parties would be required on the SF 26 for the acceptance of an offer only if it included information different than what the offeror proposed. In this case, as discussed above, there were no changes to the SF 33 offers received from Benchmade and Gerber.

In fact, pursuant to FAR 12.204(a), an agency is normally required to award requirements for commercial items on the SF 1449. However, DLA obtained a Class Deviation from this requirement in March 2002, which was still in effect at the time the agency issued RFP 0001 and awarded the contracts to Benchmade and Gerber under the RFP. See Defense Logistics Acquisition Directive 12.204(2006). The deviation was issued on March 26, 2002 ("Deviation #2002-03" at http://www.dla.mil/j-3/j-336/logisticspolicy/FAR_Devs2002.htm) and continues to be in effect (see List of Open Deviations - 5/31/2007, http://www.dla.mil/j-3/j-336/logisticspolicy/FARSDEVSPage2.htm). The deviation made the use of the SF 1449 optional for commercial item acquisitions. Accordingly, the agency's procurement system is set up to generate the final commercial item contract using the SF 26 for the contracting officer's signature to accept the signed SF 33 offer.

In this case, the agency awarded the contracts to the parties for exactly what they offered, without modification, using the SF 26. AR279-311. The agency acted properly and in



~~Protected Information To Be Disclosed Only In Accordance~~
~~With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

accordance with the RFP and regulation in executing the award of Contract 7026 using the SF 26. The agency acted within its discretion in using the SF 26 to award Contract 7026 to Gerber, just as it did when it awarded Contract 8659 to Benchmade using the same form. See AR121. Benchmade has not presented any evidence to show that the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Therefore, the Court should uphold the agency's administrative decision to use the SF 26 to execute this award.

**CONCLUSION**

For these reasons, we respectfully request the Court to grant defendant's motion for judgment upon the administrative record and to dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director



Agreed-Upon Public Version of Brief 10/16

s/Kenneth S. Kessler
KENNETH S. KESSLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-756
Fax: (202) 305-7643

Dated: August 24, 2007

Attorneys for Defendant





Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

CERTIFICATE OF FILING

I hereby certify that on this 24th day of August, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AND STATEMENT OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kenneth S. Kessler



Agreed-Upon Public Version of Brief 10/16