Agreed-Upon Public Version of Brief 10/16

**Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 07-593C (Bid Protest)
(Judge Wheeler)

BENCHMADE KNIFE COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

GERBER LEGENDARY BLADES DIVISION, FISKARS BRANDS, INC.,

Defendant-Intervenor.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNTS I-III], RESPONSE TO PLAINTIFF'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNTS I-IV], DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNT IV], DEFENDANT'S COUNTER-STATEMENT OF FACTS, AND DEFENDANT'S SUPPLEMENTAL STATEMENT OF FACTS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

KENNETH S. KESSLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 307-0313
Facsimile: (202) 305-7643

October 10, 2007

Attorneys for Defendant

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

**TABLE OF CONTENTS**

**PAGE(S)**

REPLY TO BENCHMADE'S OPPOSITION TO DEFENDANT'S AND MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNTS I-III, AND RESPONSE TO BENCHMADE'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNTS I-III . . . . . 2

Counter Statement of Facts . . . . . 2

ARGUMENT . . . . . 5

I. The United States Is Entitled To Judgment Upon The Administrative Record . . . . . 5

A. Benchmade Failed To Timely Protest The Agency's Determination Not To Set Aside The Solicitation For Small Business . . . . . 5

B. The Government Acted Reasonably In Concluding That The Solicitation Not Be Set-Aside For Small Business . . . . . 7

C. The Agency Properly Approved Gerber's Alternate Offer As A Technically Acceptable Alternative . . . . . 13

DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNT IV AND RESPONSE TO BENCHMADE'S CROSS-MOTION FOR JUDGMENT UPON THE AGENCY RECORD . . . . . 18

STATEMENT OF THE NEW ISSUES . . . . . 18

SUPPLEMENTAL STATEMENT OF THE CASE . . . . . 19

I. Nature Of The Case . . . . . 19

II. Supplemental Statement Of Facts Concerning Bundling Issue . . . . . 19

SUMMARY OF NEW ARGUMENT . . . . . 20

ARGUMENT . . . . . 20



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

A. Benchmade's Protest Alleging Bundling Is Untimely . . . . . . . . . . . . . . . . . . . . . . . . 21

B. The Agency Did Not Issue A Bundled Solicitation In RFP 0001 . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26



~~Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) . . . . . . . . . . 13

Blue & Gold Fleet, L.P. v. United States,
492 F. 3d 1308, 2007, WL 1815678, June 26, 2007 . . . . . . . . . . passim

Caron v. United States,
524 U.S. 308 (1998) . . . . . . . . . . 9

CC Distributors, Inc. v. United States,
38 Fed. Cl. 771 (1997) . . . . . . . . . . 21

Custom Data Servs.
B-271288.2, 9602 CPD 140 . . . . . . . . . . 22

Genisco Technology Corporation v. Stone,
793 F. Supp. 357 (D.D.C. 1992) . . . . . . . . . . 9

Kawaauhau v. Geiger,
523 U.S. 57 (1998) . . . . . . . . . . 9

Kentron Haw., Ltd. V. Warner,
480 F.2d 1166 (D.C. Cir. 1973) . . . . . . . . . . 12

MCS Management, Inc. v. United States,
48 Fed. Cl. 506 (2000) . . . . . . . . . . 12

Moore's Cafeteria Services, d/b/a MCS Management v. United States,
77 Fed. Cl. 180 (2007) . . . . . . . . . . 6, 22

South Dakota v. Yankton Sioux Tribe,
522 U.S. 329 (1998) . . . . . . . . . . 9

Wit Assocs., Inc. v. United States,
62 Fed. Cl. 657 (2004) . . . . . . . . . . 18


~~Protected Information To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

**STATUTES**

15 U.S. C. § 632(o)(2) . . . . . . . . . . 21, 23, 26

15 U.S. C. § 644 . . . . . . . . . . 20, 21, 26

4 C.F.R. § 21.2 (a)(1) . . . . . . . . . . 5

FAR 2.101 . . . . . . . . . . 21, 23, 25, 26

FAR 19.502-2(b) . . . . . . . . . . 7, 8, 9, 10

FAR 33.103(e) . . . . . . . . . . 5, 21

**MISCELLANEOUS**

Military Handbook, Configuration Management Guide (MIL-HDBK-61A (SE)),
(http://assist.daps.dla.mil/quicksearch/basic_profile.cfm?ident_number=202239 ) . . . . . . . . . . 16



~~Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

~~**Protected Information To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order**~~

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BENCHMADE KNIFE COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-593C (Bid Protest) (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| GERBER LEGENDARY BLADES DIVISION, FISKARS BRANDS, INC., | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNTS I-III], RESPONSE TO PLAINTIFF'S CROSS MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNTS I-IV], DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD [COUNT IV], DEFENDANT'S COUNTER-STATEMENT OF FACTS, AND DEFENDANT'S SUPPPLEMENTAL STATEMENT OF FACTS**

Pursuant to Rule 52.1(b) of the Rules of the United States Court of Federal Claims ("RCFC") defendant, the United States, respectfully submits this combined brief containing our reply to Plaintiff, Benchmade Knife Co., Inc.'s, ("Benchmade") opposition to our motion for judgment upon the administrative record (counts I-III), response to plaintiff's cross-motion for judgment upon the administrative record (counts I-IV), defendant's cross-motion for judgment upon the administrative record (count IV), defendant's counter-statement of facts, and defendant's

Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

supplemental statement of facts. For the reasons set forth below, because Benchmade has not identified any timely or valid error with respect to the solicitation or the agency's award decision, judgment should be entered in favor of the Government upon all counts.

