No. 07-593C
(Judge Wheeler)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

BENCHMADE KNIFE COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

GERBER LEGENDARY BLADES DIVISION,
FISKARS BRANDS, INC.,

Defendant-Intervenor.

---

# DEFENDANT-INTERVENOR'S (I) REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNTS I-III]; (II) RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNTS I-IV]; (III) CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNT IV]; AND FURTHER SUPPLEMENTAL STATEMENT OF FACTS

---

OF COUNSEL:
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated: October 5, 2007

David T. Ralston, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4097
Facsimile 202.672-5399

*Counsel of Record for Defendant-Intervenor Gerber Legendary Blades Division, Fiskars Brands, Inc.*

~~**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**~~

# TABLE OF CONTENTS

**Page No.**

REPLY TO BENCHMADE RESPONSE IN OPPOSITION TO MOTIONS OF DEFENDANT AND DEFENDANT-INTERVENOR FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AS TO BENCHMADE COUNTS I-III AND RESPONSE TO BENCHMADE CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD ........ 2

I. REPLY TO BENCHMADE'S RESPONSE TO GERBER'S SUPPLEMENTAL STATEMENT OF FACTS ........ 2

II. RESPONSE TO BENCHMADE'S SUPPLEMENTAL STATEMENT OF FACTS ........ 9

III. ARGUMENT ........ 11

A. Count I Of Benchmade's complaint, Objecting That The Procurement Should Have Been Set Aside For Small Business, Has Been Waived By Reason Of Its Lack Of Timeliness; Alternatively The Agency's Decision Not To Set Aside Was Reasonable And Should Be Upheld. ........ 11

1. Benchmade Offers No Persuasive Reason, Either Factual Or Legal, For Why The Waiver Rule Of Blue & Gold Fleet Is Inapplicable To Its Claim That The Procurement Should Have Been Set Aside For Small Business. ........ 11

2. The Contracting Officer's Decision To Proceed With An Unrestricted Procurement Was Reasonable And Should Be Upheld. ........ 18

B. Count II of Benchmade's Complaint, Objecting that DSCC Accepted Gerber's Knife as Interchangeable with Benchmade's Knife, Fails for Lack of Competitive Prejudice and Is Waived as Untimely Brought; Alternatively, Benchmade Still Fails to Make Even a Prima Facie Case that the Agency's Decision was Unreasonable, but in Any Event, Fails to Meet the Heavy Burden to Demonstrate the Agency Acted Unreasonably ........ 21

1. Benchmade Fails To Show That It Has Been Competitively Prejudiced By The Agency's Decision To Accept Gerber's Knife As An Alternate Product. ....22

2. Benchmade Offers No Persuasive Reason Why Its Objection To The Agency's Decision To Accept Gerber's Knife As An Alternate Product Was Not Waived When Benchmade Participated Without Objection In The Agency's Reevaluation Of Both the Gerber and Benchmade Proposals. ....23

3. Alternatively, Benchmade Still Fails To Show That It Has Made Even A Prima Facie Case That The Agency's Decision To Accept Gerber's Knife As An Alternate Product Was Unreasonable, But In Any Event Fails to Met the Heavy Burden To Prove That The Decision Was Unreasonable. ....25

a. Benchmade Fails To Make Even a Prima Facie Case That The Agency's Acceptance Of The Gerber Knife Was Unreasonable. ....25

b. Even If A Prima Facie Case Has Been Made, Benchmade Nonetheless Fails To Meet The Heavy Burden To Show That The Agency's Decision To Accept The Gerber Knife Was Unreasonable. ....28

CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AS TO BENCHMADE COUNT IV AND RESPONSE TO BENCHMADE CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD ....34

I. ADDITIONAL ISSUES PRESENTED ....34

II. GERBER'S FURTHER SUPPLEMENTAL STATEMENT OF FACTS ....34

III. ARGUMENT ....38

A. Count IV Of Benchmade's Complaint, Objecting That The Procurement Was Improperly Bundled, Has Been Waived By Reason Of Its Lack Of Timeliness. ....38

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

B. Benchmade Does Not Allege Nor Otherwise Show Prejudice To Itself Resulting From The Bundling Of Which It Complains; Thus, Count IV Of Benchmade's Complaint Should Be Dismissed For Lack Of Standing. ....................39

C. The Subject Procurement Did Not Meet The Definition Of A Bundled Procurement As That Term Is Used In 15 U.S.C. § 644(a); Consequently, The Reporting And Notification Requirements Of That Section And The Companion FAR Provisions Were Not Triggered. ....................42

D. Assuming For Purposes Of Argument That 15 U.S.C. § 644(a) Applied To The Subject Procurement, The Agency's Failure To Follow Its Requirements And The Companion FAR Provisions Resulted In No Competitive Prejudice To Benchmade. ....................44

CONCLUSION ....................45

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## TABLE OF AUTHORITIES

**Page No.**

**CASES:**

*ABF Freight System, Inc. v. United States*,
55 Fed. Cl. 392 (2003) .......... 38, 40-41

*Anderson Consulting v. United States*,
959 F.2d 929 (Fed. Cir. 1992) .......... 45

*Bannum, Inc. v. United States*,
404 F.3d 1346 (Fed. Cir. 2005) .......... 40, 44

*Beacon Construction Co. of Massachusetts v. United States*,
314 F.2d 501 (Ct. Cl. 1963) .......... 16

*Blue & Gold Fleet, LP v. United States*,
492 F.3d 1308 (Fed. Cir. 2007) .......... 11-18, 23-24, 38-39

*CC Distributors, Inc. v. United States*,
38 Fed. Cl. 771 (1997) .......... 38

*Community Heating & Plumbing Co. v. Kelso*,
987 F.2d 1575 (Fed. Cir. 1993) .......... 16

*EDP Enterprises, Inc. United States*,
56 Fed. Cl. 498 (2003) .......... 38-39

*Erinys Iraq Ltd. v. United States*,
__ Fed. Cl. ___, 2007 WL 2714167 (Sept. 14, 2007) .......... 11

*Grumman Data Systems Corp. v. United States*,
88 F.3d 990 (Fed. Cir. 1996) .......... 21, 45

*Information Technology & Applications Corp. v. United States*,
316 F.3d 1312 (Fed. Cir. 2003) .......... 39

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 40

*MCS Management, Inc. v. United States*,
48 Fed. Cl. 506 (2000) .......... 21

*Moore's Cafeteria Services v. United States*,
77 Fed. Cl. 180 (2007) .......... 12

*Myers Investigative & Security Services, Inc. v. United States*,
275 F.3d 1366 (Fed. Cir. 2002)....................39, 40

*ORCA Northwest Real Estate Servs. v. United States*,
65 Fed. Cl. 1 (2005)....................24-25

*Scott v. United States*,
78 Fed. Cl. 151 (2007)....................11-12

**ADMINISTRATIVE DECISIONS:**

*Bollinger Machine Shop & Shipyard, Inc. – Reconsideration*,
B-245702, B-245702.2, 92-1 CPD ¶ 87,
1992 WL 15009 (Comp. Gen., Jan. 16, 1992)....................13

*Cleveland Telecommunications Corp.*,
B-247964, B-247964.3, 92-2 CPD ¶ 47,
1992 WL 183543 (Comp. Gen., July 23, 1992)....................12-13, 17

*Complere, Inc.*,
B-257946, 94-2 CPD ¶ 207,
1994 WL 673944 (Comp. Gen., Nov. 23, 1994)....................17

*Custom Data Services*,
B-271288, B-271288.2, 96-2 CPD ¶ 140,
1996 WL 579838 (Comp. Gen., Oct. 9, 1996)....................39

*Delta Ventures*,
B-238655, 90-1 CPD ¶ 588,
1990 WL 278112 (Comp. Gen., June 25, 1990)....................17

*Dock Express Contractors, Inc.*,
B-227865, B-227865.3, 88-1 CPD ¶ 23,
1988 WL 226955 (Comp. Gen., Jan. 13, 1988)....................16, 17

*Engineered Fabrics Corp.*,
B-284154, B-284154.2, B-284154.3,
2000 WL 289463 (Comp. Gen., Feb 23, 2000)....................26

*Fayetteville Group Practice, Inc.*,
B-226422, 87-1 CPD ¶ 541,
1987 WL 96961 (Comp. Gen., May 26, 1987)....................14

*Future Solutions, Inc.*,
B-293194, 2004 CPD ¶ 39,
2004 WL 257845 (Comp. Gen., Feb. 11, 2004)....................44

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

*GMI Industries, Inc.*,
B-215778, 84-2 CPD ¶ 77,
1984 WL 46270 (Comp. Gen., July 20, 1984) .......... 17

*Henschel, Inc.*,
B-275390.5, 97-1 CPD ¶ 184,
1997 WL 279139 (Comp. Gen., May 14, 1997) .......... 22, 27

*Julie Research Labs., Inc.*,
B-240885, 90-2 CPD ¶ 526,
1990 WL 293679 (Comp. Gen., Dec. 31, 1990) .......... 22, 26-33

*Pembroke Machine Co.*,
B-227360, 87-1 CPD ¶ 588,
1987 WL 102473 (Comp. Gen., June 11, 1987) .......... 39

*Perdomo & Sons, Inc.*,
B-234614, 89-1 CPD ¶ 346,
1989 WL 240565 (Comp. Gen., Apr. 3, 1989) .......... 17

*Phoenix Scientific Corp.*,
B-286817, 2001 CPD ¶ 24,
2001 WL 173917 (Comp. Gen., Feb. 22, 2001) .......... 41-42, 43-44

*Star Brite Construction Co.*,
B-241741, 91-1 CPD ¶ 105,
1991 WL 72898 (Comp. Gen., Feb. 1, 1991) .......... 17

*The Leader Mortgage Co.*,
B-274110, B-274110.2, 97-1 CPD ¶ 187,
1997 WL 258625 (Comp. Gen., May 19, 1997) .......... 15

**STATUTES:**

5 U.S.C. § 706(2)(A) .......... 40, 44

15 U.S.C. § 631(j)(3) .......... 42

15 U.S.C. § 631(o)(2) .......... 41, 42

15 U.S.C. § 644(a) .......... 11, 34, 44

28 U.S.C. § 1491(b)(3) .......... 13

**REGULATIONS:**

4 C.F.R. § 21.2(a)(1) .......... 16

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

13 C.F.R. § 121.406 .......... 20

DFARS § 217.7500 .......... 29

DLAD ¶ 1.101 .......... 8

DLAD ¶ 17.7501(b)(3) .......... 8, 29

FAR § 2.101 .......... 42

FAR § 10.001(c)(2) .......... 11, 44

FAR § 19.001 .......... 20

FAR § 19.202-1(e) .......... 11, 44

FAR § 19.502-2(b) .......... 3, 13, 18-20

**OTHER AUTHORITIES:**

DLA clause 52.217-9002 .......... 8, 25, 26, 29, 31

FAR clause 52.212-5 .......... 30

21 NASH & CIBINIC REPORT, No. 9, ¶ 47 (Sept. 2007) .......... 18

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## GLOSSARY

| **Term** | **Full Description** |
|---|---|
| ADQ | Annual Demand Quantity |
| AR | Administrative Record |
| Blackhawk | Blackhawk Products Group, LLC |
| Camillus | Camillus Cutlery Company |
| CCR | Central Contractor Registration |
| CO | Contracting Officer |
| Collver Aff. | Affidavit of Vance Collver, dated September 11, 2007, filed with Plaintiff's Cross-Motion for Judgment on the Administrative Record, Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record and Supplemental Statement of Facts |
| Dallas Decl. | Declaration of Edgar A. Dallas, dated August 28, 2007, filed with Defendant-Intervenor's Motion for Judgment on the Administrative Record and Supplemental Statement of Facts |
| Def. Motion for JAR | Defendant's Motion for Judgment upon the Administrative Record and Statement of Facts, filed August 24, 2007 |
| Def.-Int. Motion for JAR | Defendant-Intervenor's Motion for Judgment on the Administrative Record and Supplemental Statement of Facts, filed August 28, 2007 |
| DFARS | Defense Federal Acquisition Regulation Supplement |
| DLA | Defense Logistics Agency |
| DLAD | Defense Logistics Acquisition Directive |
| DSCC | Defense Supply Center Columbus |
| FAR | Federal Acquisition Regulation |
| GAO | Government Accountability Office |
| Masters | Masters of Defense, LLC |

