**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH THE U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

No. 07-593C (Bid Protest)
(Judge Wheeler)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BENCHMADE KNIFE COMPANY, INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant,

and

GERBER LEGENDARY BLADES DIVISION,
FISKAR BRANDS, INC.,

Defendant-Intervenor.

---

**PLAINTIFF'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD; PLAINTIFF'S RESPONSE TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD; PLAINTIFF'S COUNTER-STATEMENT AND SUPPLEMENTAL STATEMENT OF FACTS**

---

Dated October 18, 2007

Terrence O'Connor
Stephanie Wilson
Albo & Oblon, LLP
Courthouse Plaza
2200 Clarendon Blvd., Suite 1201
Arlington, VA 22201
Tel: 703-312-0410
Fax: 703-312-0415
Counsel for Plaintiff Benchmade Knife Co.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| BENCHMADE KNIFE COMPANY, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 07-593C |
| | ) | |
| THE UNITED STATES | ) | Judge Wheeler |
| | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GERBER LEGENDARY BLADES DIVISION, FISKAR BRANDS, INC. | ) | |
| | ) | |
| Intervenor-Defendant | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD; PLAINTIFF'S RESPONSE TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 52.1(b) of the Rules of the Unites States Court of Federal Claims ("RCFC"), Plaintiff Benchmade Knife Company, Inc. ("Benchmade"), respectfully submits this combined brief containing Plaintiff's reply to the Defendant's and Defendant-Intervenor's opposition to Plaintiff's Cross-Motion for Judgment on the Administrative Record, and Plaintiff's response to Defendant and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record.

## COUNTERSTATEMENT AND SUPPLEMENTAL STATEMENT OF FACTS

### I. Response to Government's Counterstatement of Facts

1. Benchmade disagrees with the Government's attempt to redefine, for this first time in this litigation, the prior "acquisition" as other than the cancelled set-aside solicitation. In its Reply,



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

the Government now contends that the only prior acquisitions are the June 2006 and the 2002 contracts. Def. Rep. 3-4, 10. The Government also tries to use the FAR definition of "acquisition" to support its argument overlooking the fact that the definition itself correctly refers to a "solicitation" as being part of the acquisition process. (Gerber apparently agrees with Benchmade on this point.)

6. The Government's citation to AR 16 does not support its assertion that Blackhawk is not "an approved source for the required NSNs." Def. Rep. 4-5.

## II. Response to Gerber's Counterstatement of Facts[1]

31. Benchmade contests Gerber's assertion that the Gerber knife is not more prone to failure than the Benchmade knife. The Affidavit of Les deAsis (hereinafter, "deAsis Aff."), attached hereto, responds factually to the Second Declaration of Edgar A. Dallas. As Mr. deAsis explained in his affidavit, the Army testing laboratory in Fort Bliss recently conducted an independent test, without Benchmade's prior knowledge, where 100% of the Gerber automatic knives failed completely. After determining that the Gerber knives were unsafe, the Army testing laboratory contacted Benchmade about the problems with the Gerber knife, and Benchmade has supplied them with knives to replace the Gerber knives. deAsis Aff. ¶¶ 3-5.

## III. Benchmade's Supplemental Statement of Facts

1. The discussion in the Second Declaration of Edgar A. Dallas of the "surface to surface" contact in Gerber's plunge lock design may accurately describe the Gerber knife's ability to withstand forces in a "constant force" load situation. However, the "real world" use failures experienced in the field under significantly less than foreseeable combat conditions indicates that

[1] For the record, assuming the Court finds it necessary to do so, Benchmade denies Gerber ¶¶ 7, 9, 22, 27-30. As to ¶ 33, see FAR 1.105-2 Arrangement of **Regulations** [emphasis supplied] and FAR 1.101.

this "surface to surface" contact plunge lock design renders the Gerber knife more prone to failure than the Benchmade knife under these conditions. deAsis Aff. ¶ 6.

2. Benchmade learned that the Army Evaluation Task Force at Fort Bliss, Texas had received a shipment of Gerber knives instead of the Benchmade knives the Task Force had expected, and that the Army testing laboratory in Fort Bliss had conducted an independent evaluation and testing of the Gerber automatic knives, where 100% of the Gerber knives failed completely. After determining that the Gerber knives were unsafe, the Army testing laboratory contacted Benchmade, briefed them about the problems with the Gerber knife, and Benchmade supplied them with Benchmade knives to replace the Gerber knives. deAsis Aff. ¶ 3.

