# In the United States Court of Federal Claims

No. 07-593C

(Filed Under Seal: November 30, 2007)
(Reissued: December 10, 2007)[1]

| | | |
|---|---|---|
| *************************************** | * | |
| | * | |
| BENCHMADE KNIFE COMPANY, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Post-award Bid Protest; Untimely |
| | * | Challenge to Solicitation Terms; |
| THE UNITED STATES, | * | Bundling and Small Business Set Aside |
| | * | Allegations; Agency's Acceptance of |
| Defendant, | * | Alternate Product; Supplementation of |
| | * | Administrative Record Denied. |
| and | * | |
| | * | |
| GERBER LEGENDARY BLADES DIVISION, | * | |
| FISKARS BRANDS, INC., | * | |
| | * | |
| Defendant-Intervenor. | * | |
| | * | |
| *************************************** | * | |

*Terrence M. O'Connor,* with whom was *Stephanie D. Wilson*, Albo & Oblon, LLP, Arlington, Virginia, for Plaintiff.

*Kenneth S. Kessler*, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

---

[1] The Court issued this opinion under seal on November 30, 2007, and gave the parties until December 7, 2007 to submit any proposed redactions of competition-sensitive, proprietary, confidential or other protected information. The Court received one proposed redaction from Defendant-Intervenor, but following a telephone conference with counsel on December 10, 2007, the Court denied the proposed redaction because the information in question already is in the public domain. Accordingly, the decision is released in its entirety.

*David T. Ralston, Jr.*, with whom was *Philip A. Nacke*, Foley & Lardner LLP, Washington, D.C., for Defendant-Intervenor.

OPINION AND ORDER

WHEELER, Judge.

This post-award bid protest arises from a Defense Supply Center Columbus ("DSCC") procurement of combat knives. Plaintiff Benchmade Knife Company, Inc. ("Benchmade") is a long-standing supplier of fixed blade and automatic or "switchblade" knives to the military. Benchmade challenges DSCC's December 21, 2006 contract award to Defendant-Intervenor Gerber Legendary Blades Division, Fiskar Brands, Inc. ("Gerber") for automatic knives. Following two protests to the Government Accountability Office ("GAO") and an agency decision to reevaluate proposals, DSCC lifted a stop work order on Gerber's contract on July 17, 2007 so that Gerber's performance could resume. Benchmade filed this action in our Court on August 6, 2007.

As amended, Benchmade's challenge to the Gerber award consists of three alleged improprieties: (1) that the solicitation should have been set aside for small businesses; (2) that the agency's decision to bundle the purchase of two types of knives in one solicitation was arbitrary, capricious, and contrary to law; and (3) that the agency's acceptance of Gerber's alternate offer as technically acceptable lacked a rational basis. Defendant filed the Administrative Record on August 21, 2007. The parties have filed cross-motions for judgment on the Administrative Record pursuant to Rule 52.1, and Benchmade has moved to supplement the Administrative Record with affidavits and post-decision documents. The parties completed their briefing on the cross-motions for judgment on October 18, 2007, and the Court heard oral argument on October 25, 2007.

For the reasons stated below, the Court finds that Benchmade's protest is without merit. Benchmade's small business set-aside and bundling allegations are untimely, and should have been raised before proposals were submitted. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313-15 (Fed. Cir. 2007). Even if these allegations were considered on the merits, the Court is not persuaded by Benchmade's position. Moreover, the agency's determination to accept Gerber's offer of an alternate product is rationally based. The Court should not substitute its judgment for that of the agency's mechanical engineer on a technical issue of whether the Gerber knife is an acceptable alternate to the Benchmade knife. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971); E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996) ("[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."). The Court also declines to supplement the Administrative Record with documents that had no bearing on the agency's award decision. See Rust Constructors, Inc. v. United States, 49 Fed. Cl. 490, 496-97 (2001) (finding protestor's affidavits did not fit into the category of "core documents" that should be included in the Administrative Record).

Accordingly, Defendant's motion for judgment on the Administrative Record is GRANTED, and Benchmade's cross-motion for judgment on the Administrative Record is DENIED. Benchmade's motions to supplement the Administrative Record also are DENIED.