**DEFENDANT'S BRIEF**

This brief is divided into two major parts. In the first half of the brief, we provide our combined reply/response to counts I-III of the first amended complaint.[1] In the second part of our brief, we oppose Benchmade's cross-motion as to count IV, and cross-move for judgment upon the administrative record as to count IV.

**REPLY TO BENCHMADE'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNTS I-III, AND RESPONSE TO BENCHMADE'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNTS I-III**

Counter Statement Of Facts

Benchmade's response to our statement of facts admits, without dispute, all of our statement of facts. Benchmade disputes some of Gerber's statement of facts, however. We agree with Gerber's statement of facts set forth in its August 28, 2007 motion, in addition to its counter statement of facts set forth in its October 5, 2007 reply/response ("Gerber reply/response"). We also note, the following additional counter statement of facts in rebuttal to Benchmade's statement of facts.

[1] Plaintiff has abandoned count III of its complaint. Pl. mot. at 3, n. 3. Accordingly, we will confine our reply/response to a discussion of counts I and II only.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

1. Benchmade inaccurately states that the Small Business Administration ("SBA") Coordination Record, AR 113[2], contained "a significant inaccuracy," that resulted in the SBA's approval based upon a factual error. Pl. mot. at 4. According to Benchmade, the "factual error" was the statement in the coordination record that the previous acquisition of NSN 4457 and 8569 was unrestricted. There is no such error.

The record reveals that the two immediately-preceding acquisitions prior to the date of the October 3, 2006 SBA Coordination Record were each solicited upon an unrestricted basis and awarded to Benchmade. AR 113. More specifically, on June 7, 2002, the agency issued RFP SP0740-02-R-5543 (AR 495-500) as an unrestricted solicitation for both NSNs resulting in the award of Contract SP0740-02-D-1032 (contract 1032) to Benchmade. AR 501-04. Subsequent to that award, on September 29, 2006, the agency awarded contract SP0750-06-C-3422 (AR 511-15) for NSN 4457 to Benchmade, under unrestricted RFP SP0750-06-R-4376 . AR 506-10. Contrary to Benchmade's representation, both of these acquisitions were conducted upon an unrestricted basis, and Benchmade has first-hand knowledge that these acquisitions were both unrestricted because they were both awarded to Benchmade. AR 495-510.

Benchmade also asserts that the statement in the SBA Coordination Record is incorrect because the immediately-preceding solicitation, which had been cancelled, was set aside for small business. However, the form did not seek information about cancelled solicitations. Moreover, a "solicitation" is not an "acquisition." Box 10 of the SBA Coordination Record asked for information concerning "acquisition" history and the previous "acquisition." AR 113.

[2] "AR__" refers to the administrative record that was originally filed with the Court on August 20, 2007, including any subsequent supplementation.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

According to the FAR, "Acquisition" means the "acquiring by contract with appropriated funds of supplies or services . . . . " FAR 2.101. Moreover, "acquisition begins at the point when agency needs are established and includes the description of requirements to satisfy agency needs, solicitation and selection of sources, award of contracts, contract financing, contract performance, contract administration, and those technical and management functions directly related to the process of fulfilling agency needs by contract."

In this case, the short-lived RFP, SP0750-06-R-4308 (4308), never resulted in any offers or an "acquisition." AR 60-96 and 106-07**.** The agency cancelled the RFP before it had received any offers, shortly after the contracting officer determined that she had been mistaken in concluding that two small business concerns could manufacture the knife products being requested. AR 102, 106, 107, 111, 112 , and 118**.** As a result, the record clearly establishes that the solicitation did not result in an acquisition. AR 106-07 and 118**.**

6. Benchmade states that Blackhawk Products Group ("Blackhawk") was a successor in interest to Masters of Defense, which was listed as a source for NSN 4457 in Haystacks. However, even though Blackhawk stated that it purchased Masters of Defense's drawings, AR 15, Blackhawk is not an approved source for the required NSNs, AR 16. Moreover, although Masters of Defense is listed in the agency's Haystack system as a source for the NSNs, the agency has no record of an evaluation and approval of Masters of Defense's knives for NSNs 4457 and 8569. Additionally, Masters of Defense has never previously manufactured its knife for the Government for either of these NSNs. AR 517-28**.**

Benchmade also states that the contracting officer knew from the Government's Haystack database that Blackhawk was a woman-owned small business. However, as set forth in the record,



Agreed-Upon Public Version of Brief 10/16

the contracting officer was actually presented with conflicting information about whether Blackhawk was a small business, and was unable to resolve the issue. AR 18. Regardless, as set forth above, Blackhawk was not an approved manufacturing source for NSN 4457. AR16.

27-32. Benchmade offers as fact its opinion regarding the quality and interchangeability of the Gerber knife. However, none of the information upon Benchmade relies is part of the administrative record, and nothing in the administrative record converts these self-serving opinions into fact. By contrast, the record shows that the agency properly relied upon its own evaluation of Gerber's technical data package and knife samples when it approved the Gerber knife. AR 178, 224-27 and Tab H. The agency did not find any material differences between the knives.