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

| **Term** | **Full Description** |
|---|---|
| Mooney Aff. | Affidavit of Greg Mooney dated August 3, 2007, filed with Plaintiff's August 6, 2007 Complaint |
| NSN | National Stock Number |
| NSN 4348 | NSN 1095-01-446-4348 |
| NSN 4457 | NSN 1095-01-456-4457 |
| NSN 8569 | NSN 1095-01-466-8569 |
| Ontario | Ontario Knife Company |
| Pl. Cross-Motion for JAR | Plaintiff's Cross-Motion for Judgment on the Administrative Record, Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record and Supplemental Statement of Facts, filed September 11, 2007 |
| QFD | Estimated Quarterly Forecast Demand |
| SBA | Small Business Administration |
| Second Dallas Decl. | Second Declaration of Edgar A. Dallas, dated October 4, 2007, filed with Defendant-Intervenor's (I) Reply to Plaintiff's Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record [Plaintiff's Counts I-III]; (II) Response to Plaintiff's Cross-Motion for Judgment on the Administrative Record [Plaintiff's Counts I-IV]; (III) Cross-Motion for Judgment on the Administrative Record [Plaintiff's Count IV]; and Further Supplemental Statement of Facts |
| Solicitation R-0001 | Solicitation No. SPM7LX-07-R-0001, dated November 2, 2006 |
| Solicitation R-4308 | Solicitation No. SP0750-06-R-4308, dated August 2, 2006 |
| TDP | Technical Data Package |

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| BENCHMADE KNIFE COMPANY, INC., Plaintiff, v. THE UNITED STATES, Defendant, and GERBER LEGENDARY BLADES DIVISION, FISKARS BRANDS, INC., Defendant-Intervenor. | No. 07-593C (Wheeler, T.) |

**DEFENDANT-INTERVENOR'S (I) REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNTS I-III]; (II) RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNTS I-IV]; (III) CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [PLAINTIFF'S COUNT IV]; AND FURTHER SUPPLEMENTAL STATEMENT OF FACTS**

Defendant-Intervenor, Gerber Legendary Blades Division, Fiskars Brands, Inc. ("Gerber"), by its undersigned attorneys, hereby submits its combined reply to plaintiff Benchmade Knife Company, Inc.'s ("Benchmade") opposition to the motions for judgment on the administrative record of the United States and Gerber and response in opposition to Benchmade's cross-motion for judgment on the administrative record. Additionally, pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, Gerber hereby cross-moves for judgment on the administrative record with respect to Count IV of Benchmade's First Amended Complaint, which count was added, by leave of Court, subsequent to the submission of

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Gerber's Motion for Judgment on the Administrative Record.[1] The overall filing is divided into two major sub-parts – first, the reply/response with respect to Benchmade Counts I-III,[2] and second, the cross-motion and response in opposition with respect to Benchmade Count IV.

## REPLY TO BENCHMADE RESPONSE IN OPPOSITION TO MOTIONS OF DEFENDANT AND DEFENDANT-INTERVENOR FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AS TO BENCHMADE COUNTS I-III AND RESPONSE TO BENCHMADE CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

### I. REPLY TO BENCHMADE'S RESPONSE TO GERBER'S SUPPLEMENTAL STATEMENT OF FACTS

Benchmade's Response to Defendant's and Gerber's Statements of Facts admits, without dispute, all of the United States' Statement of Facts and each of the following paragraphs of the Gerber Supplemental Statement of Facts: Paras. 2, 4, 5, 8,[3] 12-21, 23 and 24. Pl. Cross-Motion for JAR, at 4-6; *see* Def. Motion for JAR, at 3-10; Def.-Int. Motion for JAR, at 2-10.

Benchmade disputes, in whole or part, the following paragraphs of the Gerber Supplemental Statement of Facts: Paras. 1, 3, 6, 7, 9, 10-11, 22, 25-33. Pl. Cross-Motion for JAR, at 4-6. As Gerber demonstrates below, however, Benchmade actually substantively disputes only paragraph 31. Accordingly, Benchmade should be deemed to admit all of these paragraphs (except paragraph 31) as well.

---

[1] Citation conventions and acronyms utilized herein are described in the Glossary that follows the Table of Contents.

[2] Benchmade has abandoned Count III of its Complaint. Pl. Cross-Motion for JAR, at 3 n.3. Accordingly, Gerber will confine the reply/response to a discussion of Counts I and II.

[3] Gerber notes a correction to paragraph 8. The following italicized words should be added to the second clause of paragraph 8: "As of October 10, 2006, the date *the synopsis for* RFP R-0001 was issued, . . ."

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Gerber's reply to Benchmade's contentions is provided below, numbered according to the respective paragraph number in the Gerber Supplemental Statement of Facts:

1. Benchmade admits that both the Small Business Administration ("SBA") representative and the agency's Small Business Specialist approved the decision to change the procurement to an unrestricted procurement, as set forth in the first sentence of paragraph 1 of the Gerber Supplemental Statement of Facts. Pl. Cross-Motion for JAR, at 4; *see* Def.-Int. Motion for JAR, at 3. Benchmade does not respond to the second and third sentences of paragraph 1 of the Gerber Supplemental Statement of Facts, and, thus, these sentences should be deemed admitted as well. Benchmade correctly notes that DD Form 2579, Box 10.b(5) was incorrectly marked "unrestricted." Pl. Cross-Motion for JAR, at 4; *see* AR 113. This obvious error is immaterial because, as Benchmade admits, all of the signatories thereto would have been aware of the error when signing the form. *See* Pl. Cross-Motion for JAR, at 4.

3. Benchmade admits that no small business vendors had submitted knife Technical Data Packages ("TDP") for approval by DSCC as of October 10, 2006.[4] Pl. Cross-Motion for JAR, at 4.

6. a. Benchmade admits that Masters of Defense ("Masters") was neither a self-certified small business concern nor registered in the Central Contractor Registration ("CCR") at any time pertinent to the instant acquisition. *Id.* This admits to the entirety of paragraph 6 in the Gerber Supplemental Statement of Facts. *See* Def.-Int. Motion for JAR, at 4.

---

[4] While Gerber did not submit a TDP by October 10 either, as Gerber is a large business, its submission is not relevant to the "Rule of Two," FAR § 19.502-2(b), on the small business set-aside issue.

b. Despite admitting to these two facts, Benchmade then labels them as "misleading" because the paragraph does not also discuss that Blackhawk may have acquired rights to certain of Masters' products. Pl. Cross-Motion for JAR, at 4-5. While it would seem oxymoronic for Benchmade to describe as "misleading" facts that Benchmade simultaneously admits are true, Benchmade's suggestion to this effect is nonetheless of no consequence because Benchmade's reference to *Blackhawk's* size status as bearing on *Masters'* size status is itself misplaced. *See id.* As the United States explains, Def. Motion for JAR, at 4-5, in order for Blackhawk to provide a Masters' part as an approved source part required submission of a DLA Form 339 requesting DLA approval of the Masters' knife as a Blackhawk part. Benchmade admits this to be true, as it adopts the United States' Statement of Facts. Pl. Cross-Motion for JAR, at 4. Moreover, Benchmade does not contest Gerber's statement that Blackhawk did not submit any Masters knife product for approval. Def.-Int. Motion for JAR, at 5, ¶¶ 10-11; Pl. Cross-Motion for JAR, at 5, ¶¶ 10-11 (noting only that Gerber's assertions provide no citations).[5] Accordingly, Blackhawk's role vis-à-vis Masters is not relevant here. Furthermore, Benchmade's discussion of the Contracting Officer ("CO")'s knowledge of Blackhawk's size status is incorrect; the correct factual statement on this point is that the CO could not confirm Blackhawk's size status, as explained in the United States' Statement of Facts. *See* Def. Motion for JAR, at 5 (CO unable to confirm Blackhawk's size because records conflicting). Benchmade admits this is a correct statement of fact, Pl. Motion for JAR, at 4 (adopting the United States' Statement of Facts), contrary to Benchmade's statement at Pl. Cross-Motion for JAR, at 4, ¶ 6.

[5] The absence of citation is hardly remarkable given that the facts asserted are non-actions. In fact, these statements are consistent with the United States' Statement of Facts. Def. Motion for JAR, at 7-8 and AR 223 (Blackhawk alternate product not acceptable).

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

7. Benchmade cites no record evidence contrary to Gerber's factually correct statement at Def.-Int. Motion for JAR, at 4, ¶ 7. *See* Pl. Cross-Motion for JAR, at 5. Gerber's statement is supported by the facts provided in the United States' Statement of Facts. *See* Def. Motion for JAR, at 5-6. While Benchmade asserts that Gerber's factual statement is an "incorrect legal conclusion," Benchmade provides no explanation of this claim. *See* Pl. Cross-Motion for JAR, at 5. Paragraph 7 is an accurate factual statement and should be deemed admitted by Benchmade.

9. Benchmade cites no record evidence contrary to Gerber's factually correct statement at Def.-Int. Motion for JAR, at 4, ¶ 9. *See* Pl. Cross-Motion for JAR, at 5. Gerber's statement is supported by the facts provided in the United States' Statement of Facts. *See* Def. Motion for JAR, at 5-6, 6-8. While Benchmade asserts that Gerber's factual statement is an "incorrect legal conclusion," it provides no explanation of this claim. *See* Pl. Cross-Motion for JAR, at 5. Paragraph 9 is an accurate factual statement and should be deemed admitted by Benchmade.

10. Benchmade does not deny Gerber's factual assertion, Def.-Int. Motion for JAR, at 5, which assertion is consistent with the United States' Statement of Facts, Def. Motion for JAR, at 7-8 and AR 223 (Blackhawk alternate product not acceptable). Paragraph 10 should be deemed admitted by Benchmade.

11. Benchmade does not deny Gerber's factual assertion, Def.-Int. Motion for JAR, at 5, which assertion is consistent with the United States' Statement of Facts, Def. Motion for JAR, at 7-8 and AR 223 (Blackhawk alternate product not acceptable). Paragraph 11 should be deemed admitted by Benchmade.

22. Benchmade's response admits that a product properly determined by DSCC to be an acceptable product would be physically, mechanically, and functionally interchangeable with

~~Protected Material To Be Disclosed Only In Accordance~~
~~With U.S. Court Of Federal Claims Protective Order~~

Benchmade's knife. Pl. Cross-Motion for JAR, at 5. Hence, Benchmade admits to the substance of Gerber's factual assertion at paragraph 22 and said paragraph should be deemed admitted by Benchmade.

25. Benchmade does not deny Gerber's factual assertion, and, thus, it should be deemed admitted. *See* Pl. Cross-Motion for JAR, at 5. "Notice pleading requirements," referenced by Benchmade in its response, are beside the point; the fact is that Complaint ¶ 45 (now ¶ 54 of Benchmade's First Amended Complaint) referenced no evidentiary support for its allegations.