3. Benchmade's knives have been issued in far greater numbers of their contract spans than the current Gerber models, and Benchmade has received no reports of lock failure for these knives, as compared to the failure rate of the current Gerber model. deAsis Aff. ¶ 5.

## ARGUMENT

### I. The Government Failed to Respond to Benchmade's "Rule of Two" Arguments Raised in the Cross-Motion[2]

The Government's Response does not respond to any of the arguments raised by Benchmade in its Cross-Motion regarding the "Rule of Two." The Government ignores the SBA regulations on which Benchmade bases its Rule of Two argument. In ridiculing a "single producer" theory, the Government ignores 13 CFR 121.406(b)(2) ("For size purposes, there can be only one manufacturer of the end item being acquired") and 13 CFR 121.406(b)(3) that provide for a waiver of the non-manufacturing rule if there is "no small business manufacturer" for the item. (emphasis added).

[2] Benchmade addressed the Government's and Gerber's arguments on the timeliness of this claim in its Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record.

## II. The Agency's Failure to Follow Statutory and FAR Requirements for Issuing Solicitations for Bundled Procurements Was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Contrary to Law.

### A. Benchmade Has Been Prejudiced by the Agency's Failure to Follow Statutory and FAR Requirements for Bundled Procurements

If the Court were to conclude that the Government had ignored the statutory and regulatory requirements for a bundled procurement, the Government would be forced to cancel the contract and resolicit. To establish prejudice, a protestor is required to "show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). A vendor like Benchmade, who was second in line for award and would submit an offer for this resolicitation, is an interested party and is prejudiced by the Government actions in the protested bundled solicitation.

### B. Benchmade's Protest of the Failure to Comply with Requirements for Bundled Procurements is Timely

Defendant and Gerber rely upon the waiver rule set forth *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, (Fed. Cir. 2007), to support their claim that Benchmade's bundled requirements protest is untimely. In adopting this timeliness rule, the appeals court found support in "a similar rule" used by the Government Accountability Office (GAO), 4 C.F.R. § 21.2. In the same section of the GAO rules cited by the appeals court, 13 C.F.R. § 21.2(c), GAO allows untimely protests under limited circumstances: "GAO, for good cause shown, or where it determines that a protest raises issues significant to the procurement system, may consider an untimely protest." The "good cause" exception "is limited to circumstances where some compelling reason beyond the control of the protester prevents the protester from submitting a timely protest." *GBF Medical Group/Safety Product Marketing Inc.—Reconsideration,* B-



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

250923, November 24, 1992. The "significant issue" exception is "one of widespread interest to the procurement community and that has not been previously decided." *Celadon Laboratories, Inc*., B- 298533, November 01, 2006.

An exception could be made here because the issue involved is that the Agency arguably ignored a statutory notice requirement: 15 U.S.C. § 644.

> The argument made is that the solicitation and subsequent award to Logicon are illegal, void, and unenforceable. In the court's view, that contention is of such moment that it has to be considered, even if it was not raised at the GAO. Bid protesters, contrary to the Government's argument, are not protecting merely their own interests in challenging illegal procurement activity. The public has an interest at stake as well, and the courts have recognized that protesters serve, in some respects, as private attorneys general.

*Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 353 (1997).

**C. The Government's Response Disregards the Determination of the Agency Officials that the Procurement was a Bundled Procurement.**

Again, the Government's Response fails to adequately respond to the arguments raised in Benchmade's brief. The Government fails to address Benchmade's key argument: that the five government procurement experts who signed the Acquisition Plan (AR 58) considered this a bundled procurement. Moreover, one of these experts, Karen Robertson, has provided an affidavit for the Response that could have, but significantly fails to, address the bundling issue. We must assume that the procurement experts still consider the procurement to be a bundled procurement.

Instead, the Government's Response is nothing more than a lawyer's "legal argument" trying to refute uncontroverted facts, and these arguments fail. The Government's legal argument is that a "split award to different awardees," Def. Rep. at 23, lets the Government avoid any bundled procurement. However, GAO decisions, which may be relied upon by this Court as



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

guidance, do not support that argument. "This bundling concern may arise regardless of whether the consolidated contract is awarded on a single-award or a multiple-award basis." *Phoenix Scientific Corp.*, B-286827, 2001 CPD ¶ 24, n.9 (Feb. 22, 2001).

The focus in this case is the interpretation of the phrase in the bundling definition: "a solicitation for a single contract." The Government incorrectly argues that "because the requirement for each NSN could be awarded to different offerors, the RFP did not meet the definition of bundling." Def. Rep. at 23. To the contrary, bundling would have occurred if any offeror won both "single contracts" for the different knives or different vendors won the two separate contracts.