## I. Factual Background[2]

DSCC is a field activity of the Defense Logistics Agency ("DLA") located in Columbus, Ohio. DLA is an agency within the Department of Defense, and is responsible for purchasing and managing a wide assortment of supplies for the armed forces.

On August 2, 2006, DSCC's Contracting Officer issued Solicitation No. SP0750-06-R-4308 to acquire two types of combat knives. Administrative Record ("AR") 60-96. DSCC referenced the knives by National Stock Numbers ("NSN") 1095-01-456-4457 and 1095-01-466-8569. AR 67-68. NSN -4457 is an automatic or "switchblade" knife, and NSN -8569 is a fixed blade knife. AR 54, 159. DSCC issued this solicitation as a total small business set-aside, based upon the Contracting Officer's market research that at least two small business manufacturers could be expected to submit proposals. AR 1-20, 55-56. The solicitation indicated that Benchmade, a small business, had provided these knives to DSCC in the past. AR 63. Proposals were due not later than September 2, 2006. AR 60.

The solicitation contemplated an indefinite delivery, indefinite quantity ("IDIQ") contract covering a base year and four one-year options, and indicated that award would be made on an "all or none" basis for each knife type. AR 63, 65. Thus, split awards of the different knives could be made to more than one offeror.[3] AR 63. The solicitation permitted an offeror to propose an alternate product, provided that the offeror furnish a complete technical package covering the "design, materials, performance, function, interchangeability, inspection, and/or testing criteria, and other characteristics of the offered product." AR 88; DLA Clause 52.217-9002 "Conditions for Evaluation and Acceptance of Offers for Part Numbered Items (JUL 2002)."

On August 7, 2006, Gerber sent a letter to the Contracting Officer objecting to the total small business set-aside on the basis that one of the two approved small business manufacturers had discontinued making the knives and was no longer a small business. AR 97-98. The Contracting Officer confirmed this information, and determined that there was only one approved small business manufacturer, Benchmade, for the knives to be procured. The Contracting Officer concluded that she no longer had a reasonable expectation of receiving offers from at least two small business

---

[2] The facts cited herein are taken from the Administrative Record. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973).

[3] DSCC represented to the Court that Benchmade received the award of the fixed blade knife contract.

concerns offering the products of different small businesses, and she canceled the solicitation on August 29, 2006. AR 106-07.

On November 2, 2006, the Contracting Officer issued Solicitation No. SPM7LX-07-R-0001 to acquire the knives on an unrestricted basis. AR 115-16, 119-54. The new solicitation contained the same terms as the initial solicitation regarding a base year and four one-year options, the IDIQ type of contract, the types of knives to be acquired, and the requirement for "all or none" offers for each knife type. AR 122, 126-27. The amended closing time for receipt of proposals was December 4, 2006 at 1:00 PM. AR 119.

In response to the new solicitation, the agency received proposals from four companies: Benchmade, Gerber, and two others. AR 230-31. Benchmade offered its own approved product, and Gerber proposed an alternate product. The agency rejected the two other proposals as being outside the competitive range and technically unacceptable. AR 232-33. Gerber submitted a technical data package for its alternate knife, in compliance with DLA Clause 52.217-9002. AR 158-222. The technical data package included descriptive information for both the Gerber and the Benchmade knives. Id.

The agency assigned a DSCC mechanical engineer to evaluate Gerber's technical data package. AR 224-28. The assigned engineer physically examined and compared the two knives, and included a detailed chart with his evaluation. Id. The engineer summarized his evaluation as follows:

> The technical evaluation was made using the data package and samples submitted by Gerber Legendary Blades. The dimensional and material characteristics listed in the data package were similar for both the Gerber 22-01055DS and the Benchmade 9100SBT. There were minor dimensional differences for some of the characteristics but nothing that would affect the form, fit and function of the knife. The blade material was the same for both products.

AR 224. The engineer concluded that Gerber's alternate offer was technically acceptable. Id.