## ARGUMENT

### I. The United States Is Entitled To Judgment Upon The Administrative Record

#### A. Benchmade Failed To Timely Protest The Agency's Determination Not To Set Aside The Solicitation For Small Business

In our motion, we demonstrated that Benchmade's protest alleging that the agency should have set-aside the solicitation was untimely. The timeliness requirements are well-rooted in regulation, see 4 C.F.R. 21.2 (a)(1)); FAR 33.103(e), and more recently, by the United States Court of Appeals for the Federal Circuit. In Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007), the appellate court explicitly held that, if a party fails to object to a patent error in a solicitation prior to the solicitation closing time, it waives its ability to raise the objection subsequent to the solicitation closing date. See also Moore's Cafeteria Services, d/b/a MCS Mgmt v. United States, 77 Fed.Cl. 180, 185 (2007). As we established in our motion,



Agreed-Upon Public Version of Brief 10/16

Benchmade was well aware that the solicitation was unrestricted prior to the closing of the solicitation, but did not protest that determination until well after the solicitation was closed and the contract was awarded.

Now, in its motion, Benchmade asserts for the first time that it did not know the basis for its protest until after the RFP closed on November 17, 2006. Pl. mot. at 11-14. Benchmade contends that it did not learn of the basis for this agency decision until March, 2007 in a letter from agency attorney, Gail Booth, to Benchmade's attorney. Id. at 6. For this reason, Benchmade asserts that Blue & Gold Fleet does not apply. Id. at 13. However, the circumstances of this case do not materially differ from those in Blue & Gold Fleet.

As in Blue & Gold Fleet, Benchmade had notice of the agency's actions from the face of the RFP. AR 119. RFP 0001 explicitly states upon its face that it was "unrestricted," meaning that all businesses could compete, regardless of size. AR 119. If Benchmade believed that the agency decision not to set aside RFP 0001 for small business was improper, it could have filed a protest or made an inquiry to the agency prior to the RFP closing. Had Benchmade done so, the agency would have had an opportunity to explain itself or alter the situation, if justified. However, Benchmade chose not to inquire, perhaps for purely tactical reasons,[3] and now seeks to convert its untimely protest into a timely protest.

Benchmade may not benefit from its own inaction. Underlying Blue & Gold Fleet is the policy consideration that contractors not be permitted to rest upon their protest rights, submit an offer, and wait until it discovers whether it receives the award only then bring a protest if it is

[3] As set forth in our supplemental facts, Benchmade has been the sole provider of these NSNs, for every contract that has been awarded in the past six years.

unhappy with the outcome. See Blue & Gold Fleet, 492 F.3d at 1314. Such a delay is unfair to the competitive process and highly inefficient. The practice only serves to delay delivery of needed supplies to the Government, in this case the armed forces, and costs the agency and other offerors significant time, effort, and money to defend or recompete otherwise final contract awards. See id.

Accordingly, for the reasons set forth in our motion, and above, Benchmade's protest should be dismissed as untimely for failing to raise this protest prior to the solicitation closing.

B. The Government Acted Reasonably In Concluding That The Solicitation Not Be Set-Aside For Small Business

In our motion, we also showed that, even if Benchmade's set-aside arguments were not untimely, this solicitation was required to be set aside.

The Federal Acquisition Regulation ("FAR") requires the contracting officer to set aside any acquisition over $100,000.00 for small business when there is a reasonable expectation of (1) receiving offers from at least two small business concerns offering the products of different small business concerns; and (2) award at a fair market price. FAR 19.502-2(b).

In response to our motion, Benchmade argues that the agency's decision not to set aside RFP 0001 for small business was improper because (1) the agency misapplied the "Rule of Two;" (2) the SBA approval of an unrestricted procurement was based upon factual error contained in the SBA Coordination Record and in the Memorandum for the Competition Advocate; and (3) market research identified other small businesses manufacturers for the NSNs. Pl. mot. at 15-19. These arguments fail.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

First, Benchmade argues that the agency misapplied the "Rule of Two." Benchmade does not dispute that the rule, set forth at FAR § 19.502-2(b), states that the agency must set aside procurements for small business if the contracting officer has a reasonable expectation of "receiving offers from at least two small business concerns *offering the products of different small business concerns*" (emphasis added). FAR § 19.502-2(b). In addition, the regulation states that "total small business set-asides shall not be made unless such a reasonable expectation exits." FAR 19.502-2(b)).

Benchmade's position would virtually read out of existence the second half of the rule. According to Benchmade, the rule of two can be satisfied where there is a reasonable expectation of receiving offers from just one small business concern. Pl. mot. at 16-17. Benchmade contends that the second half of the rule, the requirement that "two small business concerns" offer "the products of different small business concerns" does not mean that there must be at least two small business manufacturers, consistent with the agency's construction of the rule. Rather, according to Benchmade, the rule is satisfied even where there is only one small business manufacturer so long as at least one of the small business offerors obtains the manufacturer's product through a reseller. Pl. mot. at 17. This single producer theory, according to Benchmade, satisfies the "rule of two" and the explicit requirement for "products of different small business concerns." The argument is meritless.