26. Benchmade does not deny Gerber's factual assertion, and, thus, it should be deemed admitted. *See* Pl. Cross-Motion for JAR, at 5. "Notice pleading requirements," referenced by Benchmade in its response, are beside the point; the fact is that Complaint ¶¶ 46-50 (now ¶¶ 55-59 of Benchmade's First Amended Complaint) referenced no evidentiary support for their allegations.

27. Benchmade does not deny Gerber's factual assertion. *See* Pl. Cross-Motion for JAR, at 5. That Benchmade may consider the facts admitted to be "semantic quibbling," or that Benchmade's Complaint may meet notice pleading requirements, again are beside the point. Complaint ¶ 14 (now ¶ 15 of Benchmade's First Amended Complaint) only "suggests" lack of interchangeability.

28. Benchmade does not deny Gerber's factual assertions, and, thus, they should be deemed admitted. *See* Pl. Cross-Motion for JAR, at 5. That Benchmade may consider the facts admitted to be "semantic quibbling" is beside the point. Benchmade's Motion for and Memorandum in Support of Preliminary Injunction did not state that the Gerber knife is not "acceptable" or "interchangeable" with the Benchmade knife.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

29. Benchmade does not deny Gerber's factual assertions, and, thus, they should be deemed admitted. *See* Pl. Cross-Motion for JAR, at 5. That Benchmade may consider the facts admitted to be "semantic quibbling" is beside the point. Mr. Mooney does not state in his affidavit that the two knifes are, as a matter of fact, not interchangeable, and that fact remains unchanged.

30. Benchmade does not deny Gerber's factual assertion, and, thus, it should be deemed admitted. *See* Pl. Cross-Motion for JAR, at 5. That Benchmade may consider the facts admitted to be "semantic quibbling" is beside the point. The only specific ground referenced by Mr. Mooney as to interchangeability is the "extra step" discussion.

31. This paragraph is substantively contested by Benchmade based on its contention that the Gerber knife is more prone to failure than the Benchmade knife, citing the Affidavit of Vance Collver ¶ 3 ("Collver Aff.") (attached to Pl. Cross-Motion for JAR).

a. The Second Declaration of Edgar A. Dallas ("Second Dallas Decl."), attached hereto, responds factually to the Collver Affidavit [redacted] The Gerber 06 auto tanto knife will withstand force loads equal to or higher than the Benchmade knife offered in response to Solicitation SPM7LX-07-R-0001. *Id.* ¶ 4. As Mr. Dallas explained in his initial declaration, the Gerber knife uses a "more robust construction" and "a larger piston lock" than the Benchmade knife, and thus is able to withstand more force than the Benchmade knife. Dallas Decl. ¶ 12. The Collver Affidavit does not respond to these points. The Collver Affidavit also does not respond to the statement in paragraph 31 of the Gerber Statement of Facts

that both the Gerber and Benchmade knives use a "sliding safety bar as an improvement over earlier automatic knives . . . ."

b. Gerber also asserts legal objections to the Collver Affidavit, addressed *infra* p. 33.

32. None of the factual assertions in paragraph 32 of Gerber's Statement of Facts are contested by Benchmade. *Compare* Def.-Int. Motion for JAR, at 9-10 *with* Pl. Cross-Motion for JAR, at 5-6. Hence, paragraph 32 of Gerber's Statement of Facts should be deemed admitted by Benchmade. *See also* Def. Motion for JAR, at 8 (first full paragraph), which statement of fact Benchmade adopts.

33. Benchmade contests this paragraph, but the grounds for its objections are misplaced. Defense Logistics Agency ("DLA") clause 52.217-9002, cited by Benchmade in its Complaint ¶ 11 and the only specific authority relied upon in its objection, *see* Pl. Cross-Motion for JAR at 6, is not itself either law or regulation; it is merely a contract clause used in the contract as authorized by regulation, namely Defense Logistics Acquisition Directive ("DLAD") ¶ 17.7501(b)(3) (as correctly noted in Pl. Cross-Motion for JAR at 6). Nor is the clause a "part of the Defense Federal Acquisition Regulation and the Federal Acquisition Regulation," as claimed by Benchmade. It is the DLAD that implements the Defense Federal Acquisition Regulation Supplement ("DFARS") and the Federal Acquisition Regulation ("FAR"), and it is to be read in conjunction with them. DLAD ¶ 1.101 (Rev. 5, issued May 11, 2000). In any event, neither Complaint ¶ 11 nor Benchmade's Preliminary Injunction Motion explains how any law or regulation was violated, and thus this paragraph should be deemed admitted by Benchmade.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## II. RESPONSE TO BENCHMADE'S SUPPLEMENTAL STATEMENT OF FACTS

Gerber's response to Benchmade's supplemental statement of facts is provided below, numbered according to the respective paragraph number in the Benchmade Supplemental Statement of Facts.

1. The March 5, 2007 letter of Gail L. Booth, AR 390-91, speaks for itself. Gerber does not admit to Benchmade's paraphrasing of the letter. *See* Pl. Cross-Motion for JAR, at 6. The factual basis of the CO's decision to issue the unrestricted procurement is provided in the United States' Statement of Facts, Def. Motion for JAR, at 6, with which Benchmade agrees, Pl. Cross-Motion for JAR, at 4.

2. Denied. The assertions in this paragraph were specifically refuted by Gerber, Def.-Int. Motion for JAR, at 25-26, and the Dallas Decl. ¶¶ 5, 6 and 7 specifically refuted the assertions in the Affidavit of Greg Mooney (Mooney Aff.) ¶ 3, on which Benchmade relies. Yet Benchmade's statement here does not respond to either Gerber's motion or the Dallas Declaration.

3. Denied. The assertions in this paragraph were refuted by Gerber in its Motion for Judgment on the Administrative Record, at 25-26, and in the Dallas Decl. ¶¶ 5, 6 and 7, which accompanied Gerber's motion. Specifically, the Dallas Declaration refuted the assertions in Mooney Aff. ¶ 3a, on which Benchmade relies. Yet Benchmade has failed to respond to either Gerber's motion or the Dallas Declaration.

4. Denied. The assertions in this paragraph are refuted by the Dallas Decl. ¶¶ 5, 6 and 7, and by the Second Dallas Decl. ¶¶ 4-6.

5. Admitted that the weight of the Gerber auto tanto knife is 7.0 ounces. AR 225. Benchmade claims that the weight of its own knife is 3.9 ounces, citing Mooney Aff. ¶ 3b to that

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

effect. Pl. Cross-Motion for JAR, at 7. Benchmade's own product materials, however, describe the weight of the Benchmade AutoStryker knife as 4.1 ounces. AR 227.

6. Admitted that the Benchmade knife handle is made of aluminum, AR 227, and that the Gerber knife handle is made of aluminum over stainless steel lined frames that adds some weight. Dallas Decl. ¶ 8 specifically refutes Benchmade's contention that the Gerber knife handle does not permit effective use in the reverse grip, yet Benchmade fails to respond here to the Dallas Declaration. This paragraph should be deemed denied other than as admitted herein.

7. Admitted that Benchmade's blade uses 154CM grade stainless steel, AR 227, and that Gerber's blade is made of S30V grade stainless steel, AR 225. Benchmade's remaining allegations as to S30V grade stainless steel were specifically refuted by the Dallas Decl. ¶¶ 9, 10. Yet Benchmade fails to respond here to the Dallas Declaration. This paragraph should be deemed denied other than as admitted herein.

8. Denied. These allegations, to the extent made in the Mooney Affidavit, were specifically refuted by the Dallas Decl. ¶¶ 9, 10, to which Benchmade does not respond. The allegations of the Collver Affidavit are specifically refuted by the Second Dallas Decl. ¶¶ 4-6. Moreover, Benchmade's allegations here as to performance of the two knives are not relevant to interchangeability, which instead focuses on the respective TDPs. *See infra* pp. 25-33.

9. Agreed that the Administrative Record contains page AR 57, which was not part of the record at GAO. Denied that the Administrative Record contains relevant information on bundling, or that Benchmade first learned, or could have learned, upon review of the Administrative Record the basis for its bundling count. *See* Gerber's Further Supplemental Statement of Facts, *infra* pp. 34-37.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

10. Agreed that 15 U.S.C. § 644(a) reads in part as quoted in this paragraph. Denied that the statute is applicable to this procurement for reasons discussed *infra* pp. 42-44.

11. Agreed that federal agencies must follow the FAR when applicable, and that FAR §§ 10.001 and 19.202-1 relate to bundled procurements. Denied that either section is applicable to this procurement for reasons discussed *infra* pp. 42-44.

12. Denied that the material at AR 57, quoted by Benchmade in this paragraph, constitutes a concession that the solicitation was impermissibly bundled or that the government would not follow law and regulation.

## III. ARGUMENT

### A. COUNT I OF BENCHMADE'S COMPLAINT, OBJECTING THAT THE PROCUREMENT SHOULD HAVE BEEN SET ASIDE FOR SMALL BUSINESS, HAS BEEN WAIVED BY REASON OF ITS LACK OF TIMELINESS; ALTERNATIVELY THE AGENCY'S DECISION NOT TO SET ASIDE WAS REASONABLE AND SHOULD BE UPHELD.

#### 1. Benchmade Offers No Persuasive Reason, Either Factual Or Legal, For Why The Waiver Rule Of Blue & Gold Fleet Is Inapplicable To Its Claim That The Procurement Should Have Been Set Aside For Small Business.

Both the United States and Gerber have demonstrated that Benchmade's Count I is subject to dismissal under the solicitation defect waiver rule enunciated by the Federal Circuit in *Blue & Gold Fleet, LP v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). Def. Motion for JAR, 14-15; Def.-Int. Motion for JAR, at 12-17. That rule provides "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Blue & Gold Fleet*, 492 F.3d at 1313. *See also Erinys Iraq Ltd. v. United States*, __ Fed. Cl. ___, 2007 WL 2714167, at *n.7 (Sept. 14, 2007) (applying *Blue & Gold Fleet*); *Scott v. United States*, 78 Fed. Cl. 151, 154

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

n.2 (2007) (interpreting *Blue & Gold Fleet* to mean that "a protest challenging the terms of a government solicitation containing a patent error may never be waged post-award, because the opportunity to object to such an error ends upon the close of the bidding process and, necessarily, prior to any award being made"); *Moore's Cafeteria Services v. United States*, 77 Fed. Cl. 180, 184-85 (2007) (applying *Blue & Gold Fleet*).

Benchmade acknowledges that "the contracting officer's decision – to issue this procurement as unrestricted – is apparent from the face of the solicitation . . . ." Pl. Cross-Motion for JAR, at 11-12. Notwithstanding that admission, Benchmade seeks to avoid the impact of *Blue & Gold Fleet* by manufacturing a distinction between an agency's "decision" and the underlying agency rationale supporting that decision. *See id.* at 12-14. Thus, Benchmade asserts that it should be exempted from the holding of *Blue & Gold Fleet* because it did not know and could not have known that the contracting officer's decision not to set aside was contrary to applicable procurement regulations. *Id.* at 11-13. In short, Benchmade contends that it is entitled to await "discovery" of the agency's reasoning in support of the agency decision before protesting the decision itself. Benchmade's contention is baseless – there is no support for it in *Blue & Gold Fleet* or in decisions of this Court and of GAO addressing the timeliness of claims of solicitation defects; furthermore, it lacks factual support.

Initially, it bears emphasis that Benchmade's position directly contradicts the structure and purpose of the bid protest process, the hallmark of which is expedition. As the GAO has explained:

> The time limits set out in our Bid Protest Regulations reflect our attempt to balance what we recognize are often conflicting considerations: resolving bid protests expeditiously without unduly disrupting or delaying the procurement process, and affording protesters a fair opportunity to present their cases. To that end, we require that allegations of procurement irregularities must be raised

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

> when corrective action, if necessary, is most practicable and thus least burdensome on the conduct of the procurement.