## III. The Agency's Conclusion that Gerber's Alternate Offer for NSN 4457 Was Technically Acceptable to Meet the Agency's Needs Was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Contrary to Law.[3]

### A. Benchmade's Claim is Timely and Not Waived.

In its Response, Gerber, for the first time, argues that Benchmade's protest of the Agency's determination of the knives as interchangeable is untimely because Benchmade dismissed its initial protest before the GAO.[4] Gerber relies upon this Court's decision in *ORCA Northwest Real Estate Servs. v. United States*, 65 Fed. Cl. 1 (2005), to support its claim that Benchmade's protest that the Agency's acceptance of the Gerber knife was unreasonable is untimely. However, in that case, the Court made clear that the finding of waiver of earlier claims was specific to the particular set of circumstances in that case, which are easily distinguishable

[3] Benchmade addressed Gerber's argument that this count should be dismissed for lack of competitive prejudice in its Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record. Gerber relies solely upon GAO decisions, which are not binding on this Court, for its contention that Benchmade must "establish that it would have revised its own offer had it known of the agency's relaxed requirements." Gerber Rep. at 22. As Benchmade explained in its Opposition, Benchmade, as next in line for award, has clearly demonstrated competitive prejudice under the standards established by the Federal Circuit and the Court of Federal Claims.

[4] Benchmade addressed Gerber's argument that the interchangeability claim was untimely under the waiver rule set forth in *Blue & Gold Fleet* in its Opposition to Defendant's and Defendant-Intervenor's Motions for Judgment on the Administrative Record.



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

from the circumstances of Benchmade's protests. In *ORCA*, the protestor's initial protest had challenged the agency's treatment of the awardee as a "responsible" bidder. The protestor agreed to the dismissal of its first bid protest and to the substantive reevaluation of both its and the awardee's proposals. After the agency reinstated the award to the other offeror, the protestor filed a second bid protest, again challenging the agency's determination that, at the time of the first award, the successful offeror was responsible. The Court concluded that the protestor had waived its right to challenge the responsibility determination, which had been the subject of the first protest, by agreeing to dismiss that protest.

Unlike the protestor's duplicative protests in *ORCA*, Benchmade's current protest raises claims that are distinct from those raised in its initial protest to the GAO. The subject of Benchmade's initial protest was the Agency's failure to base its award to Gerber on the best value to the government trade-off scheme established in the Solicitation. Thus, Benchmade's challenge that the Gerber knife is not interchangeable with the Benchmade knife is not an attempt to challenge the earlier the Agency's initial award decision and therefore was not waived by its dismissal of the initial protest and agreement to reevaluation. *Cf. ORCA*, 65 Fed. Cl. at 7 ("Most, although certainly not all, of ORCA's current challenges to the award were also raised in the first bid protest, including issues related to responsibility.").

Furthermore, in *ORCA* the protestor was protesting the agency's consideration of the financial state of affairs at the time of the first award, not at the time of the reevaluation and the new award. *ORCA*, 65 Fed. Cl. at 6-7. The Court concluded that the reevaluation should be treated as a new award decision, and it was therefore "appropriate for the agency to consider up-to-date financial information from both parties." *Id.* at 7. Rather than supporting Gerber's proposition that Benchmade's challenge to the Agency's determination that the knives are



**Protected Information To Be Disclosed Only In Accordance**
**With the U.S. Court of Federal Claims Protective Order**

interchangeable has been waived, this holding of the Court actually does the opposite. Because the reevaluation is actually a new award decision, any errors made during this reevaluation would be distinct from any errors in the initial award decision and therefore could not have been waived by Benchmade's dismissal of other, unrelated challenges in the first protest.

### B. The Agency's Determination that Gerber's Knife is Acceptable under the Solicitation Lacks a Rational Basis and is Arbitrary and Capricious

The Solicitation allowed vendors to offer a different knife as long as it was an acceptable substitute. Gerber contends that when a solicitation allows vendors to offer alternate products under DLA clause 52.217-9002, the Agency only determines whether the vendor's *proposal* was technically acceptable, but makes no evaluation of the alternate item itself. Gerber Rep. at 29, citing *Julie Research Labs*, 1990 WL 293679, at *3. This argument must fail, as it is contradicted by case law and the Government's own brief.