The Contracting Officer determined that Gerber's proposal represented the best value to the Government for the automatic "switchblade" knife and awarded Contract No. SPM7LX-07-D-7026 to Gerber on December 21, 2006. AR 279.[4]

---

[4] The engineer's analysis and conclusion that Gerber's alternate offer was technically acceptable is dated January 3, 2007, 13 days after the contract award to Gerber. AR 224. However, the engineer informed the DSCC contract specialist on December 5, 2006 that Gerber's alternate offer was acceptable. AR 223. None of the parties has suggested that the Contracting Officer awarded Gerber's contract without benefit of the engineer's analysis.

On January 9, 2007, Benchmade filed a protest of this contract award at GAO, docketed as B-299366. AR 312-19. On February 5, 2007, the agency advised GAO that it had "incorrectly treated Gerber as a new offeror," and intended to take corrective action to reevaluate the offers received. AR 327-28. The GAO dismissed Benchmade's protest on February 6, 2007, finding that the protest was "academic" based upon the agency's decision to take corrective action. AR 335.

On April 5, 2007, the Contracting Officer completed a reevaluation of the proposals and again determined that Gerber's offer represented the best value to the Government. AR 229-44. Benchmade filed another protest at GAO on May 29, 2007, which the GAO denied on July 16, 2007. AR 384-88. On July 17, 2007, the agency rescinded the stop work order against Gerber's contract allowing Gerber to resume performance. AR 389.

On August 6, 2007, Benchmade filed this action in our Court. As amended, Benchmade makes the following allegations regarding the award to Gerber: (1) the agency's solicitation should have been a small business set-aside; (2) the agency should not have bundled the requirements for a fixed blade knife and an automatic "switchblade" knife in one procurement; and (3) the agency's decision to accept the alternate product offered by Gerber was arbitrary and capricious. Also pending are Benchmade's motions to supplement the Administrative Record with various post-decision documents not considered by the agency in awarding to Gerber.

## II. Discussion

### A. Jurisdiction and Standard of Review

This Court has jurisdiction over pre-award and post-award bid protests "in connection with a procurement or proposed procurement" pursuant to 28 U.S.C. § 1491(b)(1), as amended by the Administrative Dispute Resolution Act of 1996. Pub. L. No. 104-320, § 12(a)-(b)(1996).

The Court reviews challenges to agency actions in a bid protest according to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. When evaluating agency action, a reviewing Court may only set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (incorporated by reference in 28 U.S.C. § 1491(b)(4)); Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004). Still, the agency must present a full and reasoned explanation for its decision, to enable courts to perform a meaningful review. In re Sang-Su Lee, 277 F.3d 1338, 1342 (Fed Cir. 2002); see also ViroMed Labs., Inc. v. United States, 62 Fed. Cl. 206, 212 (2004) ("[T]he court should review the basis for the agency decision to see if was legally permissible, reasonable, and supported by the facts."). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Overton Park, 401 U.S. at 416; see also Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962) (finding the agency must articulate a "rational connection between the facts found and the choice made").

Under the APA, the protestor may challenge an agency's action on one of two grounds: (1) the procurement official's decision lacked a rational basis, or (2) the procurement method or procedure constituted a violation of law or regulation. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); see Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). When a challenge is brought on the first ground, the test is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Banknote, 365 F.3d at 1351; Impresa, 238 F.3d at 1332-33 ("[C]ontracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process.") (internal citations omitted). When a challenge is brought on the second ground, the disappointed bidder must show a clear violation of an applicable statute or regulation. Impresa, 238 F.3d at 1333. In contrast to the rational basis analysis, an agency has no discretion regarding the mandate of applicable laws and regulations. Blue & Gold Fleet, L.P. v. United States, 70 Fed. Cl. 487, 493 (2006), aff'd 492 F.3d 1308 (Fed. Cir. 2007). In either case, however, the protestor bears the "heavy burden" of proving the lack of a rational basis or a violation of law by a preponderance of the evidence. Id. quoting Impresa, 238 F.3d at 1332-33; Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 222 (2001) (same).