"The products of different small business concerns" means products produced by different small business concerns. Where only one manufacturer exists, a small-business set-aside is not proper. See Genisco Tech. Corp. v. Stone, 793 F. Supp. 357 (D.D.C. 1992) (finding that where there is only one viable bidder, the agency acts properly and in accordance with the regulations by



Agreed-Upon Public Version of Brief 10/16

not setting the contract aside for small business). Benchmade's construction of the regulation renders the "product of different small business concerns" language superfluous. Conformed to Benchmade's interpretation, FAR 19.502-2(b)) would simply state that the contracting officer must have a reasonable expectation of likely receiving offers from two or more small businesses, and excluded the language requiring the product of different small business concerns. Cf. FAR 19.502-(b)). It is a well established principle of statutory construction that a law should not be construed in a manner that render certain words or phrases altogether redundant. See South Dakota v. Yankton Sioux Tribe, 522 U.S. 329, 347 (1998) (Court avoids interpreting statutes in a way that renders some words redundant); See Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) ("We are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."); see also Caron v. United States, 524 U.S. 308, 315 (1998) (Where alternate readings of a statute creates incongruities, the court's must decline to adopt a reading that yields "bizarre" results contrary to a likely and rational congressional policy).

In this case, it is clear that the legislative intent behind the set aside provisions was to balance competition with a preference for small businesses. Id. It is also clear that the most reasonable construction of the rule of two is that it is designed to provide a preference for small businesses to compete in certain types of Government contracts, but only when there is a "reasonable" belief that the products of at least two business concerns will be in competition. Where there is a single supplier, as in this case, the rule of two cannot be satisfied.

Here, the contracting officer properly considered FAR 19.502-2(b) in its entirety and properly applied the rule to this case, concluding that there was no reasonable expectation of

receiving offers from small businesses offering the products of different small business concerns, as required by FAR. FAR 19.502-(b)).

Next, Benchmade argues that the SBA approved the contracting officer's decision not to set RFP 0001 aside for small business based upon a factual error. Pl. mot. at 19. Benchmade contends that the Small Business Coordination Record mistakenly states in box 10b that the previous acquisition for NSNs 4457 and 8569 was unrestricted. Pl. mot. at 19. Benchmade is the one who is mistaken. The previous acquisition for the two NSNs under one RFP took place in 2002 pursuant RFP 5543, which was also unrestricted. AR 496. Benchmade was the contractor, pursuant to contract 1032. AR 501. The other most-recent acquisition for either of the two NSNs after the award of Contract 1032 was Contract SP0750-06-C-3422 (3422), for the same knife at issue in this protest. AR 511-515. That contract was also awarded to Benchmade and was also unrestricted AR 506 and 511. Therefore, the information in the SBA Coordination Record was factually correct; the previous acquisition for the NSNs was unrestricted. Thus, the SBA properly relied upon the information in box 10b in approving the agency's decision not to set aside RFP 0001 for small business.

Benchmade also stated that the Memorandum for Competition Advocate inaccurately identified Combat Knife as the "most recent supplier" for the knives and failed to mention Benchmade as the last supplier, citing AR 117. The Memorandum for Competition Advocate has nothing to do with the decision not to set the requirement under RFP 0001 aside for small business, but rather discusses the justification for restricting competition by describing the required NSNs by the Benchmade code and part numbers. AR 117. Moreover, the Memorandum for Competition Advocate (AR 117), makes no mention of Combat Knife as the most recent



Agreed-Upon Public Version of Brief 10/16

supplier of the required knives, and it specifically states that the NSNs are manufactured primarily by Benchmade. AR117. Accordingly, Benchmade's assertion of an inaccuracy in this memo is unfounded.

In further response to the agency's decision not to set RFP 0001 aside for small business, Benchmade states (1) that the market research identified other small business manufacturers for the NSNs; and (2) that the contracting officer knew that Blackhawk was a small business. Pl. mot. at 18. Benchmade fails to explain, however, how these facts, even if true, render the agency's determination improper.

The market research did identify other small business manufacturers of similar items, but none of those small businesses was approved to manufacture NSNs 4457 and 8569, nor had any of them ever responded to a previous solicitation for these NSNs. AR 517-528. Benchmade also states that Blackhawk was a successor in interest to Masters of Defense, and that the contracting officer knew Blackhawk was a small business. Pl. mot. at 18. As the administrative record demonstrates, however, the contracting officer was unable to confirm whether Blackhawk was a small business because of conflicting information regarding its size in the record. AR 18. Nevertheless, even though Blackhawk purchased drawings and possibly other assets from Masters of Defense, the contracting officer knew that it was not an approved manufacturing source for NSNs 4457 and 8569. AR 16. Moreover, the agency's procurement history for the NSNs indicates that Masters of Defense has never manufactured these NSNs or offered to supply them for the Government AR 517-28. Benchmade has been the sole manufacturing source for the NSNs since its inception, and the sole awardee for the prior six years AR 517-528.

As explained in our motion, the decision regarding whether to set aside an acquisition for small business is a business judgment within the discretion of the contracting officer. MCS Management, Inc v. United States, 48 Fed. Cl. 506 (2000). The determination may be based upon factors such as procurement history of the item, the contract requirements, market surveys and the recommendation of the SBA. Id.

In this case, the contracting officer (1) conducted a market survey, AR 1-53; (2) considered the procurement history AR 517-528; and (3) coordinated with SBA for approval, AR 113, prior to determining that there was no reasonable expectation of likely receiving offers from at least two small businesses offering the product of different small businesses. Moreover, although market research indicated that there was a potential for offers from small business, none was an approved source for the required knives. AR 1-53. Past history demonstrated that Benchmade was the only approved manufacturing source and had been the sole awardee for the previous six years AR 517-28. Finally, the SBA agreed that, with only one manufacturing source for the NSNs, there was no reasonable expectation of receiving offers from small businesses for the products of different small businesses. AR 113.