*Cleveland Telecommunications Corp.*, B-247964, B-247964.3, 92-2 CPD ¶ 47, 1992 WL 183543, at *3 (Comp. Gen., July 23, 1992).[6] Hence, "it is incumbent upon [offerors] to remain diligent in their pursuit of the matter so as not to delay the procurement process any more than absolutely necessary." *Bollinger Machine Shop & Shipyard, Inc. – Reconsideration*, B-245702, B-245702.2, 92-1 CPD ¶ 87, 1992 WL 15009, at *2 (Comp. Gen., Jan. 16, 1992). The Federal Circuit in *Blue & Gold Fleet* expressed the same concerns, noting *inter alia* the mandate of 28 U.S.C. § 1491(b)(3) to give due regard to "the need for expeditious resolution," and explicitly endorsed the GAO timeliness rules with respect to alleged solicitation defects. 492 F.3d at 1313-15.

Although denying that it elected to roll the dice and then protest a solicitation defect only when it failed to secure the contract award, Pl. Cross-Motion for JAR, at 14, that is precisely what Benchmade did here. The two "revelations" advanced by Benchmade – learning (at a date unspecified) that [redacted], and receipt of agency counsel's March 5, 2007 letter advising of the contracting officer's reasoning for not setting aside the procurement, *see id.* at 13 – provide no basis for excusing Benchmade from protesting the failure to set aside the procurement for small business prior to the date for submission of proposals. Benchmade was on constructive notice of the Federal Acquisition Regulation, including FAR § 19.502-2(b), *see, e.g., Cleveland Telecommunications Corp.*, 1992 WL 183543, at *3, and had actual notice since October 10, 2006 that the solicitation at issue was unrestricted,

[6] Regarding the authoritativeness of GAO decisions in this Court, *see* Def.-Int. Motion for JAR, at 12 n.2.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

AR 115-16. Consequently, if it thought the agency was in the wrong, it should have come forward prior to November 17, 2006.

Whatever Benchmade learned after the bidding process regarding the identity of other offerors is irrelevant to the timeliness *vel non* of its protest that the procurement should have been set aside. *See Fayetteville Group Practice, Inc.*, B-226422, 87-1 CPD ¶ 541, 1987 WL 96961, at *3 (Comp. Gen., May 26, 1987) ("Information that first becomes available after issuance of a solicitation does not demonstrate the unreasonableness of a contracting officer's prior determination not to set aside."). Moreover, after Benchmade protested to the GAO on January 9, 2007, and the agency sought dismissal of the protest ground relating to failure to set aside as untimely, Benchmade did not contend, as it does know, that it had no way of knowing of the contracting officer's error prior to the submission of offers. AR 326 ("The protester, in its reply to the agency's request [for dismissal], does not challenge the agency's assertion that the following allegations are untimely . . . ."). Similarly, whatever Benchmade learned from agency counsel's March 5, 2007 letter is irrelevant to the timeliness question. Foremost, the significance of that letter to Benchmade's state of knowledge is belied by the fact that Benchmade, as of January 9, 2007, already had protested the agency's failure to set aside the procurement for small business.[7]

Implicitly, and at bottom, Benchmade is arguing that it should not be subjected to complying with the timeliness requirements for raising solicitation defects because to have done

---

[7] The Benchmade correspondence that precipitated agency counsel's March 5, 2007 letter reveals that, as of February 27, 2007, Benchmade fully appreciated its option of bringing suit in this Court. AR 393 ("our client can still proceed on the small-business set aside issue to the Court of Federal Claims"), 394 ("we are also prepared . . . to protest the government's violation of small business set-aside rules in the U.S. Court of Federal Claims"). Yet it failed to do so for another five months.

so might have jeopardized its relationship with the agency. *See* Pl. Cross-Motion for JAR, at 13 (presumption of regularity in the procurement process; no reason to believe the determination was contrary to applicable regulations). That this is so is made evident by Benchmade counsel's letter of February 27, 2007 to agency counsel:

> Benchmade has consistently tried to minimize the impact of the protest on the government's ever-increasing workload. For example, Benchmade did not protest the solicitation described above. . . . [W]e have tried to stay away from meddling in the solicitation process.

AR 394. Such an explanation is unavailing and, indeed, runs counter to the very purpose of the bid protest process. In the GAO's words:

> The protester argues that it should not have been expected to object to the terms of the solicitation prior to the closing date for receipt of proposals "because no bidder would want to jeopardize its assumed good working relationship with the government by raising questions about the government's specifications at the outset." The reason for requiring protesters to file protests based upon apparent solicitation improprieties before closing is to permit our Office to consider the allegations while corrective action, if indicated, is most practicable and, thus, least burdensome on the conduct of the procurement. The fact that a protester may decide that it is not in its best interest to file a protest at the relevant time does not provide a basis for waiving our timeliness regulations.

*The Leader Mortgage Co.*, B-274110, B-274110.2, 97-1 CPD ¶ 187, 1997 WL 258625, at *2 (Comp. Gen., May 19, 1997).

Benchmade further argues that because the patent ambiguity doctrine was referenced by the Federal Circuit in *Blue & Gold Fleet*, *see* 492 F.3d at 1313-14, it therefore should be exempted from the holding of *Blue & Gold Fleet* since no patent ambiguity is at issue in the present case. *See* Pl. Cross-Motion for JAR, at 14 ("there was no patent ambiguity on the face of the solicitation"). Benchmade seriously misconstrues the appeals court's reasoning. The patent ambiguity doctrine was referenced for the reasons that underlie and go to support it, not because

it was the basis for decision. Quoting from *Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1580 (Fed. Cir. 1993), the court observed that:

> [The patent ambiguity doctrine] was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact.

492 F.3d at 1313-14.[8] The Federal Circuit then stated, "[t]hese reasons underlying the patent ambiguity doctrine apply with equal force in the bid protest context. . . . Accordingly, the same reasons underlying application of the patent ambiguity doctrine against parties to a government contract speak to recognizing a waiver rule against parties challenging the terms of a government solicitation." *Id.* at 1314.

Finally, Benchmade questions the applicability of the GAO's timeliness rule, found at 4 C.F.R. § 21.2(a)(1), which the Federal Circuit explicitly endorsed in *Blue & Gold Fleet*. *See* Pl. Cross-Motion for JAR, at 14. Relying on *Dock Express Contractors, Inc.*, B-227865, B-

---

[8] *See also Beacon Construction Co. of Massachusetts v. United States*, 314 F.2d 501 (Ct. Cl. 1963), where Judge Oscar Davis expressed similar views:

> The bidder who is on notice of an incipient problem, but neglects to solve it . . . cannot rely on the principle that ambiguities in contracts written by the Government are held against the drafter. Even more, the bidder in such a case is under an affirmative obligation. He "should call attention to an obvious omission in a specification, and make certain that the omission was deliberate, if he intends to take advantage of it." . . . [W]hat we hold is that, when he is presented with an obvious omission, inconsistency, or discrepancy of significance, he must consult the Government's representatives if he intends to bridge the crevasse in his own favor.

314 F.2d at 504.

227865.3, 88-1 CPD ¶ 23, 1988 WL 226955 (Comp. Gen., Jan. 13, 1988) and *Complere, Inc.*, B-257946, 94-2 CPD ¶ 207, 1994 WL 673944 (Comp. Gen., Nov. 23, 1994), Benchmade suggests that its small business set aside claim is somehow timely. Notably, neither of those decisions dealt with the timeliness of a protest claim premised upon agency failure to set aside a procurement for small business, and one, *Dock Express Contractors*, had no relationship to a protest of solicitation terms whatsoever. Rather, GAO has long held that failure to set aside a procurement for small business, if such failure is an error or defect, is one that is apparent on the face of the solicitation and must be protested prior to bid opening or the time set for receipt of initial proposals. If not, the protest is untimely and will be dismissed. *See Delta Ventures*, B-238655, 90-1 CPD ¶ 588, 1990 WL 278112, at *2 (Comp. Gen., June 25, 1990); *Perdomo & Sons, Inc.*, B-234614, 89-1 CPD ¶ 346, 1989 WL 240565 (Comp. Gen., Apr. 3, 1989); *GMI Industries, Inc.*, B-215778, 84-2 CPD ¶ 77, 1984 WL 46270 (Comp. Gen., July 20, 1984). *See also Cleveland Telecommunications Corp.*, 1992 WL 183543, at *2, 3 (untimely protest alleging assignment of an improper size standard in a section 8(a) set aside procurement); *Star Brite Construction Co.*, B-241741, 91-1 CPD ¶ 105, 1991 WL 72898, at *1 (Comp. Gen., Feb. 1, 1991) (untimely protest alleging that procurement was incorrectly set aside for small disadvantaged businesses) ("As the solicitation plainly stated that the procurement was restricted to SDBs, any protest that the set-aside was improper had to be filed prior to the October 10 bid opening."). Such a rule is fully justified because at the time the offeror learns from the solicitation that the procurement is not to be set aside, it has knowledge that the agency is intending action that is inimical to its interests. *Cf. Dock Express Contractors, Inc.*, 1988 WL 226955, at *4.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

In summary, the solicitation defect waiver rule of *Blue & Gold Fleet* mandates dismissal of Benchmade's Count I. As one noted commentator recently has observed:

> This rule [of *Blue & Gold Fleet*] is sound logic. It not only accomplishes the goal described by the court of precluding potential contractors from getting two bites at the apple, it also means that a potential contractor cannot seek this type of relief in court after having lost the right to protest in the GAO. There is much to be said for having the rules of the two protest forums be as similar as possible, and this is a good step in that direction.

21 NASH & CIBINIC REPORT, No. 9, ¶ 47 (Sept. 2007). Having failed to satisfy the timeliness requirements of GAO with respect to the instant protest ground, Benchmade should not be heard to press the same claim here at an even later and more untimely date.

**2. The Contracting Officer's Decision To Proceed With An Unrestricted Procurement Was Reasonable And Should Be Upheld.**

The United States has demonstrated that the agency's decision not to set aside the instant procurement for small business was reasonable and should be sustained. Def. Motion for JAR, at 4-6, 16-19. Gerber has adopted the United States' position and further supplemented it. Def.-Int. Motion for JAR, at 3-5, 17-19. The salient points are these. The procurement was for knife products having National Stock Numbers ("NSN"s) and for which already approved products or part numbers were designated. An offeror not proposing to supply one of these approved products was required to submit an alternate item for evaluation by the agency. Such submission could be made at any time, irrespective of the pendency of a procurement. With respect to the subject of this protest, NSN 4457, initially there were two approved products or part numbers, each produced by manufacturers whom DSCC believed were small businesses – Benchmade and Masters. Thus, on August 2, 2006, the agency proceeded with the procurement as a small business set aside, the so-called Rule of Two (FAR § 19.502-2(b)) appearing to be met. Thereafter, it came to the agency's attention that Masters was registered as a large business in the

CCR. Meanwhile, notwithstanding that other small business manufacturers had expressed interest in the procurement from as early as April 2006 when market research was conducted, no small business had submitted an alternate item for evaluation and approval by the agency. Consequently, as of August 29, 2006, the contracting officer no longer had a reasonable expectation of receiving offers from at least two small business concerns offering the approved products of different small businesses. There was only one approved small business manufacturer for the item at issue – Benchmade. The set aside solicitation was canceled. On October 10, 2006, the agency commenced efforts to resolicit with issuance of a synopsis in FedBizOps. By that date no small business had submitted an alternate item for evaluation and approval by the agency. The synopsis indicated an intent to resolicit under an unrestricted solicitation. Proceeding on an unrestricted basis was concurred in by the SBA representative and the agency's Small Business Specialist. The new solicitation was issued November 2, 2006, as of which date no small business had yet come forward to submit an alternate item for evaluation and approval by the agency. Thus, at November 2, 2006, there still was only one approved small business manufacturer for the item at issue – Benchmade – and the contracting officer could have no reasonable expectation of receiving offers from at least two small business concerns offering the approved products of different small businesses.