DLA clause 52.217-9002 governs the conditions under which an Agency may evaluate and accept offers of alternate products. This clause requires vendors offering alternate products to submit certain information along with its offer to facilitate the comparison between the alternative product and the exact product sought. While it is true that a proposal offering an alternate product that does not include this required information would be deemed technically unacceptable, it does not follow, as Gerber contends, that the mere submission of a technically acceptable *proposal* necessarily means that the offered alternate product itself is an acceptable "interchangeable" product. In fact, Gerber's position that the Agency is not required to evaluate the offered alternate knife is refuted by the Government's own reply brief, in which the Government claims that "the agency's engineer performed a complete evaluation of the correct technical data package submitted by Gerber, along with a physical comparison of the correct knives." Def. Rep. at 14. Although Benchmade agrees with the Government that the Agency



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

was required to perform a "complete evaluation" of Gerber's offered knife, it disagrees with the Government's contention that such an evaluation was ever completed.

As previously explained in Benchmade's Cross-Motion, the only evidence in the Administrative Record that serves as the basis for the Agency's award decision is an Engineering Memo from the agency engineer to the contracting officer that was accompanied by three pages pulled directly from Gerber's technical data package. AR 224-228. The Government admits that the agency engineer attached to this memo only a comparison of the characteristics of Gerber's and Benchmade's fixed blade knives, which are not at issue in this protest. Def. Rep. at 14; AR 228. The Government attempts to brush off the errors in this memo by stating, without any supporting evidence, that it is "apparent" that the engineer "obviously intended" to include a comparison of the automatic knives, and that it was "by obvious inadvertence" and a "simple mistake" that the engineer included a comparison of the fixed blade knife. Def. Rep. at 14. There is no evidence, however, other than this conclusory one-page memo that the Government admits contains omissions and mistakes, documenting the results of the "complete evaluation" and "physical comparison" of the knives that the Government claims the Agency conducted. This is not sufficient to support a finding that the Agency "examine[d] the relevant data and articulate[d] a satisfactory explanation" for its determination that the Gerber and Benchmade knives were interchangeable. *See Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395 (2005) (internal quotations omitted). Given the lack of any documentation of the results of the Agency's purported evaluation of the Gerber automatic knife, and the grievous errors in the one document that purports to be the basis for the Agency's determination that the Gerber knife was "acceptable" under the Solicitation, the Court should conclude that the Agency "did not provide a coherent and reasonable explanation for its exercise of discretion" and "in this respect, its



**Protected Information To Be Disclosed Only In Accordance**
**With the U.S. Court of Federal Claims Protective Order**

decision was 'arbitrary and capricious.'" *210 Earll, L.L.C. v. United States,* 77 Fed. Cl. 710, 721 (2006).

The Department of the Army testing facility at Fort Bliss conducted an independent test of the Gerber knives that were supplied under this contract. The results of test showed that 100% of the Gerber knives failed. The Army concluded that the Gerber knives were unsafe, presented a safety hazard, and recommended that the Gerber knives not be used. In conjunction with the absence of any documented evidence in the Administrative Record, these facts further support that the Agency acted arbitrarily and capriciously in failing to conduct an adequate independent evaluation of the Gerber knives or comparison of the Gerber knife to the Benchmade knife.

## CONCLUSION

In conclusion, it is important that throughout the course of this litigation, we not lose sight of the Government's goals in issuing this Solicitation and what all parties involved are trying to achieve by resolving this protest: supplying our military with a knife in which they will have absolute confidence when it becomes necessary to use it in the field. The Benchmade knife is that knife.

For the foregoing reasons, Benchmade respectfully requests that the Court grant Plaintiff's Cross-Motion for Judgment on the Administrative Record, deny Defendant's and Gerber's Motions for Judgment on the Administrative Record, vacate the Agency's award of the contract to Gerber, and grant such other relief as the Court may deem just and proper.



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

Respectfully submitted,

s/ Terrence M. O'Connor

Terrence M. O'Connor
Stephanie D. Wilson
ALBO & OBLON, L.L.P.
2200 Clarendon Boulevard, Suite 1201
Arlington, Virginia 22201
Telephone: (703) 562-3382
Facsimile: (703) 312-0415
*Counsel for Benchmade Knife Co., Inc.*

Dated: October 18, 2007



**Protected Information To Be Disclosed Only In Accordance With the U.S. Court of Federal Claims Protective Order**

**CERTIFICATE OF FILING**

I hereby certify that on this 18th day of October, 2007, a copy of the foregoing "PLAINTIFF'S REPLY TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S RESPONSES TO PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD; PLAINTIFF'S RESPONSE TO DEFENDANT'S AND DEFENDANT-INTERVENOR'S CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Terrence M. O'Connor



**Protected Information To Be Disclosed Only In Accordance
With the U.S. Court of Federal Claims Protective Order**