The court "may not substitute its judgment for that of the agency" if the agency's decision is reasonable. R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003); see Overton Park, 401 U.S. at 416 (setting aside agency's decision only where there has been a "clear error in judgment"); Bender Shipbuilding & Repair Co., Inc. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002). Agency technical evaluations, in particular, should be afforded a greater deference by the reviewing court. See E.W. Bliss, 77 F.3d at 449 ("[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."); Omega World Travel, Inc. v. United States, 54 Fed. Cl. 570, 578 (2002) ("It is well settled that contracting officers are given broad discretion with respect to evaluation of technical proposals."). However, a reviewing court should set aside an agency's decision where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

B. Supplementation of the Administrative Record

The Court may allow supplementation of the Administrative Record, at its discretion, in limited circumstances. See Impresa, 238 F.3d at 1338 (finding supplementation permissible where "required for meaningful judicial review"); see also Cubic Applications, Inc. v. United States, 37 Fed. Cl. 339, 342 (1997) (adopting list of limited circumstances where supplementation may be allowed). In general, the Court will supplement the administrative record when it is necessary for a full and complete understanding of the issues. Blue & Gold Fleet, 70 Fed. Cl. at 494; see also Impresa, 238 F.3d at 1338-39 (ordering supplementation with contracting officer's deposition testimony to fill gaps concerning factors agency considered in reaching decision); Rig Masters, Inc.

v. United States, 70 Fed Cl. 413, 424 (2006) (permitting supplementation to assist the Court in understanding an agency decision); Stapp Towing, Inc. v. United States, 34 Fed. Cl. 300, 308 (1995) (allowing supplementation when the agency failed to consider factors relevant to its final decision). Otherwise, the Court must confine its review to the administrative record already in existence. Camp, 411 U.S. at 142; Cubic Applications, 37 Fed. Cl. at 342 ("The court's inquiry is therefore based on an examination of the 'whole record' before the agency; that is, all the material that was developed and considered by the agency in making its decision.") (internal citations omitted).

In this case, Benchmade moved to supplement the Administrative Record on October 22, 2007 by offering a Department of the Army memorandum evaluating the Gerber 06 Automatic Opener Knife. In this August 20, 2007 memorandum, issued approximately eight months after DSCC's award to Gerber, an Army representative stated that he evaluated ten Gerber knives and concluded that all of them failed, rendering them unsafe and unfit for military use. Benchmade contends this memorandum supports its claim that the agency failed to consider important information in finding that the Gerber knife was an acceptable alternate to the Benchmade knife. Defendant and Gerber object to supplementing the record because the Army memorandum is unsubstantiated, relates to a different Gerber knife not at issue in this protest, and post-dates the agency's contract award decision.

Benchmade again moved to supplement the Administrative Record on October 23, 2007 with two documents relating to one of the prior GAO protests in this procurement. Specifically, Benchmade sought to include two e-mails, dated June 8 and July 26, 2007, between Benchmade's and DSCC's counsel, as evidence that Benchmade had alerted the agency to flaws in the Gerber knife during the GAO protests. Defendant and Gerber oppose this motion because the e-mails post-date, and are unrelated to, the agency's award decision.

The Court finds that the documents Benchmade seeks to add are not "core documents" that ought to be included in the Administrative Record. See Rust Constructors, 49 Fed. Cl. at 497. These documents are dated after DSCC selected Gerber for award, and have no bearing on the Contracting Officer's decision that Gerber's knife is an acceptable alternate to Benchmade's knife. See AR 224 (DSCC engineer's January 3, 2007 memorandum finding Gerber's knife an acceptable alternative to Benchmade's knife). Moreover, the Court does not need Benchmade's proposed supplemental documents to improve its understanding of the issues in this case. See Blue & Gold Fleet, 70 Fed. Cl. at 494.

Additionally, Defendant has moved to strike three affidavits that Benchmade submitted to the Court in this protest: (1) the affidavit of Mr. Greg Mooney, dated August 3, 2007, attached to the complaint; (2) the affidavit of Mr. Vance Collver, dated September 11, 2007, attached to Benchmade's cross-motion for judgment on the Administrative Record; and (3) the affidavit of Mr. Les deAsis, dated October 18, 2007, attached to Benchmade's reply brief. The Court agrees with Defendant that all three affidavits describe testing of knives after the agency's award decision, and thus are irrelevant to the reasonableness of the Contracting Officer's determination. Therefore, the Court grants Defendant's motion to strike the affidavits, and they will be excluded from the

Administrative Record. Similarly, the Court will strike Gerber's affidavits submitted in rebuttal to Benchmade's affidavits.