The record clearly shows that the contracting officer acted reasonably and within her discretion in finding that the required expectation for a small business set-aside did not exist for RFP 0001. AR113-118. Accordingly, the contracting officer's decision not to set aside RFP 0001 for small business was neither arbitrary nor an abuse of discretion, and the agency's decision should be affirmed.



Agreed-Upon Public Version of Brief 10/16

C. The Agency Properly Approved Gerber's Alternate Offer As A Technically Acceptable Alternative

Benchmade has not shown any error in the agency's determination that Gerber's knife was a technically acceptable alternative.

As we set forth in our motion, in order to increase competition, the solicitation specifically provided for offerors to submit technically acceptable alternative items in lieu of the Benchmade knife.

Benchmade alleges that the agency's decision that Gerber's knife for NSN 4457 was interchangeable with Benchmade's knife lacked a reasonable basis because (1) the agency relied upon a comparison of the wrong knives, citing to AR 228; (2) the agency failed to apply the correct standard in determining whether the knives of Benchmade and Gerber were interchangeable; and (3) there are meaningful differences between the Benchmade knife and the Gerber knife. None of these arguments has merit.

The agency solicited NSN 4457, which is a commercial "off the shelf item" produced by Benchmade. The agency referenced Benchmade's code and part number in the solicitation and incorporated a provision into the contract to permit the submission of alternate offers to obtain the maximum competition practicable. AR 144 (Provision L17C01, Conditions for the Evaluation and Acceptance of Offers for Part Numbered Items). Provision L17CO1 explained that any product offered must be either the product specified in the RFP or be physically, mechanically, electrically, and functionally interchangeable with the specified product. AR 144-145. Gerber submitted a technical data package for its commercial off-the-shelf-knife to be considered as an acceptable alternative to Benchmade's knife for NSN 4457. AR Tab H. Gerber's technical data



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

package included the (1) commercial catalog data for the two knives; (2) required drawings; (3) specifications; (4) other data for its knife, and a chart cross referencing the characteristics of the Gerber knife with the Benchmade knife; and (5) a sample knife. See AR Tab H and 224-27,145.

Relying upon a single, misplaced document, AR 228, Benchmade asserts that in evaluating Gerber's technical data package, the agency compared the wrong knives. Benchmade asserts that the agency relied upon data for the fixed blade knife (NSN 8569), as opposed to the data for the automatic knife (NSN 4457). Pl. mot. at 27. However, the record shows that the agency's engineer performed a complete evaluation of the correct technical data package submitted by Gerber, along with a physical comparison of the correct knives. AR Tab H and 178, 224-27.

The engineer concluded that the Gerber knife was interchangeable with the Benchmade knife. AR 224. In documenting his finding, the engineer attached to his findings copies of four pages from Gerber's technical evaluation. Compare AR 224-28 and AR 179-82. Three of the four pages pertain to the proper knife at issue, NSN 4457. AR 178-81. It is apparent that the engineer intended to also include a fourth page, located at AR 178, which was the first page of the comparison document relied upon by the engineer. However, by obvious inadvertence, the engineer mistakenly omitted page 178 and picked up page 182, which was the first page of Section III B of Gerber's other technical data package for NSN 8569. AR 228. As a result, the engineer copied pages AR 179-82 from the technical package, rather than AR 178-81, as he obviously intended.

This simple mistake in gathering the pages to be attached behind the engineering report had no affect upon the engineer's findings or conclusions. See AR 178-182 and 224-228. The evidence reviewed, and the findings of the engineer in the record, prove that the agency engineer



Agreed-Upon Public Version of Brief 10/16

had in hand the specifications, drawings, and entire technical data package for the automatic knife, rather than the fixed-blade knife. As a result, it is clear that the agency relied upon a comparison of the correct knives in determining the acceptability of Gerber's knife for NSN 4457. AR Tab H and 178, 224-27.

Benchmade also asserts that the agency did not apply the proper standard in determining whether the Gerber knife was technically acceptable for NSN 4457. Benchmade reasons that because no where in the engineering memo did the engineer use the words "physically, mechanically, electrically, and functionally interchangeable" in documenting the approval of Gerber submission, he must have used the wrong standard. Pl. mot. at 27-28. However, there is no requirement that the engineer use those "magic" words in documenting his determination of the technical acceptability of Gerber's knife, even though they were considered in the evaluation of the alternate offer. AR 224. What the engineer did say in his memorandum was that, although there were insignificant differences between the Gerber knife and the Benchmade knife, those differences did not affect the form, fit, or function of the proposed Gerber knife. AR 224.

The agency engineer did not use the "magic" words that Benchmade is looking for, but the words he used mean the same thing as "physically, mechanically, and functionally interchangeable." Military Handbook, Configuration Management Guide (MIL-HDBK-61A (SE)), (http://assist.daps.dla.mil/quicksearch/basic_profile.cfm?ident_number=202239 ). The Office of the Under Secretary of Defense (Acquisition, Technology, and Logistics) has approved MIL-HDBK-61A (SE) for use by Department of Defense Agencies. This handbook defines form, fit, function, and interchangeable item as follows:



Agreed-Upon Public Version of Brief 10/16

> (1) "Form" is defined as the physical parameters that uniquely characterize an item, such as "shape, size, dimensions, mass, weight", etc.;
> (2) "Fit" is defined as the ability of an item to physically interface or interconnect with or become an integral part of another item;
> (3) "Function" is defined as the action or actions an item is designed to perform; and
> (4) "Interchangeable item" is defined as a " product which possess such functional and physical attributes as to be equivalent in performance to another product of similar or identical purposes; and is capable of being exchanged for the other product without selection for fit or performance, and without alteration of the products themselves or of adjoining products, except for adjustment."