Benchmade essentially agrees with the foregoing. It concurs with and adopts the United States' Statement of Facts in their entirety and much of Gerber's Supplemental Statement of Facts, from which sources the above summary is taken. *See* Pl. Cross-Motion for JAR, at 4. Yet, Benchmade contends that the decision not to set aside the procurement was unreasonable, grounding that contention in an erroneous understanding of the Rule of Two. *See id.* at 15-17. According to Benchmade, the Rule of Two can be satisfied by Benchmade and a non-

manufacturer dealer offering the Benchmade product. *Id.* at 16, 17. In short, Benchmade argues that the Rule of Two is really a "Rule of One." Benchmade offers no decisional support for this argument, only quotations from FAR § 19.001 and 13 C.F.R. § 121.406 which define non-manufacturers. These regulatory provisions in no way support the result that Benchmade seeks and must be read in conjunction with FAR § 19.502-2(b), the Rule of Two. That section speaks of "a reasonable expectation that offers will be obtained from at least two responsible small business concerns *offering the products of different small business concerns*." (Emphasis added.) A dealer offering the Benchmade product would not be offering the product of a small business concern different from Benchmade. Thus, if Benchmade is the only approved small business manufacturer for the item at issue, there can be no expectation of another small business concern, whether dealer or manufacturer, offering the approved product of a different (non-Benchmade) small business concern. Accordingly, the contracting officer's decision to issue Solicitation R-0001 on an unrestricted basis was fully justified and reasonable.

The balance of Benchmade's presentation consists of an attempt to bootstrap the informal expressions of interest of other small business manufacturers into the functional equivalent of those concerns being approved manufacturers of an alternate product, Pl. Cross-Motion for JAR, at 17-18, and to pick at *de minimis* errors in the Administrative Record, *id.* at 19. Regarding the former, notwithstanding these expressions of interest, none of the companies mentioned came forward and submitted an alternate item for evaluation and approval by the agency prior to November 2, 2006. Thus, when Masters was discovered to be a large business, and continuing thereafter, there was but one approved source for the product at issue, and the Rule of Two could not be met. As for the two errors that Benchmade identifies, they in no way undercut the contracting officer's determination that the Rule of Two could not be met. Hence, they are

inconsequential and provide no basis for relief. *See Grumman Data Systems Corp. v. United States*, 88 F.3d 990, 1000 (Fed. Cir. 1996).

In conclusion, should the Court reach the merits of Benchmade's Count I, it should sustain the contracting officer's determination because it was reasonable and meets the standards enunciated by this Court in *MCS Management, Inc. v. United States*, 48 Fed. Cl. 506, 511 (2000).

**B. COUNT II OF BENCHMADE'S COMPLAINT, OBJECTING THAT DSCC ACCEPTED GERBER'S KNIFE AS INTERCHANGEABLE WITH BENCHMADE'S KNIFE, FAILS FOR LACK OF COMPETITIVE PREJUDICE AND IS WAIVED AS UNTIMELY BROUGHT; ALTERNATIVELY, BENCHMADE STILL FAILS TO MAKE EVEN A PRIMA FACIE CASE THAT THE AGENCY'S DECISION WAS UNREASONABLE, BUT IN ANY EVENT, FAILS TO MEET THE HEAVY BURDEN TO DEMONSTRATE THE AGENCY ACTED UNREASONABLY**

Benchmade's Count II objects to DSCC's decision to accept the Gerber knife as an alternate product under the procedure of DLA clause 52.217-9002. Gerber previously has demonstrated two reasons why the Court need not even reach the merits of Benchmade's claim: lack of competitive prejudice to Benchmade and waiver for failure to timely protest. Def.-Int. Motion for JAR, at 19-23. Should the Court nonetheless reach the merits of Count II, the United States and Gerber each have demonstrated that Benchmade fails to meet the heavy burden to show that the agency's decision in this regard was unreasonable, Def. Motion for JAR, at 19-22; Def.-Int. Motion for JAR, at 23-27. In fact, Gerber demonstrated that Benchmade fails to make even a prima facie case of unreasonableness. Def.-Int. Motion for JAR, at 23-27. As shown below, Benchmade's response still fails to show competitive prejudice resulting from the agency's decision, still fails to show that its protest as to Count II has not been waived, and still

fails to make a prima facie case, much less prove, that the agency acted unreasonably in accepting the Gerber knife.[9]

### 1. Benchmade Fails To Show That It Has Been Competitively Prejudiced By The Agency's Decision To Accept Gerber's Knife As An Alternate Product.

As Gerber previously demonstrated, the provisions of the Competition in Contracting Act and this Court's bid protest jurisdiction are intended to enhance and foster competition, not to foreclose competition by preserving a monopolist's position as the sole "approved" source of a particular item. Def.-Int. Motion for JAR, at 19-21. As a result, Benchmade must do more to establish actionable prejudice than simply complain that it would have been in line for award as the last offeror standing had the agency rejected Gerber's knife as an alternate product. *See* Pl. Cross-Motion for JAR, at 25. Due to an agency's broad discretion to define its own minimum needs, GAO has recognized that an offeror can establish "competitive prejudice" from an agency's improper acceptance of an "alternate product" only when the offeror can establish that it would have revised its own offer had it known of the agency's relaxed requirements. *Julie Research Labs., Inc.*, B-240885, 90-2 CPD ¶ 526, 1990 WL 293679 (Comp. Gen., Dec. 31, 1990); *Henschel, Inc.*, B-275390.5, 97-1 CPD ¶ 184, 1997 WL 279139 (Comp. Gen., May 14, 1997).

Benchmade has failed even to address this line of authority, arguing only that it was prejudiced merely because it had to compete with Gerber for award. Benchmade has presented

---

[9] Although Benchmade's response treats the prima facie issue first, followed by waiver/untimeliness, lack of prejudice and finally the merits of its claim, Pl. Cross-Motion for JAR, at 23-30, in the interest of clarity, Gerber will address these issues in the same order presented in Gerber's motion: (1) lack of prejudice, (2) waiver for untimeliness, (3) failure to make a prima facie case of unreasonable agency action, and (4) failure to prove the agency acted unreasonably.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

no evidence that it would have offered a lower-priced knife or a knife with different features had it known that the agency would have treated Gerber's knife as "interchangeable" with Benchmade's. Because Benchmade can make no showing that it would have altered its proposal, Benchmade cannot establish that it was prejudiced by the agency's decision to allow Gerber into the competition. Any objections about the quality of Gerber's knife that Benchmade now raises for the first time months after the fact go only to the reasonableness of the agency's best value determination – an issue not before the Court in this protest.

**2. Benchmade Offers No Persuasive Reason Why Its Objection To The Agency's Decision To Accept Gerber's Knife As An Alternate Product Was Not Waived When Benchmade Participated Without Objection In The Agency's Reevaluation Of Both the Gerber and Benchmade Proposals.**

On the record before the Court, it is undisputed that: (1) Benchmade learned on December 21, 2006 that the agency had determined Gerber's knife to be physically, mechanically and functionally interchangeable with Benchmade's knife (Def.-Int. Motion for JAR, at 5, ¶ 13); (2) after learning that the agency considered Gerber's knife interchangeable, Benchmade voluntarily participated in the agency's reevaluation of its and Gerber's proposals without ever contending that any such reevaluation was inappropriate because Gerber's knife did not meet the standard for "interchangeability" articulated in the Solicitation (*id.* at 6, ¶ 17); and (3) Benchmade first raised its current allegation that the Gerber knife is not physically, mechanically, and functionally equivalent in its Complaint filed in this Court on August 6, 2007 (*id.* at 7, ¶ 19). Benchmade admitted and adopted each of these facts in its Cross-Motion. Pl. Cross-Motion for JAR, at 4 n.4.

Gerber has demonstrated how these facts raise the same concerns relied upon by the Federal Circuit in announcing its waiver rule in *Blue & Gold Fleet*, particularly the inequity of

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

allowing a bidder with knowledge of an alleged defect in the procurement to "roll the dice" on winning the competition, only later to claim that the very defect the bidder knew of prior to the competition rendered the process unfair. Def.-Int. Motion for JAR, at 23. Benchmade does not deny that it reserved its objections to Gerber's knife until after it learned that it had failed to receive the award for NSN 4457 after the agency's reevaluation. The only counter argument raised by Benchmade is that *Blue & Gold Fleet* expressly addresses only defects apparent on the face of a solicitation. This defense fails to acknowledge the equitable underpinnings of *Blue & Gold Fleet* and this Court's own prior approach to waiver based on willing participation in a substantive reevaluation of proposals.

Prior to *Blue & Gold Fleet,* this Court recognized that the equitable nature of its bid protest jurisdiction will preclude a protester from raising an argument in this Court that it has waived by agreeing to participate in a substantive reevaluation of proposals. In *ORCA Northwest Real Estate Servs. v. United States*, 65 Fed. Cl. 1 (2005), the protester filed a post-award bid protest in this Court objecting to the agency's pre-award determination that the awardee was responsible. That initial protest was dismissed, with the protester's concurrence, based on the agency's agreement to "reevaluate the proposals of the protester and awardee in this solicitation." *Id.* at 4. The second source selection determination reaffirmed the original award decision, which led predictably to a second protest before the Court. Noting that the protester had willingly participated in the agency's reevaluation of proposals instead of objecting that any such evaluation was unnecessary given the awardee's alleged lack of responsibility, this Court observed that "the fact that [the protester] agreed to the dismissal of its first bid protest and the substantive reevaluation of both proposals places beyond reach any issues of [the awardee's] responsibility at the time of the [original] award." *Id.* at 7. The Court agreed that the process in

which the protester acquiesced – the substantive reevaluation of its and the awardee's proposals – "was, at least insofar as [the protester] can now argue, tantamount to a new award decision." *Id.* Accordingly, the Court ruled that the protester had waived its ability to challenge the agency's earlier responsibility decision: "If [the protester] wished to maintain a challenge to the earlier decision, it should not have agreed to dismissal and reevaluation." *Id.*

In raising a challenge to Gerber's threshold eligibility to compete for award after having agreed to participate in a reevaluation of proposals that included Gerber's proposal, Benchmade finds itself in exactly the same position as the protester in *ORCA Northwest*. Benchmade's willing participation in what was "tantamount to a new award decision," without objecting that Gerber's knife should be excluded, precludes Benchmade from raising such an argument in this Court.

**3. Alternatively, Benchmade Still Fails To Show That It Has Made Even A Prima Facie Case That The Agency's Decision To Accept Gerber's Knife As An Alternate Product Was Unreasonable, But In Any Event Fails to Met the Heavy Burden To Prove That The Decision Was Unreasonable.**

**a. Benchmade Fails To Make Even a Prima Facie Case That The Agency's Acceptance Of The Gerber Knife Was Unreasonable.**

As previously explained, Def. Motion for JAR, at 20-22, Def.-Int. Motion for JAR, at 23-24, the instant procurement was conducted under the auspices of DLA clause 52.217-9002, Conditions for Evaluation and Acceptance of Offers for Part Number Items (June 2006),[10] AR 144-146, which has been termed by GAO as similar to DLA's former "Products Offered" clause.

[10] Clause 52.217-9002(a) provides in pertinent part: "Any product offered must be either a product cited in the AID, or be physically, mechanically, electrically, and functionally interchangeable with a product cited in the AID, including any additional requirements referred to in the AID, if any."