C. Benchmade's Small Business Set-Aside Allegations are Untimely and Lack Merit.

Benchmade contends that DSCC's determination not to set aside the solicitation for small businesses was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. The Federal Circuit recently held that challenges to the terms of a solicitation containing a patent error must be raised prior to the close of the bidding process, or the ability to raise such a challenge is waived. Blue & Gold Fleet, 492 F.3d at 1313-14 (finding protestor waived its objection to terms of solicitation after closing date for receipt of proposals). In that decision, the Federal Circuit cited the GAO's application of a similar rule in its bid protest regulations, 4 C.F.R. § 21.2(a)(1), requiring protests based upon alleged solicitation improprieties to be filed prior to the time set for receipt of initial proposals. Id. at 1314. Explaining the public policy behind the waiver rule, the Federal Circuit stated:

> It would be inefficient and costly to authorize this remedy after offerors and the agency had expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation. Vendors cannot sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm.

Id. (citing Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 175 n.14 (2005)).

The Court of Federal Claims has applied the Blue & Gold Fleet waiver rule to a variety of untimely solicitation challenges. See, e.g., Erinys Iraq Ltd. v. United States, 78 Fed. Cl. 518, 533 n.7 (2007) (rejecting protestor's argument to the extent it involved a challenge to the solicitation's terms after receipt of proposals); Scott v. United States, 78 Fed. Cl. 151, 154 n.2 (2007) (finding protestor did not have standing to challenge the terms of a solicitation after contract award); Moore's Cafeteria Servs. v. United States, 77 Fed. Cl. 180, 184-85 (2007) (holding protestor waived its right to challenge a solicitation amendment by not objecting to its terms during the bidding process).

It is undisputed that Benchmade knew the solicitation was unrestricted prior to submission of its proposal, and yet, waited until after contract award to Gerber before filing a protest at the GAO. See AR 312-18. Under the Federal Circuit's Blue & Gold Fleet decision, Benchmade waived its right to protest the terms of the solicitation by failing to raise its small business set-aside argument prior to the closing date for submission of proposals. Accordingly, the Court dismisses Benchmade's small business set-aside argument as untimely.

Even if the argument were timely, the Court rejects Benchmade's contention that the Contracting Officer's decision to issue an unrestricted solicitation was unreasonable. FAR 19.502-2(b), known as the "Rule of Two," requires the Government to set-aside acquisitions over

$100,000.00 for small businesses "when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small businesses concerns offering the products of different small business concerns; and (2) [the] award will be made at fair market prices." Benchmade relies on the "Rule of Two" for its argument that "two small business concerns," as used in the FAR, simply means any two small business entities, including resellers who offer the same product of a single manufacturer. Benchmade claims that the Rule of Two was met here because at least two resellers could be expected to offer the Benchmade knife called for in the solicitation. Pltf's Motion at 16.

The Contracting Officer originally issued the solicitation at issue as a total small business set-aside, based upon the Contracting Officer's market research that at least two small business manufacturers could be expected to submit proposals. AR 1-20, 55-56. However, after Gerber's objection that one of the two approved small business manufacturers, Masters of Defense, had discontinued making the knives and the Contracting Officer's subsequent confirmation that Benchmade was the only manufacturer of the NSN -4457 knives, the Contracting Officer canceled the solicitation. AR 106-07. After again attempting to identify more sources for the required knife and finding no other small businesses approved to manufacture the required knife, the Contracting Officer reissued the solicitation on an unrestricted basis. AR 21-53, 113-54. The Small Business Administration ("SBA") agreed with the Contracting Officer's decision to proceed with the procurement of NSN -4457 on an unrestricted basis. AR 113.

The FAR's "Rule of Two" clearly states that a contracting officer must expect offers from at least two responsible small businesses offering "the products of different small business concerns" before setting aside the procurement. As applied to the facts here, the FAR required the Contracting Officer to identify at least two *different* small business knife manufacturers of NSN -4457 or its equivalent, in order to set aside the solicitation. The decision not to set aside a solicitation for small business concerns is a matter of business judgment within the contracting officer's discretion and, as such, must be upheld unless the Court finds the decision to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." See 5 U.S.C. § 706(2)(A); MCS Mgmt., Inc. v. United States, 48 Fed. Cl. 506, 511 (2000). The agency's decision to cancel the original solicitation and issue a new solicitation on an unrestricted basis was rationally based and in compliance with the law. See AR 113-18.