MIL-HDBK-61A (SE) 3-7. Thus, when the agency engineer documented that the differences in the knives did not affect form, fit, or function, he was documenting his determination that the Gerber knife and the Benchmade knife are physically, mechanically, and functionally interchangeable items for NSN 4457. AR 224.

Gerber also asserts that the Gerber knife is not interchangeable with the Benchmade knife because there are differences between the knives, including that they are made of different grades of steel. Pl. mot. at 28-30. According to Benchmade, the agency erroneously stated that the blade material was the same for both knives. Pl. mot. at 28. However, that statement was not erroneous, as both knives are made of steel deemed satisfactory to meet the minimum needs of the Government. AR 224-25. Moreover, the agency engineer considered the difference in the grades of steel used for the Benchmade and Gerber knives, but concluded that the grade of steel used by Gerber would equally satisfy the needs of the Government for the knife. AR 225. Further, the agency engineer was aware and considered all the differences between the two knives, AR Tab H and 178, 224-27, and found that the differences were "minor" and "nothing that would affect the form, fit, and function of the knife." AR 224.

Finally, Benchmade treats as evidence its subjective belief that its knife is also safer and otherwise superior to the Gerber knife. The declaration of a Benchmade manager does not make this a fact. In any event, Benchmade beliefs are not part of the administrative record in this case and were neither submitted to, nor requested by, the agency during the solicitation. Pl. mot. at 28-29. As a result, the declaration is wholly irrelevant to the agency's determination, in addition to being untimely. Accordingly, we respectfully request that the Court disregard the declaration and any allegations contained in it.[4]

In sum, the agency's finding that the Gerber knife is technically acceptable for NSN 4457 is consistent with the information reviewed, including (1) the technical history for the knife; (2) the Government's use of the knife; (3) the physical comparison of the Gerber knife to the Benchmade knife; and (4) Gerber's alternate offer technical data package. The Government's determination in this case enhances competition. Benchmade's position only serves to limit competition and maintain Benchmade as the sole source to fill the Government's contracts for a knife that the Government has concluded is commercially available by at least one other source.

The agency's determination that the Gerber knife met the Government's technical needs is a matter within the broad discretion of agency officials that should not be second-guessed by the Court. See Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004). Considering all of this, the agency acted reasonably and well-within its discretion when it determined that Gerber's

[4] Even if the evidence were properly before the Court, it would not overcome the deference to be afforded the agency in its technical review. Moreover, as discussed in Gerber's reply brief, Benchmade's allegations appear to have been fully rebutted by Gerber's own expert. Neither of these declarations, however, should be considered by the Court in reviewing the agency's actions.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

alternate knife is interchangeable with the Benchmade knife for NSN 4457 (AR 178, 224-227). The determination of the agency to accept the Gerber knife should be sustained.

## DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD AS TO COUNT IV AND RESPONSE TO BENCHMADE'S CROSS-MOTION FOR JUDGMENT UPON THE AGENCY RECORD

## STATEMENT OF THE NEW ISSUES

1. Whether Benchmade's post-award protest alleging improper bundling is untimely.

2. In the alternative, whether the agency's use of a single solicitation to solicit and award separate contracts for two independent products constitutes improper bundling, particularly in the case where Benchmade, a small business, submitted a proposal for both products.

## SUPPLEMENTAL STATEMENT OF THE CASE

### I. Nature Of The Case

On August 6, 2007, Benchmade filed this action in the United States Court of Federal Claims. In its original complaint, Benchmade alleged that the Government (1) improperly solicited the required combat knife upon an unrestricted basis rather than as a small business set-aside; (2) improperly approved Gerber as a technically acceptable alternate source; and (3) improperly implemented the contract award to Gerber by executing the contract using Standard Form ("SF") 26. In its first amended complaint, Benchmade has withdrawn its original count III of the complaint concerning SF26, and added a count IV alleging that the agency improperly bundled the procurement.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

II. Supplemental Statement Of Facts Concerning Bundling Issue

On October 5, 2007, Gerber filed its reply/response brief and cross-motion for summary judgment as to Count IV of the complaint. Gerber also included in its brief a statement of "Gerber's further supplemental statement of facts." Gerber reply/response at 34. We concur with those factual findings. We also add the following.

1. RFP 0001 provided for the award of a contract for either or both of the knives upon an all or none basis, AR122,152, with a one year base period, and no more than four one-year option periods. AR142.

2. Benchmade was the successful offeror for the most recent contract awarded for both NSNs (contract 1032), as well as the last contract awarded for a single NSN (4457), contract 3422. AR 501 and 511.

**SUMMARY OF NEW ARGUMENT**

Benchmade's post-award protest asserting that RFP 0001 was bundled is untimely and should be deemed waived. Benchmade was aware of the facts forming the basis for its challenge prior to the closing date for offers, but failed to raise any objection. As a result, the argument has been waived.