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

*Engineered Fabrics Corp.*, B-284154, B-284154.2, B-284154.3, 2000 WL 289463 at *3 (Comp. Gen., Feb 23, 2000); *see Julie Research Labs., Inc.*, 1990 WL 293679. Gerber offered its 06 auto tanto knife as an "alternate product" pursuant to Clause 52.217-9002(c), and submitted to DSCC (1) a TDP for its knife, including a comparison between the Gerber automatic knife and the Benchmade automatic knife listed in the AID, and (2) a sample 06 auto tanto knife. AR 158-182. Benchmade admits as much. Pl. Cross-Motion for JAR, at 28.

Brett A. Rippl, DSCC's mechanical engineer, reviewed Gerber's TDP and sample knife. AR 223-228. Mr. Rippl concluded specifically: "The dimensional and material characteristics listed in the [Gerber] data package were similar for both the Gerber 22-01055DS and the Benchmade 9100SBT. There were minor dimensional differences for some of the characteristics but nothing that would affect the form, fit or function of the knife." AR 224, ¶ 2. Mr. Rippl further observed concerning the sample that: "Local military personnel commented that the Gerber product would be preferred because of the more robust construction, ease of operating and ease of cleaning with open back design of the knife." *Id.* Based on Mr. Rippl's technical assessment of the TDP and the sample, DSCC concluded that Gerber's alternate offer of part number 22-01055DS was "acceptable for NSN 1095-01-456-4457." AR 232, § B.1. None of the foregoing facts are disputed.

Gerber relies upon GAO's description in *Julie Research Labs* to explain the evaluation process for alternate products under a Products Offered Clause:

> Evaluating offers of alternate products pursuant to the Products Offered clause essentially involves a determination of the technical acceptability of the proposal (that is, compliance with the technical requirement to describe clearly the characteristics of the product and to establish its interchangeability with the brand-name product), and not an evaluation of the alternate item itself.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Def.-Int Motion for JAR, at 24 *(quoting Julie Research Labs*, 1990 WL 293679, at *3). Gerber also has referenced *Julie Research Labs* as providing the elements of the interchangeability test:

> We believe that the concept of interchangeability as properly interpreted requires only that no material differences exist between the alternate product and the referenced product with respect to those characteristics essential to the proper performance of the item.

*Id. (quoting Julie Research Labs*, 1990 WL 293679, at *4); *accord, Henschel, Inc.*, 1997 WL 279139 at *3. Based on GAO's reasoning in *Julie Research Labs,* Gerber earlier identified the required elements for Benchmade's Count II as being: "probative evidence that there are material differences between the Gerber and Benchmade knives with respect to characteristics essential to the proper performance of those knives." Def.-Int. Motion for JAR, at 24. Benchmade does not dispute this position. Pl. Cross-Motion for JAR, at 23-24. Indeed, it does not even discuss *Julie Research Labs,* or for that matter, any legal authority with respect to the prima facie showing required for Count II. *See id.* Benchmade effectively concedes that *Julie Research Labs* describes the appropriate legal standard for interchangeability.

Gerber's motion also explained at some length why Benchmade failed to make a prima facie showing as to Count II under *Julie Research Labs*. Def.-Int Motion for JAR, at 24-27. Benchmade's limited response, wholly lacking in citation to authority, is that it is sufficient for the Court "to infer the fact at issue" and that the Court "could infer the knives were not interchangeable" from the Mooney Affidavit. Pl. Cross-Motion for JAR, at 23-24. Benchmade misses the point because, whatever "inferences" Benchmade may wish to draw, the fact remains the Mooney Affidavit does not meet the test articulated in *Julie Research Labs* as it neither addresses the materiality of the differences in the knives, nor connects those differences to characteristics essential for the proper performance of the knives. Def.-Int. Motion for JAR, at

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE~~
~~WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

25. Nor does the Mooney Affidavit address the test employed by Mr. Rippl ("differences affecting form, fit or function"), as Mr. Mooney does not claim that the differences materially impact form, fit or function. *See* Mooney Aff.

In fact, Mr. Mooney *does not even state* that the two knives are actually not interchangeable; rather, he provides only his lay conclusion that he "believes" the knives are not interchangeable, predicated on his belief that the Gerber knife requires an "extra step" (securing the safety) to keep the blade open. *Id.* ¶¶ 3a & 5. Even were Mr. Mooney treated as an expert witness, which he makes no claim to be, and even were this "opinion" correct, which it is not, it would be insufficient to make a prima facie case as to Count II and it does not address materiality to performance. The Benchmade TDP, AR 181, the "exact product" against which the Gerber TDP, AR 158-180, is compared for interchangeability, *Julie Research Labs*, 1990 WL 293679, at *3, and the Gerber TDP are *both* silent on this "extra step" factor and thus *there is no difference at all, material or otherwise,* between the two TDPs on this point. *Compare* AR 180 *with* AR 181; *see* AR 179.[11] The Court need consider this issue no further.

**b. Even If A Prima Facie Case Has Been Made, Benchmade Nonetheless Fails To Meet The Heavy Burden To Show That The Agency's Decision To Accept The Gerber Knife Was Unreasonable.**

**Benchmade's Inadequate Record Argument Is Meritless, Being Predicated On A Mistaken Understanding Of Evaluations Of Alternate Products.** Benchmade labels the

[11] Benchmade's response, reliant entirely on *inferring* lack of interchangeability, concedes that Benchmade has *no direct* evidence on the interchangeability issue contradicting Mr. Rippl's findings, AR 224, ¶ 2. In like manner, Benchmade's response, in relying solely on the Mooney Affidavit for its prima facie showing, acknowledges that the Mooney Affidavit is plaintiff's strongest evidence on interchangeability. Notably, Benchmade makes no reference to the Collver Affidavit in this regard, but even if it had, this would not change the outcome as the Collver Affidavit suffers from the same defects as the Mooney Affidavit.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

Administrative Record inadequate because an "independent evaluation of the Gerber knife" by DSCC is "conspicuously absent." Pl. Cross-Motion for JAR, at 25. Benchmade's unfounded argument is predicated on a misunderstanding of the evaluation process for alternate products under DLA clause 52.217-9002, which does not require an "independent evaluation" or even an evaluation of the alternate item itself. *Julie Research Labs*, 1990 WL 293679, at *3. Conspicuously, Benchmade does not indicate what it means by an "independent evaluation," nor does it even contend that an "independent evaluation" is required by DLA clause 52.217-9002, or the relevant regulations, DFARS 217.7500 or DLAD 17.7501. They do not, and Benchmade's position is simply without basis in law or regulation.

The submission requirements for an alternate product are set forth in DLA clause 52.217-9002(c), AR 145.[12] The adequacy of the submission is determined by the CO, who enjoys "broad flexibility to determine if a particular response conforms," so long as reasonable. DLAD 17.7501(b)(3)(v). DLA1 3200.1 delegates authority to DSCC to evaluate alternate product offers and determine acceptability. AR 232 (¶ C.1). The evaluation process consists of a comparison of (1) the TDP submitted on the alternate product against (2) the TDP for the exact product to determine (3) whether the alternate product is an acceptable substitute for the exact product; that

[12] Most specifically clause 52.217-9002(c)(2)("legible copies of drawings, specifications, or other data necessary to clearly describe the characteristics of the alternate product being offered. Data submitted shall cover design, materials, performance, function, interchangeability, inspection and/or testing criteria, and other characteristics of the alternate product."). The alternate products offeror may also be required to submit data on the "exact product," *id.* at (c)(3), to facilitate the comparison between the alternative product and the exact product, which was required here. AR 126. Thus, Benchmade's criticism that the agency adopted "Gerber's own comparison of the two knives" illustrates Benchmade's own misunderstanding of the evaluation process under DLA clause 52.217-9002. Submission, and agency evaluation of, a comparison between the alternate and exact products is precisely what the clause requires, and nothing precludes the agency from adopting a valid comparison in its evaluation.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

is, that the alternate product meets the interchangeability requirement of clause 52.217-9002(a). The alternate product itself is not independently evaluated. *Julie Research Labs*, 1990 WL 293679, at *3, quoted *supra* p. 26. Whatever Benchmade may mean by "independent evaluation," there is no requirement that anyone except DSCC evaluate and determine the acceptability of the TDP for the alternate product offered, nor is there any requirement that the actual alternate product be tested. *Id.*[13]

Benchmade's contention also fails to accord proper weight to the record evidence documenting the decision, namely, that (1) the Gerber submissions were consistent with clause requirements, AR 158-181, (2) Mr. Rippl, the agency's mechanical engineer, performed the very comparative TDP evaluation required by the clause as described in *Julie Research Labs,* AR 223-27, and (3) the CO considered Mr. Rippl's report and determined Gerber's knife to be a technically acceptable alternate product. AR 232 (¶ C). Nothing more is required by law or regulation.

**The Agency Employed the Proper Standard of Interchangeability.** Benchmade next contends that Mr. Rippl applied the wrong standard for interchangeability, in part, because he did not make a specific finding that the knives were "physically, mechanically, electrically and functionally interchangeable." Pl. Cross-Motion for JAR, at 27-28. Contrary to Benchmade's view, Mr. Rippl (unlike the Mooney Affidavit) properly addressed the core element of interchangeability, namely, that there be no material differences between the alternate product and the exact product with respect to performance characteristics. *Julie Research Labs*, 1990 WL 293679, at *4. Mr. Rippl found specifically that the "standard dimensional and material

[13] Nor is there any "independent evaluation" requirement in the best value determination, RFP Section M, AR 152-54; *accord*, FAR clause 52.212-5; FAR Part 12.

characteristics" of the Gerber and Benchmade knives were "similar," and, where the knives' had dimensional differences, such differences were "minor" and "nothing that would affect the form, fit or function of the knife." AR 224, ¶ 2. Mr. Rippl's findings are completely consistent with the requirement of DLA clause 52.217-9002(a) and *Julie Research Labs* that there be no material differences affecting performance.[14]

Furthermore, Mr. Rippl made a specific finding that the Gerber knife was "technically acceptable." AR 224. Benchmade admits that (a) "acceptability" of alternate products is determined pursuant to DLA clause 52.217-9002, Complaint ¶¶ 10,11, Pl. Cross-Motion for JAR, at 4, n. 4 (admitting to Gerber Statement of Fact ¶ 20), (b) a product properly determined by DSCC to be an "acceptable product" would be "physically, mechanically, and functionally interchangeable" with Benchmade's knife, Pl. Cross-Motion for JAR, at 5; *see supra* pp. 5-6 (¶ 22), and (c) DSCC found Gerber's knife to be "acceptable for NSN 4457," Pl. Cross Motion for JAR, at 4, n. 4 (admitting to Gerber Statement of Fact ¶ 23). Thus, Benchmade's baseless argument is contradicted by its own admissions.

**Benchmade Fails To Show That The Agency's Interchangeability Determination Is Unreasonable.** Benchmade faces a "heavy burden" to prove the agency's interchangeability determination unreasonable, *see* Def. Motion for JAR, at 12, Def.-Int. Motion for JAR, at 10-11, and Benchmade fails to carry it by a wide mark. Benchmade first claims that the agency failed

14 This is a rather ironic argument considering that Benchmade relies solely upon inferences drawn from the Mooney Affidavit for its prima facie case as to interchangeability, Pl. Cross-Motion for JAR, at 23-24, while arguing Mr. Rippl's evaluation was defective for failing to incant the interchangeability terminology of DLA clause 52.217-9002. Were Benchmade's position as to Mr. Rippl's evaluation accepted, then its own prima facie case fails and Count II should be dismissed, mooting the entire point as to Mr. Rippl. Moreover, Benchmade faults Mr. Rippl's evaluation for supposedly applying the wrong interchangeability standard, while itself ignoring the interchangeability standard provided in *Julie Research Labs*.