D. Benchmade's Bundling Allegations are Untimely and Without Merit.

Benchmade next protests the agency's failure to follow statutory and FAR requirements, set forth in 15 U.S.C. § 644 and FAR ¶ 2.101, for issuing bundled solicitations. Benchmade contends that it first learned of the agency's alleged failure to follow the bundling requirements upon reviewing the Administrative Record in this case. Benchmade asserts that agency representatives considered this a bundled procurement, but failed to follow the FAR requirements. Specifically, Benchmade alleges the agency failed to: (1) provide suppliers with 30 days notice that it intended to issue a solicitation for a bundled procurement, as required by FAR ¶ 10.001(c)(2); (2) provide a copy of the proposed acquisition package to the SBA procurement center at least 30 days prior to

issuing the solicitation, as required by FAR ¶ 19.202-1(e)(1); and (3) provide a statement explaining its bundling decision, as required by FAR ¶ 19.202-1(e)(2). To prevail on this argument, Benchmade has the burden of proving a "clear and prejudicial violation" of the applicable statutes or regulations. See Impresa, 238 F.3d at 1333.

The waiver rule in Blue & Gold Fleet applies equally to Benchmade's bundling argument. See 492 F.3d at 1313-14 (approving GAO timeliness rule, 4 C.F.R. § 21.2(a)(1)). The Blue & Gold Fleet decision reflects the dual purpose of affording parties a fair opportunity to present their grounds of protest, while also resolving protests expeditiously without unduly disrupting or delaying the procurement process. See CC Distribs., Inc. v. United States, 38 Fed. Cl. 771, 782 (1997) (quoting GAO decision in related protest).

Benchmade raised its improper bundling argument for the first time in its cross-motion for summary judgment, filed on September 11, 2007, nine months after the closing date for receipt of proposals. Yet, both the original and revised solicitations clearly indicated that the agency intended to group the two knife products in one solicitation. Benchmade failed to timely protest any failure by the agency to follow the statutory and FAR requirements for bundled procurements, and should not be permitted to do so at this late date.

Moreover, Benchmade has not shown that the solicitation here meets the statutory definition of bundling. In order to constitute bundling, a solicitation must: (1) consolidate two or more requirements that were previously procured under separate smaller contracts into a single contract, and (2) likely be unsuitable for award to a small business. See 15 U.S.C. § 632(o)(2); FAR ¶ 2.101. In support of its bundling argument, Benchmade focuses on a single sentence in the agency's acquisition plan stating, "[a]lthough this solicitation consolidates multiple requirements previously procured under separate small contracts into a single solicitation, it is not prohibited bundling either under the FAR definition or as prohibited by decisions of the Comptroller General." Pltf's Motion at 23; AR 57.

A closer look at the solicitation reveals that it does not meet the two-part test for bundled procurements. Although the solicitation included offers for two different items in one solicitation, the solicitation clearly provided for two separate awards, for each knife product. See AR 122, 124. The solicitation explained that "award will be made on an all or none basis per CLIN (NSN) for the supplies covered under this contract," and as a result, "there may be split awards to various awardees." AR 122. As Defendant notes, the solicitation did not require offerors to submit proposals for both products, rather, offerors could submit proposals for either or both of the NSNs. See Def's Reply at 23; AR 121, 144. Moreover, the solicitation stated that an award "for each individual NSN" would be made to the responsible offeror whose offer conformed with the solicitation and was most advantageous to the Government. AR 152. Thus, the solicitation communicated to prospective offerors that the award for each NSN could result in two separate procurements, not a single "bundled" procurement. As such, the Court finds that the solicitation did not "consolidate two or more requirements that were previously procured under separate smaller contracts into a single contract," the first prong of the definition of bundling. See 15 U.S.C. §

632(o)(2); FAR ¶ 2.101. The agency awarded each NSN to separate offerors, in separate contracts, with Benchmade receiving the award for NSN -8569 and Gerber the award for NSN -4457, according to the terms of the solicitation.