In the alternative, even if the argument is not waived, the agency did not improperly bundle this solicitation. Because the solicitation permitted offerors to bid upon only a single or both NSNs, and because the agency planned to award one or separate contracts to the winning offeror for each NSN, the FAR's bundling provisions were not required to be followed.



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

**ARGUMENT**

Benchmade alleges for the first time during this proceeding that the agency bundled the requirements for NSNs 4457 and 8569 in RFP 0001. Benchmade then alleges that, as a result of being a bundled procurement, the agency erred by not following the bundling procedures set forth in 15 U.S.C. § 644. Pl. mot. at 8, 19. Apparently aware of the untimely nature of its protest, Benchmade is careful to frame the issue in a manner that circumvents the initial question of whether this RFP was bundled at all. Instead, Benchmade assumes an error in the agency's administrative procedures for not complying with the regulatory bundling procedures. Pl. mot. at 19-23. However, the procedures pertaining to bundled solicitations, which are set forth in 15 U.S.C. § 644, apply only when a procurement meets the definition of bundling as defined by FAR 2.101 and 15 U.S.C. §632(o)(2). For the reasons set forth below, Benchmade's bundling protest should be dismissed as untimely. In the alternative, even if the protest were timely, the protest should be denied upon the merits and the agency's award decision should be sustained upon the merits.[5]

A. Benchmade's Protest Alleging Bundling Is Untimely

Benchmade's post-award protest alleging that the agency bundled RFP 001 is untimely. The issue of whether RFP 0001 was a bundling of separate requirements is separate from the issue of whether the agency properly abided by the bundling procedures set forth in the FAR and procurement statutes. If Benchmade believed that the procurement was bundled improperly,

[5] Without restating it here, we incorporate by reference the standard for granting the Government's motion for judgment upon the administrative record set forth in our August 24, 2007 brief.



Agreed-Upon Public Version of Brief 10/16

Benchmade could have and should have raised that issue prior to the closing of the solicitation. It did not. As result, Benchmade cannot now raise the issue for the first time.

This Court has specifically held that to establish standing in the Court to protest bundling decisions a plaintiff must persuade the court "to find that [the plaintiff] has protested in a timely manner." CC Distributors, Inc. v. United States, 38 Fed. Cl. 771 (1997). To be timely, a protests based upon alleged improprieties apparent in the RFP must be filed prior to the RFP closing date (4 C.F.R. 21.2 (a)(1)); FAR 33.103(e)). If a party fails to object to a patent error in a solicitation prior to the solicitation closing time, it waives its ability to raise the objection subsequent to the solicitation closing date. Blue & Gold Fleet, L.P., 492 F.3d at 1313; Moore's Cafeteria Services, 77 Fed.Cl. at 185; see CC Distributors, 38 Fed. Cl. at 771 (citing Custom Data Servs., B-271288.2, 96-2 CPD 140, which held that a protest of a bundling decision filed after the solicitation closing was untimely).

In this case, the alleged bundling approach was apparent in the synopsis of the procurement and the subsequent RFP. On October 10, 2006, the agency synopsized RFP 0001 on FedBizOps to provide notice to the industry of the requirement for NSNs 4457 and 8569 in RFP 0001. AR 115-16. This synopsis stated "the proposed procurement includes a family group of items within the Federal Supply Class 1095." AR 116. On November 2, 2006, the agency issued RFP 0001 for NSNs 4457 and 8569, with a closing date of November 17, 2006. AR 119-56. This RFP was mailed to Benchmade and posted on FedBizOps. AR 21. It specified upon its face that it was soliciting offers for two NSNs and that awards would "be made on an 'all or none' basis by NSN. AR 122, 124, 126, 127, 144, and 152. Therefore, Benchmade had more than 30 days notice that RFP 0001 solicited proposals for NSNs 4457 and 8569. AR 115-116, 119-156.

Agreed-Upon Public Version of Brief 10/16

If Benchmade believed that RFP 0001 bundled the requirements for NSNs 4457 and 8569, making award unsuitable for small business participation, it had more than 30 days prior to the RFP closing date to raise the issue. AR 115-16, 119-56. However, Benchmade did not raise the issue of bundling under RFP 0001 until September 11, 2007, almost ten months after the RFP closing date of November 17, 2006. AR 155. As a result, Benchmade's protest that the agency bundled the requirements in RFP 0001 is untimely and should be dismissed.

B. The Agency Did Not Issue A Bundled Solicitation In RFP 0001

The RFP did not "bundle" the requirements for NSNs 4457 and 8569 as that term is used in the procurement laws. As a result, even if Benchmade's bundling protest were timely, the protest would fail upon the merits.

Benchmade alleges that the procurement under RFP 0001 was a bundling of requirements and that the agency violated the statutory and regulatory provisions that pertain to soliciting bundled procurements. Pl. mot. at 19-23. However, the circumstances of this case do not fall within the statutory/regulatory definition of bundling. See 15 U.S.C. § 632(o) (2); FAR 2.101.

The RFP in this case did not "bundle" the agency's requirements as that term is used in Government contracts law. The statutory and regulatory definition of bundling is:

> "Consolidating two or more requirements for supplies or services, previously provided or performed under separate smaller contracts, into a solicitation for a single contract that is likely to be unsuitable for award to a small business concern due to (i) The diversity, size, or specialized nature of the elements of the performance specified; (ii) The aggregate dollar value of the anticipated award; (iii) The geographical dispersion of the contract performance sites; or (iv) Any combination of the factors described in paragraphs (1)(i), (ii), and (iii) of this definition."

15 U.S.C. §632(o) (2); FAR 2.101.



Agreed-Upon Public Version of Brief 10/16

Therefore, to satisfy the regulatory definition of bundling, an RFP must (1) consolidate two or more requirements that were previously procured under separate smaller contracts under a single contract; and (2) likely be unsuitable for award to a small business. 15 U.S.C. § 632(o) (2); FAR 2.101. Examining these two components of the definition of bundling against this procurement shows that this RFP did not bundle the requirements for NSNs 4457 and 8569.

In this case, RFP 0001 solicited offers for NSNs 4457 and 8569, but unlike bundled procurements, provided for split awards to different awardees for each NSN. AR 122, 124. The RFP required an offeror to submit proposed prices only for the line item(s) (CLIN/NSN) for which it was submitting a proposal. AR 121, 148. The RFP did not require offerors to submit proposals for both NSNs. To the contrary, an offeror could submit a proposal for either or both of the NSNs. AR 121, 144 (Provision L15C04, All or None set forth in part). RFP 0001 specifically stated that an award for each individual NSN in the RFP would be made to the responsible offeror whose offer conformed to the RPF and was most advantage to the Government for each individual NSN. AR 152. Specifically because the requirements for each NSN could be awarded to different offerors, the RFP did not meet the definition of bundling.

In this case, RFP 0001 solicited the NSNs individually upon an “all or none” basis for a single or split award depending upon which offer was most advantageous to the Government for each individual NSN. AR 57, 121, 144, 148, 152. “All or none” means only that offerors must submit an offer for the entire quantity identified for each NSN for which the offeror submits a proposal. AR 57, 121, 144.

The conclusive evidence that this solicitation was not the result of bundling is that the award for each NSN went to separate offerors resulting in two separate contracts. AR 229-78.



Agreed-Upon Public Version of Brief 10/16

The agency awarded the requirements for NSN 8569 to Benchmade pursuant to contract 7027, and awarded the requirements for NSN 4457 to Gerber pursuant to contract 7026 (AR 119-56), which is the subject of this protest. Accordingly, the requirements for the two NSNs were obviously not consolidated for award of a single contract, as would be the case for a bundled procurement. See FAR 2.101. Therefore, the first component of the definition of a bundling is not present under RFP 0001, as this RFP did not consolidate the requirements for the award of a single contract (AR 54-55, 57, 121, 144, 148, and 152).

RFP 0001 also fails to satisfy the second critical component for determining whether the RFP was a bundling of requirements: whether a single contract for the NSNs would likely be unsuitable for award to small businesses. FAR 2.101. In this case, Benchmade's own actions and the procurement history for NSNs 4457 and 8569 prove that a single contract for the two NSNs was suitable for small businesses. Benchmade (1) advised in response to a 2006 market survey for this solicitation that it would be willing to submit an offer and accept an award for both NSNs (AR 9-10); (2) successfully performed for five years a prior contract (contract 1032) for the same two NSNs (AR 501 and 517-28), and; (3) protested to the court that the requirement for the NSNs under RFP 0001 should both be set aside for small business, implying that a contract for both NSNs would be suitable for award to a small businesses, see Pl. mot. at 15-19.

The procurement history of these NSNs shows that Benchmade, a small business, has successfully competed for and performed a prior similar contract for both NSNs without limitation, Contract 1032. In fact, Benchmade has performed every contract for these NSNs since September, 2000. AR 517-528. Moreover, Benchmade has exhibited its ability to perform both NSNs of this RFP when it (1) responded affirmatively to the market survey for this solicitation



Agreed-Upon Public Version of Brief 10/16

Agreed-Upon Public Version of Brief 10/16

regarding a planned solicitation for both NSNs, AR 9-10; (2) received the synopsis notice of RFP 0001 stating that the RFP would solicit the two NSNs for award(s) without protest, AR 115-16; (3) received RFP 0001 specifying the two NSNs, without protest; and (4) submitted an offer to perform both NSNs pursuant to a single contract, AR 313. For these reasons, as exemplified by Benchmade's own actions, the agency's decision to solicit NSNs 4457 and 8569 under the same RFP did not make award of a single contract for both NSNs unsuitable for small business. Therefore, RFP 0001 does not satisfy the second component of the definition of bundling. See FAR 2.101.

Inasmuch as RFP 0001 did not consolidate the requirements for the two NSNs into one unit for a single award that was likely to be unsuitable for small business, it was not a bundled procurement within the meaning of statute and regulations. FAR 2.101; 15 U.S.C. §632(o)(2). As a result, the agency was not required to follow the procedures for a bundled procurement identified at 15 U.S.C. § 644. Therefore, Benchmade's request for relief upon the basis that RFP 0001 bundled the requirements for the two NSNs should be denied upon the merits.

## CONCLUSION

For these reasons, we respectfully request the Court to grant defendant's motion for judgment upon the administrative record and dismiss plaintiff's complaint in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director



Agreed-Upon Public Version of Brief 10/16

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/Kenneth S. Kessler
KENNETH S. KESSLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-756
Fax: (202) 305-7643

Dated: October 10, 2007

Attorneys for Defendant



Agreed-Upon Public Version of Brief 10/16