~~Protected Material To Be Disclosed Only In Accordance
With U.S. Court Of Federal Claims Protective Order~~

to conduct "any" evaluation of its own, Pl. Cross Motion for JAR, at 28, a statement demonstrably wrong, AR 223-27. Then Benchmade launches into a discursive designed to show that the knives are "significantly different[,]" Pl. Cross-Motion for JAR, at 28-29, which standing alone would not demonstrate lack of interchangeability, *Julie Research Labs.*

Examination of the differences alleged by Benchmade, Pl. Cross-Motion for JAR, at 28-30, further demonstrates their lack of substantive merit:

1. Three of Benchmade's numbered differences, (#3) weight difference between the knives, (#4) handle weight, and (#5) blade composition, were presented to Mr. Rippl. AR 225.

a. As to #3, Benchmade has failed to demonstrate any substantive impact on the performance of the knife due to the weight difference. Pl. Cross-Motion for JAR, at 29. Thus, Mr. Rippl's conclusion that the weight difference had no effect on the "form, fit, or function" of the knife is unrebutted.

b. As to # 4, Mr. Rippl's evaluation report specifically notes that local military personnel *preferred* the Gerber handle, AR 224, indicating that, if anything, Gerber's handle represents an *improvement* over Benchmade's knife. Benchmade provides nothing in support of its "reverse grip" comment besides its own views, Pl. Cross-Motion for JAR, at 29, which do not trump the agency's findings. Moreover, Gerber specifically refuted Benchmade's "reverse grip" contention. Dallas Decl. at ¶ 8.

c. As to #5, Mr. Rippl's evaluation notes that the blade material was the same, AR 224, so there was no material performance difference as far as he was concerned.[15]

---

[15] Benchmade contends this statement by Mr. Rippl is erroneous. Pl. Cross Motion for Jar, at 28. Benchmade errs, not Mr. Rippl. The blade *material* in *both knives* is stainless steel, as shown on the chart at AR 225; the only difference is the *grade* of stainless steel, S30V versus 154M.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

Benchmade provides nothing to prove that its generic speculations as to S30V *grade* versus the 154M grade apply to the stainless steel actually used in Gerber's knife. Pl. Cross Motion for JAR, at 29. Gerber specifically refuted Benchmade's speculation as to the performance of S30V grade steel, explaining that S30V grade stainless steel is superior to 154M grade, Dallas Decl. at ¶¶ 9, 10, and Benchmade does not contest this position, Pl. Cross Motion for JAR, at 29.

2. [redacted] This difference, if called that, does not change the agency determination. First, as Benchmade did not raise this issue until reaching this Court, well after the agency's interchangeability evaluation, and as Benchmade raises no argument that the agency should have known of it at the time of the evaluation, it can have no bearing on the reasonableness of the agency's evaluation. Second, Benchmade's entire claim is wholly refuted by Gerber. *See* Dallas Decl. ¶¶ 6, 7 and 12; Second Dallas Dec. ¶¶ 4-6. Third, to the extent Benchmade alleges a manufacturing defect in Gerber's knives, *see* Collver Aff. ¶ 3, that is a matter of contract administration, outside the scope of a proper interchangeability evaluation, which compares product material characteristics presented in the respective TDPs and samples, not a testing of the alternate product, *Julie Research Labs*. Finally, Benchmade relies upon alleged "testing" not before the Court and which Benchmade's counsel represented at the outset of the case *would not be placed* before the Court. *See* Hearing Transcript, Aug. 7, 2007, at 19-20. Under these circumstances, the Court *cannot and could not* find the government's determination to accept the Gerber knife as an alternative product to be unreasonable.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

# CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AS TO BENCHMADE COUNT IV AND RESPONSE TO BENCHMADE CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

## I. ADDITIONAL ISSUES PRESENTED

As a consequence of Benchmade's addition of another count to its complaint, allowed by order of this Court entered September 6, 2007, the following additional issues are presented for resolution:

1. Whether Benchmade's post-award protest objecting that the subject procurement was improperly bundled should be dismissed as waived for untimeliness reasons under the rule of *Blue & Gold Fleet, LP.*

2. Apart from the lack of timeliness of Benchmade's protest objecting that the procurement was improperly bundled, whether said protest ground should be dismissed for lack of standing inasmuch as Benchmade has demonstrated no prejudice from the alleged bundling.

3. Alternatively, whether the subject procurement is even of the type described in 15 U.S.C. § 644(a), which is a necessary predicate to triggering the notification requirements of that section and companion FAR provisions.

4. Even assuming the applicability of 15 U.S.C. § 644(a), whether Benchmade suffered competitive prejudice as a consequence of the agency's action.

## II. GERBER'S FURTHER SUPPLEMENTAL STATEMENT OF FACTS

Gerber submits the following supplemental statement of facts that relate to Benchmade's Count IV. Previously herein Gerber has responded to those statements of fact proffered by Benchmade that relate to its bundling claim. *See supra* pp. 10-11 (¶¶ 9-12).

34. DSCC Contracting Specialist Karen Robinson, on April 4, 2006, distributed a market research questionnaire for purposes of a forthcoming solicitation identified as # R-4308. Among

those receiving the questionnaire was plaintiff, Benchmade. Ms. Robinson explained that responses "will help the Government [t]ailor the solicitation with the Government, Military, and Offeror in mind." AR 7-8.

35. The questionnaire that Ms. Robinson transmitted encompassed three items of supply, described as NSNs 4348, 4457 (the subject matter of this bid protest), and 8569. AR 9; *cf.* AR 13 (a copy of the same page as AR 9, but not filled in by the respondent, thereby indicating what information was supplied by DSCC). Benchmade was identified as the sole approved part number for NSN 4348, and as one of two approved part numbers for each of NSNs 4457 and 8569. AR 9. The estimated quarterly forecast demand ("QFD") for each item was: NSN 4348 – 7,843; NSN 4457 – 6,493; and NSN 8569 – 2,075. AR 9.

36. Benchmade responded to the questionnaire on April 5, 2006. AR 7, 9-11.

37. Respondents were asked to "mark each NSN you are interested in." AR 9. [redacted] *Id.*

38. Respondents were asked 'would you be willing to quote on these items." [redacted] AR 9.

39. Respondents were asked "would you be willing to enter into an IQC arrangement." [redacted] *Id.*

40. Respondents were asked if they would be willing to accept priced option years. [redacted] AR 10. If so, a respondent was to indicate how many such years, with the choices ranging between one and four years. [redacted] *Id.*

41. On a follow-on page Benchmade set forth proposed pricing for each of the three items. AR 11.

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

42. In its cover e-mail returning the completed questionnaire, Benchmade gave no indication that the proposed procurement was of a quantity or estimated dollar value the magnitude of which would render its participation unlikely, nor did it express such concerns as to the prospect of participation by other small businesses. *See* AR 7.

43. In response to the same questionnaire, two other small business concerns, [redacted] expressed interest in the proposed procurement. [redacted] Neither company gave any indication that the proposed procurement was of a quantity or estimated dollar value the magnitude of which would render its participation unlikely. *See id.*

44. Within a week, Ms. Robinson prepared the "Acquisition Plan" for Solicitation R-4308. AR 54-58. The scope of the Solicitation was reduced from three items of supply to two, NSN 4348 being eliminated. AR 54. In summarizing her market research, she observed that Benchmade "responded that they would be interested in bidding on all items." AR 55.

45. Solicitation R-4308, designated as a small business set aside and issued August 2, 2006, set forth QFDs for the two items of supply of 6,493 for NSN 4457, and 2,075 for NSN 8569. AR 70. These were the same estimates as given in the market research questionnaire. *See* AR 9. These QFDs multiplied by four yield the ADQs (Annual Demand Quantities) of 25,972 for NSN 4457, and 8,300 for NSN 8569 set forth at the previous page of the solicitation. AR 69.

46. Following cancellation of Solicitation R-4308, DSCC on October 10, 2006, published through FedBizOps a synopsis of the forthcoming Solicitation R-0001 which was to be unrestricted. The synopsis indicated that the solicitation would seek proposals with respect to NSN 4457 and NSN 8569. AR 115-16.

47. Solicitation R-0001 issued November 2, 2006 for NSNs 4457 and 8569. The QFDs indicated therein were 6,493 for NSN 4457, and 2,075 for NSN 8569. AR 130. The corresponding ADQs were 25,972 for NSN 4457, and 8,300 for NSN 8569. AR 129.

48. There is no indication in the Administrative Record that, between April 5, 2006 and November 17, 2006 (the date for submission of proposals in response to Solicitation R-0001), Benchmade gave any indication to DSCC that the proposed procurement was of a quantity or estimated dollar value the magnitude of which would render its participation unlikely, nor that it expressed such concerns as to the prospect of participation by other small businesses.

49. There is no indication in the Administrative Record that, between April 5, 2006 and November 17, 2006 (the date for submission of proposals in response to Solicitation R-0001), any other small business concern gave any indication to DSCC that the proposed procurement was of a quantity or estimated dollar value the magnitude of which would render its participation unlikely.

50. There is no indication in the Administrative Record that the SBA representative or the agency's Small Business Specialist ever expressed concern that the proposed procurement was of a quantity or estimated dollar value the magnitude of which would render small business participation unlikely or that the procurement was unsuitable for award to small business by reason of consolidating requirements for two goods into one solicitation. *See generally* AR 59, 113.

51. At no time prior to November 17, 2006 (the date for submission of proposals in response to Solicitation R-0001) did Benchmade protest – to the agency, to the GAO, or to this Court – that DSCC was failing to comply with FAR requirements for issuing a solicitation for a bundled procurement.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

## III. ARGUMENT

### A. Count IV Of Benchmade's Complaint, Objecting That The Procurement Was Improperly Bundled, Has Been Waived By Reason Of Its Lack Of Timeliness.

The solicitation defect waiver rule of *Blue & Gold Fleet* is equally applicable to Benchmade's protest that the solicitation at issue here was improperly bundled. Accordingly, Count IV of Benchmade's complaint must be dismissed. As early as April 4, 2006, when DSCC's Ms. Robinson distributed a market research questionnaire to Benchmade, and continuing thereafter up through and including issuance of Solicitation R-0001 on November 2, 2006, Benchmade was on notice that the agency would seek proposals with respect to at least two items of supply – NSN 4457 and NSN 8569. AR 7-11; AR 69-70; AR 115-16, AR 129-30. Benchmade raised no objection to the solicitation in this regard; indeed, it encouraged the grouping of these two knife products in one solicitation [redacted] *See* AR 55. On or before November 17, 2006, Benchmade submitted proposals for both NSN 4457 and NSN 8569 in response to Solicitation R-0001. At no time prior to November 17, 2006 did Benchmade protest – to the agency, to the GAO, or to this Court – that DSCC was failing to comply with FAR requirements for issuing a solicitation for a bundled procurement. Not until the filing of its August 28, 2007 motion for leave to amend its complaint in the instant action, which motion was granted September 6, 2007, did Benchmade raise an objection to the procurement premised on improper bundling.

A bundled procurement, if an error, is an error apparent on the face of the solicitation, and, thus, must be protested prior to the time set for receipt of proposals. This Court has so held. *CC Distributors, Inc. v. United States*, 38 Fed. Cl. 771, 782 (1997); *see ABF Freight System, Inc. v. United States*, 55 Fed. Cl. 392, 399-400, 408-09 (2003). *See also EDP Enterprises, Inc.*

~~Protected Material To Be Disclosed Only In Accordance With U.S. Court Of Federal Claims Protective Order~~

*United States*, 56 Fed. Cl. 498, 500-01 (2003) (denial of motion for temporary restraining order where likelihood of success on the merits was minimal due to untimeliness in bringing bundling protest). The GAO is in agreement. *See Custom Data Services*, B-271288, B-271288.2, 96-2 CPD ¶ 140, 1996 WL 579838, at *2 (Comp. Gen., Oct. 9, 1996); *Pembroke Machine Co.*, B-227360, 87-1 CPD ¶ 588, 1987 WL 102473 (Comp. Gen., June 11, 1987). Therefore, under *Blue & Gold Fleet*, Benchmade's Count IV must be dismissed – "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."[16] *Blue & Gold Fleet*, 492 F.3d at 1313.

### B. BENCHMADE DOES NOT ALLEGE NOR OTHERWISE SHOW PREJUDICE TO ITSELF RESULTING FROM THE BUNDLING OF WHICH IT COMPLAINS; THUS, COUNT IV OF BENCHMADE'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING.

The Federal Circuit instructs that in a bid protest case the consideration of prejudice to the plaintiff can occur at two separate stages in the trial court's analysis. First, in all cases, the protester must demonstrate sufficient injury to itself to satisfy the constitutional minimum for standing before the merits are reached. *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Myers Investigative & Security Services, Inc. v.*

[16] By reason of the explanation that Benchmade already has given for why it should be allowed to amend its complaint to add Count IV, Gerber anticipates that Benchmade will seek to avoid the application of *Blue & Gold Fleet* to this protest ground on the same basis as that which it has advanced in the context of its small business set aside protest ground; namely, that it did not know of the agency's underlying rationale for the decision to which it now objects. As discussed previously herein (*see supra* pp. 12-18), there is no support in *Blue & Gold Fleet*, or in decisions of this Court and of GAO addressing claims of solicitation errors, for the contention that an offeror is entitled to await discovery of the agency's reasoning in support of an agency decision, which decision is reflected on the face of the solicitation, before protesting the agency decision itself.

*United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002). Second, if upon consideration of the merits "the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). At this juncture, we are concerned with the first assessment of prejudice.

To reiterate, a plaintiff invoking the bid protest jurisdiction of this Court must establish the elements of standing, which is "a threshold jurisdictional issue." *Myers Investigative & Security Services, Inc.*, 275 F.3d at 1369. Hence, as part of the standing inquiry, the Court must determine whether a plaintiff has been prejudiced, because "prejudice (or injury) is a necessary element of standing." *Id.* at 1370. *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("the plaintiff must have suffered an "injury in fact").

Benchmade has made no allegation of prejudice to itself resulting from the alleged improper bundling of which it complains. Instead, Benchmade references the speculative interests of other unidentified small businesses who are not before the Court:

> [T]he Agency's decision to bundle the multiple requirements that were previously procured under separate small contracts into a single solicitation effectively precluded small businesses who would have otherwise been able to submit offers for the individual requirements from doing so.

Pl. Cross-Motion for JAR, at 23.[17] *See also* Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief, at 17 (¶ 71). Apart from the rank speculation inherent in this statement, it is patently insufficient to establish standing. *See ABF Freight System, Inc. v. United States*, 55

[17] This assertion truly epitomizes the adage "crying crocodile tears." Benchmade was the incumbent contractor for both knife products being solicited, actively encouraged the agency to proceed with the procurement as "bundled," and, no doubt, hoped to benefit from whatever preclusive effect that "bundling" would have on other small business competitors.

Fed. Cl. 392, 408-09 (2003) ("Despite the invocation of 'bundling,' plaintiffs do not claim that they themselves have been injured by the size of the regions determined by defendant here. . . . Absent an alleged injury, plaintiffs lack standing to assert this particular claim."). Therefore, Count IV of Benchmade's complaint merits dismissal.

Recognizing this fatal weakness, Benchmade seeks to overcome it by arguing that the purported preclusive effect on other small businesses of the alleged bundling "resulted in the Contracting Officer's decision not to set aside the solicitation for small businesses." Pl. Cross-Motion for JAR, at 23. Apart from the bare assertion, however, Benchmade offers no proof for this contention. The Administrative Record discloses no linkage between the agency's decision to consolidate its requirements for two products into one solicitation and the agency's decision to issue Solicitation R-0001 as unrestricted. In fact, the consolidation of NSNs 4457 and 8569 into one solicitation had been accomplished in the earlier Solicitation R-4308 which had been set aside for small business.

Further, Benchmade's attempt to satisfy the prejudice requirement with respect to Count IV by pointing to the injury that it alleges with respect to Count I is legally unsound. This conflation of the two separate grounds of protest for purposes of standing is impermissible – each count must independently satisfy the standing requirement. Moreover, even the underlying legal premise for the attempted conflation is faulty. An unrestricted solicitation that combines two or more requirements can nonetheless be suitable for award to small business and thereby fall outside the definition of bundling set forth in the Small Business Act at 15 U.S.C. § 631(o)(2). *See Phoenix Scientific Corp.*, B-286817, 2001 CPD ¶ 24, 2001 WL 173917, at *6 (Comp. Gen., Feb. 22, 2001) ("There is no link in [the Small Business] Act (or in regulations implementing the Act) between a decision not to set aside a contract and a conclusion that a

contract [as a consequence of consolidating two or more requirements] is unsuitable for award to small business.").

### C. THE SUBJECT PROCUREMENT DID NOT MEET THE DEFINITION OF A BUNDLED PROCUREMENT AS THAT TERM IS USED IN 15 U.S.C. § 644(A); CONSEQUENTLY, THE REPORTING AND NOTIFICATION REQUIREMENTS OF THAT SECTION AND THE COMPANION FAR PROVISIONS WERE NOT TRIGGERED.

A protester challenging a bundled or consolidated procurement generally is one seeking, before the date for submission of proposals, the breaking up of the procurement into parts so that it may pursue the award of some discrete, identifiable portion of the overall work encompassed by the solicitation. Such is not the case here. Benchmade received the award of NSN 8569 and protests, after the fact, only the award of NSN 4457 for which it bid, but unsuccessfully. Notwithstanding that Benchmade was not hampered in submitting a proposal for NSN 4457 by reason of it being contained along with NSN 8569 in the same solicitation, Benchmade nonetheless seeks to invoke the bundling proscriptions of the Small Business Act.

The beginning point of analysis is 15 U.S.C. § 631(j)(3) which exhorts agencies "to the maximum extent practicable" to "avoid unnecessary and unjustified bundling of contract requirements that precludes small business participation in procurements as prime contractors." Bundling is then defined as:

> [C]onsolidating 2 or more procurement requirements for goods or services previously provided or performed under separate smaller contracts into a solicitation of offers for a single contract that is likely to be unsuitable for award to a small business concern due to – (A) the diversity, size, or specialized nature of the elements of the performance specified; (B) the aggregate dollar value of the anticipated award; (C) the geographical dispersion of the contract performance sites; or (D) any combination of the factors described in subparagraphs (A), (B), and (C).

15 U.S.C. § 632(o)(2). *See also* FAR § 2.101.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

At the outset it bears emphasis that the first predicate of the statutory definition is not met here. Although the solicitation consolidated requirements for two goods into one document, proposals for each requirement were to be evaluated separately, such that two separate awards could be made. That, of course, is precisely what occurred – Benchmade receiving the award for NSN 8569 and Gerber the award for NSN 4457. Thus, the solicitation was not necessarily seeking "offers for a single contract." With respect to the component of the statutory definition speaking of likelihood of unsuitability for award to a small business concern, the history of this procurement, as detailed in the Administrative Record, demonstrates that no small business concern ever expressed concern that the procurement was unsuitable for award to small business by reason of consolidating requirements for two goods into one solicitation. The agency's initial market research, which incidentally consolidated not two but three requirements, elicited expressions of interest from [redacted] small businesses. AR 1-14, 19-20 [redacted] Thereafter, commencing with issuance of Solicitation R-4308 on August 2, 2006, followed by the October 10, 2006 FedBizOps publication of the synopsis for the forthcoming Solicitation R-0001, and then actual issuance of Solicitation R-0001 on November 2, 2006, no small business concern ever came forward to question, much less protest, the grouping of NSNs 4457 and 8569 in the same solicitation. Nor did the SBA representative or the agency's Small Business Specialist, each of whom were apprised of the procurement, ever express concern that the procurement was unsuitable for award to small business by reason of consolidating requirements for two goods into one solicitation. *See generally* AR 59, 113.

In sum, no likelihood of unsuitability for award to a small business concern was ever evidenced. That being the case, the subject procurement did not fall within the ambit of the Small Business Act's bundling restrictions. *See Phoenix Scientific Corp.*, B-286817, 2001 CPD

¶ 24, 2001 WL 173917, at *5-6 (Comp. Gen., Feb. 22, 2001) ("Given these expressions of interest [from bona fide small businesses], we do not agree that this solicitation will result in contracts that are unsuitable for award to small business concerns."). Consequently, the reporting and notification requirements of 15 U.S.C. § 644(a) and FAR §§ 10.001(c)(2) and 19.202-1(e)(1) & (2) never arose.

### D. ASSUMING FOR PURPOSES OF ARGUMENT THAT 15 U.S.C. § 644(A) APPLIED TO THE SUBJECT PROCUREMENT, THE AGENCY'S FAILURE TO FOLLOW ITS REQUIREMENTS AND THE COMPANION FAR PROVISIONS RESULTED IN NO COMPETITIVE PREJUDICE TO BENCHMADE.

Even if 15 U.S.C. § 644(a) and FAR §§ 10.001(c)(2) and 19.202-1(e)(1) & (2) were applicable to the subject procurement, a proposition that Gerber disputes, Benchmade is entitled to no relief because it can demonstrate no competitive prejudice to itself that resulted from the agency's failure to follow those statutory and regulatory requirements. As detailed previously, if this Court in a bid protest action determines that "that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).

Benchmade has failed to demonstrate that the consolidation of NSNs 4457 and 8569 in one solicitation inhibited or precluded its ability to compete. In fact, quite the contrary is shown. Benchmade submitted proposals for both NSNs and received the award for one. In such circumstances, where the protester offers to perform the entirety of the bundled requirements, there can be no finding of competitive prejudice. *See Future Solutions, Inc.*, B-293194, 2004 CPD ¶ 39, 2004 WL 257845, at *5 (Comp. Gen., Feb. 11, 2004). Put otherwise, the record fails to demonstrate that but, for the agency's alleged bundling actions, Benchmade would have had a reasonable chance of securing the award for NSN 4457. Benchmade's bundling protest ground

is nothing more than an attempt to latch upon a *de minimis* error, if it is an error at all, in the procurement. The Federal Circuit instructs that such *de minimis* errors provide no basis for relief. *See Grumman Data Systems Corp. v. United States*, 88 F.3d 990, 1000 (Fed. Cir. 1996); *Anderson Consulting v. United States*, 959 F.2d 929, 935 (Fed. Cir. 1992).

**CONCLUSION**

For the foregoing reasons and for those reasons set forth in Gerber's motion for judgment on the administrative record and in the motion for judgment on the administrative record of the United States, Gerber Legendary Blades Division, Fiskars Brands, Inc. respectfully requests that the Court grant its motion (Benchmade Counts I-III) and cross-motion (Benchmade Count IV) for judgment on the administrative record, deny Benchmade's cross-motion for judgment on the administrative record, and dismiss Benchmade's first amended complaint.

Respectfully submitted,

OF COUNSEL:
Philip A. Nacke
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.672.5300
Facsimile 202.672.5399

Dated: October 5, 2007

s/ David T. Ralston, Jr.
David T. Ralston, Jr.
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5143
Telephone 202.295.4097
Facsimile 202.672.5399

*Counsel of Record for Defendant-Intervenor Gerber Legendary Blades Division, Fiskars Brands, Inc.*