Turning to the second prong of the definition of bundling, the Court agrees with Defendant that the procurement history for NSNs -4457 and -8569 demonstrates that a single contract for the two NSNs would have been suitable for small businesses. See Def's Reply at 24. Benchmade itself is a small business, and has performed every contract for these same NSNs since September 2000. AR 516-28. Benchmade responded affirmatively to the market survey for the planned solicitation for both NSNs, and at no point indicated an inability to perform, if awarded one or both of the contracts. AR 9-10; Def's Reply at 24-25.

E. The Agency's Decision to Accept Gerber's Alternate Product is Rationally Based.

Finally, Benchmade alleges that DSCC's interchangeability determination, finding Gerber's alternate offer for Benchmade knife NSN -4457 technically acceptable to meet the agency's needs, was arbitrary, capricious, an abuse of discretion, and not in accordance with law. The Court reviews DSCC's decision to accept an alternate product for reasonableness. This protest ground is timely asserted, but it fails on the merits given the degree of deference the Court must afford to the agency's technical evaluation and decision.

Benchmade argues that the Administrative Record does not contain any documentation that DSCC conducted an independent evaluation of the offers, and therefore does not support a finding that DSCC "examined the relevant data and articulated a satisfactory explanation" for its interchangeability determination under the standards in DLA Clause 52.217-9002. Pltf's Motion at 26. Benchmade points to a number of differences between the Gerber and Benchmade knives, namely, the safety locking mechanism, force susceptibility, weight, handle design, and blade. Id. at 28-30.

The Court finds that DSCC's decision to accept Gerber's knife as an acceptable alternative is a technical judgment committed to the agency's discretion. E.W. Bliss Co., 77 F.3d at 449. Section L17C01 of the solicitation incorporated DLA Clause 52.217-9002 "Conditions for Evaluation and Acceptance of Offers for Part Numbered Items (JUL 2002)." AR 144-45. This section allowed the submission of alternate products which were "physically, mechanically, electrically, and functionally interchangeable" with Benchmade knife NSN -4457. AR 144. Although DSCC's mechanical engineer did not specifically state that Gerber's knife was "physically, mechanically, electrically, and functionally interchangeable" with Benchmade knife NSN -4457, the engineer found Gerber's alternate offer to be "technically acceptable." AR 224. Accordingly, the Court finds the engineer's conclusion to satisfy the standard set forth in DLA Clause 52.217-9002.

The Court agrees with Defendant and Gerber that the agency's engineer made an informed, technical judgment on the interchangeability of the Gerber knife with Benchmade knife NSN -4457. Ample factual support in the record leads the Court to conclude that the engineer's interchangeability

determination was the product of reasoned decision-making based on all of the relevant technical data before him. In addition to evaluating Gerber's technical data package, the engineer physically examined and compared samples of the two knives, and included a detailed comparative chart with his findings. AR 224-28. The engineer's analysis revealed:

> The dimensional and material characteristics listed in the data package were similar for both the Gerber 22-01055DS and the Benchmade 9100SBT. There were minor dimensional differences for some of the characteristics but nothing that would affect the form, fit and function of the knife. The blade material was the same for both products.

AR 224. Ultimately, the engineer found the Gerber knife to be a technically acceptable alternative to Benchmade knife NSN -4457. Id.

The Court simply is not equipped to determine whether the differences between the knives articulated by Benchmade rise to the level of "significant differences," thus rendering the agency's determination unreasonable. See Pltf's Motion at 29-30. Agencies are entitled to considerable discretion and deference in matters requiring exercise of technical judgment. When such decisions reflect a rational basis and are supported by the record, as here, the Court may not "substitute its judgment for that of the agency." See Bender Shipbuilding & Repair Co., Inc. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002).

## III. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the Administrative Record is GRANTED, and Plaintiff's cross-motion is DENIED. The Clerk shall dismiss Plaintiff's Complaint with prejudice. No costs are awarded to either party.

On or before December 7, 2007, the parties shall carefully review this unredacted opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge